**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROWENA DRENNEN individually and as the representatives of the KESSLER SETTLEMENT CLASS, et al., | Case No. 23-CV-03385-JPO |
| Plaintiffs, | RELATED CASE District Court Case No. 15-CV-02712-JPO Bankruptcy Case No. 12-12020 (MG) Adversary Case No. 15-01025 (DSJ) |
| vs. | |
| CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON, et al., | |
| Defendants. | |

**CLASS PLAINTIFFS AGREE WITH THE BANKRUPTCY COURT'S RULING WHICH DENIED MOVING INSURERS' PARTIAL MOTION FOR SUMMARY JUDGMENT ON PUNITIVE DAMAGES AND STATUTORY PENALTIES, BUT CLASS PLAINTIFFS OBJECT IN THAT THE BANKRUPTCY COURT INCORRECTLY REFUSED TO GRANT PARTIAL SUMMARY JUDGMENT <u>IN FAVOR OF CLASS PLAINTIFFS ON THESE SAME LEGAL ISSUES</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

SUMMARY OF ARGUMENT ................................................................................................ 1

BACKGROUND .................................................................................................................... 2

STANDARD OF REVIEW ...................................................................................................... 8

ARGUMENTS AND LEGAL AUTHORITIES........................................................................ 8

CONCLUSION ...................................................................................................................... 14

# TABLE OF AUTHORITIES

## CASES

*Admiral Ins. Co. v. Brookwood Mgmt. #10, LLC*,
   No. 16-CV-0437(SJF)(SIL), 2018 WL 5622595 (E.D.N.Y. Mar. 30, 2018) ........................12

*Algie v. RCA Glob. Commc'ns, Inc.*,
   891 F. Supp. 875 (S.D.N.Y. 1994), *aff'd,* 60 F.3d 956 (2d Cir. 1995) ...................13

*Am. Council of Blind of New York, Inc. v. City of New York*,
   495 F. Supp. 3d 211 (S.D.N.Y. 2020) ......................................................................12

*Avail 1 LLC v. Adovasio*,
   No. 18 CIV. 11209 (PED), 2020 WL 4475271 (S.D.N.Y. Aug. 3, 2020) .............................12

*Balk v. New York Inst. of Tech.*,
   683 F. App'x 89 (2d Cir. 2017) ...............................................................................10

*Coach Leatherware Co. v. AnnTaylor, Inc.*,
   933 F.2d 162 (2d Cir. 1991) ...............................................................................9, 11

*Fed. Ins. Co. v. Zurich Am. Ins. Co.*,
   445 F. App'x 405 (2d Cir. 2011) ............................................................................12

*Goldman v. Breitbart News Network, LLC*,
   302 F. Supp. 3d 585, 588 (S.D.N.Y. 2018) .............................................................9

*Great Am. Ins. Co. v. Dorchester L.L.C.*,
   No. 14 CIV. 5475 (AKH), 2016 WL 11757228 (S.D.N.Y. Aug. 30, 2016) ........................11

*High Point Design, LLC v. LM Ins. Corp.*,
   911 F.3d 89 (2d Cir. 2018) ..................................................................................11

*In re AP Indus., Inc.*,
   117 B.R. 789 (Bankr. S.D.N.Y. 1990) ....................................................................10

*In re Coudert Bros. LLP*,
   No. 11-2785 CM, 2011 WL 5593147 (S.D.N.Y. Sept. 23, 2011) ..............................8

*Kirschner v. Agoglia*,
   476 B.R. 75 (S.D.N.Y. 2012) ...............................................................................8

*Loc. 33, Int'l Hod Carriers Bldg. & Common Laborers' Union of Am. v. Mason Tenders Dist.*
*Council of Greater New York*,
    291 F.2d 496 (2d Cir. 1961) .............................................................................9, 13

*Medacist Sols. Grp., LLC v. CareFusion Sols., LLC*,
    No. 19-CV-1309 (JMF), 2021 WL 293568 (S.D.N.Y. Jan. 28, 2021) ...................12

*Moorhead v. Vango Media, Inc.*,
    No. 86 CIV. 7005 (LBS), 1987 WL 16371 (S.D.N.Y. Aug. 28, 1987) ..................11

*MyPlayCity, Inc. v. Conduit Ltd.*,
    No. 10 CIV. 1615 CM, 2012 WL 1107648 (S.D.N.Y. Mar. 30, 2012) ............9, 11

*MyPlayCity, Inc. v. Conduit Ltd.*,
    No. 10 CIV. 1615 CM, 2012 WL 2929392 (S.D.N.Y. July 18, 2012) ...................9

*New York Marine & Gen. Ins. Co. v. Travelers Prop. Cas. Co. of Am.*,
    No. 21-CV-6083 (JMF), 2022 WL 4585421 (S.D.N.Y. Sept. 29, 2022) ...............10

*Project Release v. Prevost*,
    722 F.2d 960 (2d Cir. 1983) ...........................................................................11, 12

*Roth v. 2810026 Canada Ltd.*,
    No. 13-CV-901-FPG, 2020 WL 746588 (W.D.N.Y. Feb. 14, 2020) ....................12

*Siderius, Inc. v. M.V. Ida Prima*,
    613 F. Supp. 916 (S.D.N.Y. 1985) ....................................................................10

## STATUTES AND RULES

Fed. R. Civ. P. 56(f) ..............................................................................................9, 12

Fed. R. Civ. P. 56(d) ................................................................................................13

## SUMMARY OF ARGUMENT

In its Decision Resolving Cross-Motions for Partial Summary Judgment [Adv. ECF No. 963][1] (the "Decision")[2] the Bankruptcy Court correctly determined that Insurers'[3] Motion for Partial Summary Judgment on Punitive Damages and Statutory Penalties (the "Motion")[4] should be denied.[5] The Bankruptcy Court erred, however, by not granting partial summary judgment in favor of Class Plaintiffs[6] on the same legal issues raised by the Insurers in their Motion based solely on the fact that the Class Plaintiffs requested judgment in their opposition papers, rather than by formal motion.[7] The ruling on the Insurers' Motion was indisputably as a matter of law,

---

[1] References to filings in the underlying Adversary Proceeding will be in the following form: "Adv. ECF No.___." References to filings in the related underlying bankruptcy, *In re Residential Capital, LLC, et.al.*, Case No. 12-1202 (MG) pending before the United States Bankruptcy Court for the Southern District of New York (hereinafter the "Bankruptcy Proceedings"), will be in the following form: "Bk. ECF No.___." *See also* Decision at 9, n.5.

[2] The Decision issued on December 21, 2022 resolved 10 separate motions for partial summary judgment and one motion for summary judgment, all of which motions were filed after the close of discovery (collectively the "Decision Motions").

[3] The Defendant Insurers are (i) Certain Underwriting Members at Lloyd's of London Whose Names are Severally Subscribed to Policy No. FD0001142 (the "Primary Underwriters"); (ii) Underwriting Members at Lloyd's of London Whose Names are Severally Subscribed to Policy No. FD0001144 (the "Excess Underwriters"); (iii) Twin City Fire Insurance Company; (iv) Continental Casualty Company; (v) Clarendon National Insurance Company; (vi) Swiss Re International SE (f/k/a SR International Business Insurance Company Ltd.); (vii) Steadfast Insurance Company; (viii) St. Paul Mercury Insurance Company; and (xi) North American Specialty Insurance Company (hereinafter and collectively, the "Insurers" or "Defendants"). Decision at 3, n. 2.

[4] The respective filings in connection with the Motion filed by the Insurers are identified in the Addendum attached hereto. Oral arguments on the Decision Motions (including this Motion) were heard by the Bankruptcy Court on May 12, 2022 (the "Hearing"). A copy of the original transcript of the Hearing was filed as Adv. ECF No. 953 ("May 12, 2022 Original Hearing Tr."). A copy of the transcript of the Hearing after *errata* corrections was filed as Adv. ECF No. 959 ("May 12, 2022 Errata Corrected Hearing Tr.") Arguments pertaining to this Motion can be found at pp. 19:17-20:2, 85:24-94:18, 96:9-109:15, 285:24-288:6 in the May 12, 2022 Original Hearing Tr. and at pp. 19:17-20:2, 85:25-94:19, 96:10-109:17, 286:1-288:8 in the May 12, 2022 Errata Corrected Hearing Tr. Demonstrative Exhibits used during the argument include "Punitives-Penalties - Policy Terms." [Adv. ECF No. 949-4].

[5] The Motion is addressed in the Decision at 5-6, 37-52. Class Plaintiffs raised additional grounds as to why the Motion should not be granted in favor of the Moving Defendants and instead granted in favor of Class Plaintiffs. Although the Bankruptcy Court did not find it necessary to address these additional grounds, Class Plaintiffs expressly preserve the right to raise and do not waive these additional grounds with respect to further proceedings related to the Motion.

[6] Class Plaintiffs are: (i) Rowena Drennen, Flora Gaskin, Roger and Christie Turner, John and Rebecca Picard, individually, and as the representatives of the Kessler Settlement Class (the "Kessler Class"); (ii) Steven and Ruth Mitchell, individually, and as representatives of the Mitchell Settlement Class (the "Mitchell Class," and together with the Kessler Class, the "Class Plaintiffs").

[7] *See* concluding paragraph in Section D.1 in Decision at 48 ("The Court acknowledges that the Class Plaintiffs' opposition to the motion suggests that the Court affirmatively grant summary judgment in favor of Class Plaintiffs on this question, but, in the absence of a formal motion or cross-motion notwithstanding the Court's prior scheduling orders requiring the filing of such motions, the Court declines to issue a *sua sponte* grant of summary judgment in

discovery was completed long before the Motion was filed, and no procedural prejudice could result from granting summary judgment in favor of Class Plaintiffs. Under these circumstances, the Bankruptcy Court should have granted Class Plaintiffs' request for entry of partial summary judgment in their favor rather than refuse to do so based on the technicality of a formal motion.

## BACKGROUND

In their Motion, the Insurers requested summary judgment on the purely legal issues of whether certain Losses claimed by Class Plaintiffs[8] under the Policy[9] are uninsurable or excluded from coverage as a matter of law. Residential Funding Company, LLC ("RFC") incurred these Losses in connection with RFC's settlement of two class actions: the Mitchell Action for $14.5 million; and the Kessler Action for $300 million (the "Mitchell Class Settlement" and the "Kessler Class Settlement," respectively, and collectively the "Settlements").[10] The Mitchell Class Settlement resolved the claims of the Mitchell Class for punitive damages and sanctions. The Kessler Class Settlement resolved claims under HOEPA, TILA, RESPA and RICO. Class Plaintiffs, as assignees to RFC's rights under the Policy with respect to the Mitchell and Kessler Settlements, assert these two settlements each constitute a Loss under the Policy under Insuring Clause I.D.[11]

---

Class Plaintiffs' favor."); *see also* Decision at 52 ("[F]or the reasons discussed above, in the concluding paragraph of § D.1, the Class Plaintiffs' request for summary judgment is also denied.").

[8] Class Plaintiffs are the collective assignees of Residential Funding Company, LLC a/k/a GMAC-Residential Funding Corporation ("RFC"), a debtor in the underlying Chapter 11 bankruptcy case [Case No. 12-12020]. Decision at 10-11. The parties do not dispute that RFC is an Assured under the Policy. Decision at 12.

[9] The Insurers are part of a "tower" of insurers that issued a comprehensive, combined insurance policy to General Motors ("GM") and its subsidiaries including RFC. The Primary Underwriters issued Policy No. FD000142 (the "Primary Policy" or the "Policy"). The other insurers are Excess Insurers who issued Excess Policies that "follow form" and mirror the Primary Policy with respect to all provisions applicable to this Motion. Decision at 12 and n.9.

[10] Decision at 10-11. Corresponding judgments were awarded to Class Plaintiffs as Allowed Claims in the amount of the Settlements. Id.

[11] The coverage arises from Insuring Clause I.D.(a) of the Policy for errors and omissions (the "Insuring Clause"), which provides:

Underwriters shall pay on behalf of the Assureds:

"Loss" is defined at Section II.V.1 of the Primary Policy as follows:

> V.1 "**Loss** means [in relevant part] as used in Insuring Clause. . . I.D, damages, judgments, settlements and **Costs, Charges and Expenses** incurred by any of the **Assureds**, but shall not include:
>
> (a) amounts deemed uninsurable under the law pursuant to which this Policy shall be construed; provided, however, that insurability shall be governed by such applicable law which most favors coverage for such **Loss** among the following:
>
> > (i) where those damages were awarded or imposed;
> > (ii) where the **Wrongful Act** occurred;
> > (iii) where the **Company** is incorporated;
> > (iv) where the **Company** has its principal place of business;
>
> (b) taxes, sanctions or criminal, civil or regulatory fines or penalties imposed by law[.][12]

The Insurers' Motion made two independent requests for partial summary judgment with respect to whether the Settlements are covered Loss, both of which were rejected by the Court as a matter of law. The Insurers first requested partial summary judgment based on their argument that the Settlements involved damages that were punitive in nature.[13] The Insurers admitted that punitive damages are a covered Loss under the Policy, but nevertheless contended that the Loss provisions are nullified based on New York public policy against insuring punitive damages.

The Bankruptcy Court denied the Insurers' summary judgment request on this issue. The Bankruptcy Court first determined that punitive damages are covered due to the Choice-of-Law provision under subsection V.1.(a) of the Policy's definition of Loss (the "Coverage COL Proviso"), a conclusion the Insurers did not dispute. As the Court explained, under the Coverage

---

(a) Loss which the Assureds shall become legally obligated to pay by reason of any Claim first made against such Assured during the Policy Period resulting directly from a Wrongful Act committed by a Professional Liability Assured or by any person or entity for whose conduct a Professional Liability Assured is legally responsible in rendering or failing to render Professional Services. . . ."

*See also* Decision at 12; Primary Policy [Adv. ECF No. 336-1 § I.D(a)]; Punitives-Penalties - Policy Terms [Adv. ECF No. 949-4].

[12] Decision at 13; *see also* Primary Policy [Adv. ECF No. 336-1 at §II.V.1].

[13] The Insurers argued that the entire Mitchell Class Settlement and most of the Kessler Class Settlement were punitive in nature. *See, e.g.*, [Adv. ECF No. 857 at 1-2].

3

COL Proviso, Delaware is one of the applicable choices of law because GM was incorporated in that state (*see* Policy, § V.1.(a)(iii)).[14] The Bankruptcy Court further noted that "the Insurers readily concede that Delaware law permits insurance of punitive damages and is a state whose law can be applied under the Coverage COL Proviso [Policy, § V.1.a]."[15] The Bankruptcy Court then turned to the Insurers' contention that New York public policy applied to trump or override the express policy language allowing coverage for punitive damages.[16] Based on applicable law, legal precedents, and undisputed material facts, the Bankruptcy Court held it did not: "New York substantive law precluding insurance coverage for punitive damages does not apply."[17] The Bankruptcy Court therefore determined as a matter of law that the Class Plaintiffs were not "barred from recovering from the Insurers on the portions of the claims that arise from what the Insurers assert are punitive damages…."[18]

---

[14] Applying the Loss provision to the parties' dispute, the Court found that "the 'applicable law' could be that of Michigan (GM's principal place of business and where the Policies were primarily negotiated); Delaware (GM's state of incorporation); or Minnesota (RFC's principal place of business and where many of the Wrongful Acts occurred)." Decision at 39; *see also* Decision at 6 ("[T]he policies specify that their scope of coverage is to be determined applying the most broadly permissive relevant source of state law. Delaware law concededly is among the states whose law applies under that provision, and Delaware law does not bar insurance coverage of punitive damages.").

[15] Decision at 39. It is undisputed that, as GM's principal place of business, Michigan is also an "applicable law" under §II.V.1(a)(iv) of the Policy. [Adv. ECF No. 918 at 5, ¶ 8] Although the Insurers refused to acknowledge punitive damages are also insurable under Michigan law, it was not necessary for the Bankruptcy Court to determine whether Michigan law also permits insuring punitive damages. As the Court explained, the Insurers' concession that Delaware law permits insurance coverage for punitive damages "makes immaterial a disagreement as to whether Michigan law also permits insuring punitive damages, because the Proviso requires applying 'applicable law which most favors coverage.'" Id. at 39-40. For authority that Michigan law in fact allows coverage for punitive damages, *see* [Adv. ECF No. 900 at 24-25].

[16] Decision at 40.

[17] Decision at 52; *see also* Decision at 6 ("The Court does not accept the Insurers' contention that a limited public-policy based aspect of New York's choice of law principles calls for deviating from New York's usual willingness to enforce agreements as to what law applies; among other things, New York lacks a sufficiently strong state interest in the matter for its public-policy choice-of-law override to apply here.").

[18] Decision at 5. For purposes of the Motion and giving Insurers all inferences in their favor, the Bankruptcy Court assumed *arguendo* the punitive nature of the damages (Decision at 40), but specifically determined that, "because New York substantive law precluding insurance coverage for punitive damages does not apply, the Court need not and does not analyze whether the damages addressed here are 'punitive'…" Decision at 52. The Class Plaintiffs did not agree that any portion of the Kessler Class Settlement was punitive (*see* n.28, *infra*), but even if so, as determined by the Bankruptcy Court, coverage was not precluded. *See, e.g.*, Decision at 52.

The Insurers' second request for partial summary judgment was based on the carveout to the definition of Loss for "taxes, sanctions or criminal, civil or regulatory fines or penalties imposed by law."[19] (Policy, § II.V.1.(b)) The Insurers argued this provision excluded coverage for the bulk of the Kessler Class Settlement, which the Insurers contended was comprised of "statutory penalties"[20] in excess of compensatory damages, such as certain "enhanced damages" provided for by HOEPA.[21] It was not.[22] Moreover, as the Bankruptcy Court determined, the carveout from the Policy's definition of Loss does not exclude coverage for the Kessler Class Settlement because it applies "only to amounts imposed by, and/or payable to, governmental entities,"[23] and does <u>not</u> apply to "actions brought by private individuals under state or federal statutes to redress private wrongs."[24] The Kessler Action, which resulted in the Kessler Class Settlement, was indisputably a private action and "Section II.V.1(b)'s carveout from the definition of Loss therefore does not exclude the types of statutory or punitive damages for which the Class Plaintiffs seek coverage."[25] As a result, there was no need for the Court to assess whether the Insurers' characterization of the Kessler Class Settlement as punitive was correct.[26] Regardless of how the Kessler Class Settlement was characterized by the Insurers (or in Class Plaintiffs' view, mischaracterized), "[u]nder the

---

[19] [Adv. ECF No. 336-1 (Primary Policy) at § II.V.1(b)].

[20] Although the carveout from the definition of Loss in §II.V.1(b) of the Policy does not include any reference to "statutory penalt[ies]," the Insurers argued that more than 99% of the Kessler Class Settlement was punitive because it was for "statutory penalties" and to that extent excluded by §II.V.1(b) of the Policy. [Adv. ECF No. 857 at 19].

[21] Decision at 49; *see also* [Adv. ECF No. 917 at 13 and 15-20].

[22] Class Plaintiffs adamantly dispute the Insurers' characterization of the Kessler Class Settlement as punitive and comprised of "statutory penalties." The Kessler Class Settlement was purely compensatory, and no part of the $300 Million could be deemed a civil penalty as "the entirety of losses RFC incurred in connection with the Kessler Settlement Class Action were tied to and calculated using actual loan fees and interest paid amounts, that were sufficiently reflective of the actual outlays and interest and loan fee amounts that the Kessler Settlement Class paid." [Adv. ECF No. 900 at 40-42].

[23] Decision at 51.

[24] Decision at 50; *see also* Decision at 51 (noting that the Insurers "fail to point to any Policy language using 'civil penalty' to refer to damages based on private rights of action").

[25] Decision at 51.

[26] *See* Decision at 52 (Bankruptcy Court noting that it "need not and does not analyze whether the damages addressed here are 'punitive'…").

proper reading of the Policy's language, the Class Plaintiffs' damages are not excluded from the definition of Loss by the carveout in section II.V.1(b)."[27]

Importantly, as the Bankruptcy Court made clear in its Decision, its ruling on both of the summary judgment issues raised by the Insurers were legal ones:

> The Court thus concludes, *as a matter of law*, that the damages which Plaintiffs[sic][28] characterize as statutory penalties and/or punitive damages are

---

[27] For purposes of the Motion, the Bankruptcy Court gave the Insurers the benefit of their characterization of the Kessler Class Settlement. The Bankruptcy Court considered the issue in terms of whether any of the Kessler Class Plaintiffs' underlying claims (as opposed to the Kessler Class Settlement) would be excluded from Loss under the Policy's Section II.V.1(b)'s carveout. The Bankruptcy Court determined that even if the damages for violation of the statutes at issue included "trebled, enhanced, or multiple damages of any kind," the carveout would not exclude such damages:

> > If the parties had wished to convey a broader meaning encompassing statutory, enhanced, multiple, or punitive damages in actions brought by private individuals under state or federal statutes to redress private wrongs, they could have. The carveout does not exclude, for example, "statutory damages," "treble, enhanced, or multiple damages of any kind," or "damages made available to consumers under TILA, HOEPA, RESPA, or similar statutes."

Decision at 50; *see also* Decision at 52 (Bankruptcy Court noting that it "need not and does not analyze whether the damages addressed here are 'punitive'…").

[28] The Bankruptcy Court's reference to "Plaintiffs" rather than Insurers with respect to the characterization of Class Plaintiffs' damages is a misnomer. Only the Insurers characterized the Kessler Class Settlement as involving "statutory penalties," a term that does not appear anywhere in the Policy's §II.V.1(b) carveout. The Bankruptcy Court obviously meant the Insurers' characterization. It is undisputed (and clear from the briefing on the Motion) that Class Plaintiffs do not characterize any of the Kessler Class Settlement as "statutory penalties and/or punitive damages." It was also made clear at oral argument:

```
 9        MR. WALTERS: Okay. Next, with respect to the
10    HOEPA -- RESPA and HOEPA damages we've talked about here. All
11    of those damages, under the high-cost home equity mortgages,
12    all of those damages are remedial. They are reflective of the
13    damages caused the borrowers by these loans. Not just any
14    loans, but these particular high-cost loans characterized by
15    illegal kickbacks, excessive fees, and misrepresented APRs.
16    They are not punitive damages, or penalties imposed by law.
17    They're just damages that's set by a statute, and that in a
18    sense they're sort of a statutory liquidated damages provision
19    that the government has set for the statute. They're not
20    penalties, and they're not punitives. And in fact, if you look
21    at them they're saying that those damages are the fees you paid
22    and the interest that are paid. That varies by each individual
23    borrower, and obviously is reflective of the actual damages
24    caused to an individual borrower who took out these loans.
25    And as you know, Judge, the 300 million Kessler
 1    settlement, when you divide that by the number of loans -- and
 2    there's 70,000 borrowers, but if you just divide it by the
 3    number of loans, that's only about 6,700 dollars per loan.
 4    That's if you take out some kind of attorney fee amount, the
 5    remaining amount wouldn't even give them back their fees that
```

insurable, both under the Policy and under applicable State law. Accordingly, the Insurers' motion for partial summary judgment as to the insurability of these damages is denied.[29]

Class Plaintiffs did not originally move for summary judgment on the issues raised in the Motion. Upon receipt of Insurers' Motion, however, it became clear not only that the Insurers' Motion should be denied (as was later determined by the Bankruptcy Court), but also that the undisputed material facts and applicable law dictated that summary judgement should be granted in favor of Class Plaintiffs. In their opposition brief, Class Plaintiffs therefore requested or cross moved for summary judgement in their favor on the same issues raised by the Insurers in their Motion. [Adv. ECF No. 900 at 44].[30]

Based strictly on the fact Class Plaintiffs did not file a formal cross-motion, the Bankruptcy Court declined to grant Class Plaintiffs' request for partial summary judgment.[31]  The mere lack of a formal motion, however, should not have precluded summary judgment in favor of Class Plaintiffs. Discovery was complete, the material facts on the issue raised in the Motion were

---

<div style="padding-left:2em;">

6       they've paid on these loans on average. So certainly these

7       damages that we're talking about, **these statutory damages are**

8       **compensatory**.

</div>

[Adv. ECF No. 959 (May 12, 2022 Errata Corrected Hearing Tr.) at 287-288 (emphasis added)]. This is further made clear by the Bankruptcy Court's heading to the section of the Decision that discusses the Insurers' Motion: "The Plaintiffs Are Not Precluded From Recovering Portions of Their Claims That Arise From What *Insurers* Characterize as 'Punitive Damages' and/or 'Statutory Penalties.'" Decision at 37 (emphasis added). However, to the extent any of the Kessler Class Settlement is, as the Insurers argued and the Class Plaintiffs dispute, characterized as punitive damages, for purposes of the GM policies, such damages are insurable Loss under the Coverage COL Proviso. With respect to the Mitchell Class Settlement, Class Plaintiffs do not dispute that it resolved punitive damages claims against RFC as well as a pending motion for sanctions alleging litigation misconduct by RFC and its counsel. [Adv. ECF No. 900 at 10].

[29] Decision at 52 (emphasis added).

[30] The heading at Section IV of Class Plaintiffs' opposition brief provides: "THE COURT SHOULD AFFIRMATIVELY HOLD AS A MATTER OF LAW THAT THE 'AMOUNTS' RFC 'INCURRED' IN THE FORM OF THE MITCHELL AND KESSLER SETTLEMENTS CONSTITUTED A 'LOSS' FOR PURPOSES OF INSURING CLAUSE § I.D. [ERRORS AND OMISSIONS LIABILITY]. Class Plaintiffs also provided a statement of undisputed facts that refuted the Insurers' claim for summary judgment and instead established summary judgment should be entered in favor of Class Plaintiffs on the issues raised in the Motion. [Adv. ECF No. 897- 897-30] ; *see also* [Adv. ECF No. 918 (Defendants' Response to Class Plaintiffs' Statement of Supplemental Facts as to Punitive Damages and Statutory Penalties)].

[31] Decision at 48 and 52.

undisputed, and in its Decision, the Bankruptcy Court determined the Settlements were, as a matter of law, insurable Losses under the Policy. The Bankruptcy Court should have taken the next step dictated by the circumstances and granted summary judgment in favor of Class Plaintiffs despite the lack of a formal motion. This Court should therefore not only adopt the Bankruptcy Court's ruling denying summary judgment in favor of the Insurers, but also grant summary judgment in favor of Class Plaintiffs on the insurability of the Settlements under the definition of Loss in the Policy.

## STANDARD OF REVIEW

The standard of review of this objection is *de novo*. The ruling on the Motion in the Decision is part of the Bankruptcy Court's Report and Recommendation to the District Court. The Bankruptcy Court's choice to submit a Report and Recommendation, and not a proposed Findings of Fact and Conclusions of Law, was deliberate, as the Bankruptcy Court explained during the course of the January 31, 2023 hearing before that Court.[32] But regardless of how the Decision is denominated, with respect to the Bankruptcy Court's decision not to grant summary judgment in favor of Class Plaintiffs on the issues raised in the Insurers' Motion, the Decision is reviewed *de novo*.[33]

## ARGUMENTS AND LEGAL AUTHORITIES

Under long-standing Second Circuit authority, the mere technical lack of a formal cross-motion should not be a basis for denying summary judgment when the undisputed material facts

---

[32] [Adv. ECF No. 974].

[33] *See Kirschner v. Agoglia*, 476 B.R. 75, 82-83 (S.D.N.Y. 2012) ("In referring bankruptcy matters to the bankruptcy court, a district court may inherently have the same right to require that the bankruptcy court prepare a non-binding report and recommendation to assist the district court as it might require of a magistrate judge or special master—provided the report is subject to de novo review."); *In re Coudert Bros. LLP*, No. 11-2785 CM, 2011 WL 5593147, at *13 (S.D.N.Y. Sept. 23, 2011) (treating determination by the bankruptcy court as a report and recommendation which was reviewed de novo).

and the law dictate summary judgment in favor of the non-moving party.[34]  Indeed, "[i]t is most desirable that the court cut through mere outworn procedural niceties and make the same decision as would have been made had [the non-moving party] made a cross-motion for summary judgment."[35] Where a court's analysis of a summary judgment motion "reveals that there are no genuine issues of material fact, but that the law is on the side of the non-moving party, [the court] may grant summary judgment in favor of the non-moving party even though it has made no formal cross-motion."[36] Rule 56(f) of the Federal Rules of Civil Procedure likewise authorizes the entry of summary judgment to a nonmovant when no formal motion is filed.[37]

While no formal motion was initially filed by Class Plaintiffs, in their opposition, Class Plaintiffs requested that the Bankruptcy Court deny the Insurers' Motion and enter summary judgment in favor of Class Plaintiffs (effectively a cross-motion) and hold that the Settlements are insurable Losses under the Policy and applicable state law.[38]  In its Decision, the Bankruptcy Court specifically determined "as a matter of law" the very ruling requested by Class Plaintiffs in their opposition briefing. It denied the Insurers' Motion and held that the damages claimed by Class Plaintiffs "are insurable, both under the Policy and under applicable State law."[39]  It is also telling that the Bankruptcy Court labeled the section of the Decision pertaining to the Motion as "The Plaintiffs Are Not Precluded from Recovering Portions of Their Claims that Arise From

---

[34] *Loc. 33, Int'l Hod Carriers Bldg. & Common Laborers' Union of Am. v. Mason Tenders Dist. Council of Greater New York*, 291 F.2d 496, 505 (2d Cir. 1961).

[35] *Id.*; *see also, e.g.*, *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir. 1991) (quoting *Loc. 33*, 291 F.2d at 505); *Goldman v. Breitbart News Network, LLC*, 302 F. Supp. 3d 585, 588 (S.D.N.Y. 2018) (same); *MyPlayCity, Inc. v. Conduit Ltd.*, No. 10 CIV. 1615 CM, 2012 WL 1107648, at *9 (S.D.N.Y. Mar. 30, 2012) (same), *adhered to on reconsideration*, No. 10 CIV. 1615 CM, 2012 WL 2929392 (S.D.N.Y. July 18, 2012).

[36] *Goldman,* 302 F. Supp. 3d at 588.

[37] Rule 56(f) provides: "Judgment Independent of the Motion. After giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56.

[38] [Adv. ECF No. 900 at 44].

[39] Decision at 52.

What Insurers Characterize as 'Punitive Damages' and/or 'Statutory Penalties,'" clearly showing that the Bankruptcy Court would have granted summary judgment in favor of Class Plaintiffs if the technicality of a formal cross-motion had been satisfied.[40] Obviously, the Bankruptcy Court decided that Class Plaintiffs and not the Insurers should be granted summary judgment on the insurability of the Settlements, but citing the lack of a formal motion, i.e., a "procedural nicety," it nevertheless refused to grant such summary judgment to the Class Plaintiffs, in derogation of long established Second Circuit precedent.[41]

The Insurers would have no cause to complain had the Bankruptcy Court granted summary judgment for Class Plaintiffs. The Insurers acknowledged in their Motion the lack of any factual dispute,[42] and this acknowledgement put the Insurers at risk of a summary judgment ruling against them on the issue. It is well-known that "the making of a motion for summary judgment exposes the moving party to the risk that summary judgment will be granted against him, if [as here] the submissions make clear that there is 'no genuine issue as to any material fact and that the [adverse] party is entitled to judgment as a matter of law.'"[43] No formal cross-motion is necessary if "(1) no genuine issue of material fact is in dispute; (2) the non-moving party is entitled to judgment as a matter of law; and (3) the moving party has had an adequate opportunity to come forward with all of its evidence."[44]

---

[40] *See* Decision at 114.

[41] Decision at 48 and 52. The Bankruptcy Court acknowledged the Class Plaintiffs' request to grant summary judgment in favor of Class Plaintiffs on these issues, but refused to do so based solely on the lack of a formal motion.

[42] *See, e.g.,* [Adv. ECF No. 859] (Insurers submitting their "statement of material undisputed facts as to which there is no genuine issued to be tried" in support of their Motion); [Adv. ECF No. 857] (Insurers repeatedly asserting that summary judgment is proper, claiming the settlements are uninsurable or excluded from coverage as a matter of law).

[43] *Siderius, Inc. v. M.V. Ida Prima*, 613 F. Supp. 916, 923 (S.D.N.Y. 1985); *In re AP Indus., Inc.*, 117 B.R. 789, 796 (Bankr. S.D.N.Y. 1990); *see also Balk v. New York Inst. of Tech.*, 683 F. App'x 89, 95 (2d Cir. 2017).

[44] *New York Marine & Gen. Ins. Co. v. Travelers Prop. Cas. Co. of Am.*, No. 21-CV-6083 (JMF), 2022 WL 4585421, at *1 (S.D.N.Y. Sept. 29, 2022).

When these criteria are met (as they are here), a court may grant summary judgment even *sua sponte* without notice and without a cross-motion (formal or otherwise). "The prevailing view in this Circuit is that a court need not give notice of its intention to enter summary judgment *against* the moving party," particularly when "the facts before the district court [are] fully developed so that the moving party suffer[s] no procedural prejudice."[45] A court may without notice "search the record and grant summary judgment to any party, even a non-moving party, when it is entitled to judgment…[t]he key question for the Court to ask in doing so is whether the facts are fully developed so that the moving party suffers no procedural prejudice."[46]

Here, there are no disputed material facts,[47] and the issues are purely legal ones.[48] Furthermore, there was and still is no procedural prejudice to Insurers if summary judgment is granted in favor of Class Plaintiffs. To the contrary, the Insurers had the benefit of a full record when they filed their Motion, as factual and expert discovery had been completed before the Motion was filed.[49] In addition, Class Plaintiffs' request for summary judgment in their opposition briefing was on the same issues raised by the Insurers in their Motion.[50] Under these

---

[45] *Coach*, 933 F.2d at 167 (emphasis in original); *Project Release v. Prevost*, 722 F.2d 960, 969 (2d Cir. 1983) ("a district judge may grant summary judgment to a non-moving party, if no genuine issues of material fact have been shown")

[46] *MyPlayCity*, 2012 WL 1107648, at *9; *see also Great Am. Ins. Co. v. Dorchester L.L.C.*, No. 14 CIV. 5475 (AKH), 2016 WL 11757228, at *4 (S.D.N.Y. Aug. 30, 2016) ("A motion for summary judgment searches the record, and the court may grant judgment to the respondent, rather than to the moving party if, on the same facts, circumstances, and legal arguments set forth by defendants in their motion, it is the respondent, not the moving party, that is entitled to such relief").

[47] *See* [Adv. ECF No. 918]. In addition, the Bankruptcy Court assumed arguendo (without deciding) that the Insurers' characterization of the Settlements was correct. Decision at 40 and 52.

[48] *Moorhead v. Vango Media, Inc.*, No. 86 CIV. 7005 (LBS), 1987 WL 16371, at *1 (S.D.N.Y. Aug. 28, 1987) (whether an agreement must be voided as being in conflict with public policy of the State of New York is a legal issue); *High Point Design, LLC v. LM Ins. Corp.*, 911 F.3d 89, 93 (2d Cir. 2018) (the interpretation of an insurance agreement is a question of law).

[49] *MyPlayCity*, 2012 WL 1107648, at *10 (finding no procedural prejudice or surprise to movant where the court granted summary judgment to nonmovant without notice; discovery was closed and the issue on which summary judgment was granted to the nonmovant was the same issue raised in the motion).

[50] *Coach*, 933 F.2d at 167 ("[T]he threat of procedural prejudice is greatly diminished if the court's *sua sponte* determination is based on issues identical to those raised by the moving party"); *MyPlayCity*, 2012 WL 1107648, at *10 (same).

circumstances neither notice[51] nor a formal motion is required.[52]  Moreover, in this case, the

Insurers' filing of a motion in and of itself put the Insurers on notice,[53] and the Insurers had actual

notice as well.  The Class Plaintiffs' cross request in their opposition left no question that the

Class Plaintiffs requested that the Bankruptcy Court grant summary judgment on the issue in their

favor, and the Insurers had every opportunity to address Plaintiffs' request in their Reply[54] and at

oral argument. The Insurers in fact acknowledged Class Plaintiffs' request for summary judgment

in their Reply,[55] but never mentioned a need for more time to file their reply in light of the request

and cited to no procedural unfairness in proceeding with the resolution of the issue on summary

---

[51] Rule 56(f)(1), which was adopted in 2010, includes a notice requirement. Second Circuit cases both before and after Rule 56(f)(1)'s adoption have nevertheless held that formal notice is not required if the moving party is not "procedurally prejudiced." *See Medacist Sols. Grp., LLC v. CareFusion Sols., LLC*, No. 19-CV-1309 (JMF), 2021 WL 293568, at *4 (S.D.N.Y. Jan. 28, 2021) (Rule 56(f)(1) has a notice requirement, "[a]s the Second Circuit has held, however, formal notice is not required if the moving party is not 'procedurally prejudiced' by the lack of notice"); *Roth v. 2810026 Canada Ltd.*, No. 13-CV-901-FPG, 2020 WL 746588, at *2 (W.D.N.Y. Feb. 14, 2020) ("Generally, Rule 56(f)(1) requires that a court give the parties notice and a reasonable time to respond before granting summary judgment for a nonmovant. But the Second Circuit has made clear that a district court has the discretion to grant summary judgment even without notice, so long as the parties have had a full and fair opportunity to address the grounds for summary judgment."); *Fed. Ins. Co. v. Zurich Am. Ins. Co.*, 445 F. App'x 405, 407 (2d Cir. 2011) (court could grant summary judgment without notice where losing party did not identify any relevant facts in dispute or come forward with legal arguments materially different from what was before the court at the time summary judgment was granted).

[52] *Project Release v. Prevost*, 722 F.2d 960, 969 (2d Cir. 1983) (district court properly granted summary judgment to non-moving party even without formal motion where non-moving party impliedly cross-moved on the issue in their opposing memoranda); *Admiral Ins. Co. v. Brookwood Mgmt. #10, LLC*, No. 16-CV-0437(SJF)(SIL), 2018 WL 5622595, at *26 (E.D.N.Y. Mar. 30, 2018) (granting summary judgment to nonmovant without formal motion where nonmovant made request for summary judgment in opposition papers on same issue raised in the motion); *Avail 1 LLC v. Adovasio*, No. 18 CIV. 11209 (PED), 2020 WL 4475271, at *1 (S.D.N.Y. Aug. 3, 2020) (court treated opposing parties' memorandum of law in opposition to motion as a cross-motion for summary judgment and granted summary judgment in favor of nonmoving party; movant had ample notice and opportunity to address the possibility of summary judgment for nonmovant in briefing and oral argument).

[53] *Medacist*, 2021 WL 293568, at *4 (A "[m]ovant has 'sufficient notice' … where [as here] the issue upon which the court grants summary judgment for the non-movant is the same issue that the movant briefed in support of its unsuccessful motion for summary judgment."); *Am. Council of Blind of New York, Inc. v. City of New York*, 495 F. Supp. 3d 211, 244 (S.D.N.Y. 2020) ("[S]o long as the parties are on notice that the statute of limitations is at issue and are permitted a 'full and fair [ ] opportunity to present evidence as to the applicability of the defense,' the Court may even g*rant* summary judgment on that basis *sua sponte*."); *see also* footnote 43, *supra*.

[54] [Adv. ECF No. 917].

[55] [Adv. ECF No. 917 at 22-23]; *see also* [Adv. ECF No. 918 at 2] (Insurers "submit their response to Class Plaintiffs' Statement of Supplemental Facts, [Adv.] ECF No. 897, filed in opposition to defendants' motion for summary judgment on punitive damages and statutory penalties, [Adv.] ECF No. 857, *and in support of Class Plaintiffs' request for summary judgment*, [Adv.] ECF No. 900 at 44." (emphasis added)).

judgment in favor of Class Plaintiffs. [56]  Each criterion for entry of summary judgment in favor of Class Plaintiffs is therefore satisfied.

One of the salutary objectives of summary judgment practice is to narrow the issues and define what issues are left for trial. As recognized by the Second Circuit, the very purpose of partial summary judgment motions is to "speed[ ] up litigation by eliminating before trial matters wherein there is no genuine issue of fact." [57]  The Bankruptcy Court specifically ruled "as a matter of law" that Class Plaintiffs' Loss relating to the Settlements "are insurable under both the Policy and under applicable state law," which was the very ruling requested by Class Plaintiffs in seeking summary judgment in their favor.  The Bankruptcy Court erred by not taking advantage of the clear opportunity to streamline the issues for trial by granting summary judgment to Class Plaintiffs.  The Class Plaintiffs' objection should therefore be sustained.

In any event, to avoid needlessly encumbering a trial or future proceedings, this Court should now consider the issue.  Absolutely no procedural unfairness would result from this Court's disposition of the legal issues raised in the Motion in favor of Class Plaintiffs at this stage of the proceedings. The Insurers will have yet another opportunity to respond to Class Plaintiffs' request for summary judgment when they submit their response to this objection. Material facts are not in dispute, discovery is complete, and the issues on which Class Plaintiffs seek judgment are identical to the ones raised in Insurers' Motion. The issue of whether summary judgment should be entered in favor of Class Plaintiffs with respect to the insurability of the Settlements (as decided by the Bankruptcy Court without granting summary judgment for Class Plaintiffs) is

---

[56]  The Insurers' only complaint was that a formal cross-motion was not timely filed (Adv. ECF No. 917), which per the authorities of the Second Circuit is simply a "procedural nicety" that should be "cut through" and summary judgment granted when there are no disputed facts. *Loc. 33*, 291 F.2d at 505.

[57]  *Algie v. RCA Glob. Commc'ns, Inc.*, 891 F. Supp. 875, 883 (S.D.N.Y. 1994), *aff'd*, 60 F.3d 956 (2d Cir. 1995). See also the comments to Rule 56, which explain the long-recognized benefit of granting partial summary judgment and provide that partial summary judgment "serves the purpose of speeding up litigation by eliminating before trial matters wherein there is no genuine issue of fact." (Advisory Committee Notes to Rule 56(d) (1946)).

ripe for decision as a matter of law, and the technicality of the lack of a formal cross-motion in the underlying proceedings should not be the reason judgment in favor of Class Plaintiffs is not granted now. Grant of summary judgment to Class Plaintiffs by the Court on these issues will finally resolve and eliminate them from future proceedings, which benefits the Court and the parties.

## CONCLUSION

For these reasons, the Court should, like the Bankruptcy Court, hold that the Mitchell and Kessler Class Settlements are "insurable, both under the Policy and under applicable state law" and grant partial summary judgment to Class Plaintiffs.

Dated:  May 22, 2023

**By:** */s/ R. Frederick Walters*

**WALTERS RENWICK RICHARDS
SKEENS & VAUGHAN, P.C.**
R. Frederick Walters, Esq.
Karen W. Renwick, Esq.
David M. Skeens, Esq.
Michael B. Sichter, Esq.
1100 Main, Suite 2500
Kansas City, Missouri 64105
(816) 421-6620 (Telephone)
(816) 421-4747 (Facsimile)
fwalters@wrrsvlaw.com
krenwick@wrrsvlaw.com
dskeens@wrrsvlaw.com
msichter@wrrsvlaw.com
*Counsel for the Kessler Class*
*Counsel for the Mitchell Class*

**CARLSON BROWN**
R. Bruce Carlson
222 Broad St.
PO Box 242
Sewickley, PA 15143
(724) 730-1753
bcarlson@carlsonbrownlaw.com
*Counsel for the Kessler Class*

**LYNCH CARPENTER, LLP**
Gary F. Lynch
Edwin J. Kilpela
Kelly K. Iverson
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
T: (412) 322-9243 F: (412) 231-0246
gary@lcllp.com
ekilpela@lcllp.com
kelly@lcllp.com
*Counsel for the Kessler Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 22, 2023, I caused a true and correct copy of the foregoing document to be served upon all counsel of record registered with the Court's ECF system, by electronic service via the Court's ECF transmission facilities.

**By:** _/s/ R. Frederick Walters_
        **WALTERS RENWICK RICHARDS**
        **SKEENS & VAUGHAN, P.C.**

**ADDENDUM TO:**

**CLASS PLAINTIFFS AGREE WITH THE BANKRUPTCY COURT'S RULING WHICH DENIED MOVING INSURERS' PARTIAL MOTION FOR SUMMARY JUDGMENT ON PUNITIVE DAMAGES AND STATUTORY PENALTIES, BUT CLASS PLAINTIFFS OBJECT IN THAT THE BANKRUPTCY COURT INCORRECTLY REFUSED TO GRANT PARTIAL SUMMARY JUDGMENT IN FAVOR OF CLASS PLAINTIFFS ON THESE SAME LEGAL ISSUES**

## I.      Excess Insurers' Initial Filings

- *Notice of Motion* [for Summary Judgment on Punitive Damages and Statutory Penalties (Adv. ECF No. 856)

- *Memorandum of Law in Support Of Defendants' Motion For Summary Judgment On Punitive Damages and Statutory Penalties* (Adv. ECF No. 857)

- *Rule 7056.1 Statement in Support Of Defendants' Motion For Summary Judgment On Punitive Damages and Statutory Penalties* (Adv. ECF No. 859)

- *Declaration of Daniel R. Bernstein* and exhibits attached thereto (Adv. ECF No. 858 through 858-3)

## II.      Class Plaintiffs' Filings in Opposition

- *Memorandum in Opposition to Defendants' Motion for Summary Judgment On Punitive Damages and Statutory Penalties* (Adv. ECF No. 900 and *Declaration of Christi M. Gumbs* (Adv. ECF No. 900-1)

- *Concise Statement of Supplemental Undisputed Facts in Support Of Class Plaintiffs' Memorandum In Opposition To Defendants' Motion For Summary Judgment On Punitive Damages and Statutory Penalties* (Adv. ECF No. 897)

- *Class Plaintiffs' Responses to Rule 7056.1 Statement in Support Of Defendants' Motion For Summary Judgment On Punitive Damages and Statutory Penalties* (Adv. ECF No. 895)

- *Declaration Of Roy Frederick Walters In Support Of Class Plaintiffs' Memorandum In Opposition To Defendants' Motion For Summary Judgment On Punitive Damages and Statutory Penalties* and exhibits attached thereto (Adv. ECF No. 897-1 through 897-30) (Filed Under Seal: Adv. ECF No's 897-17, 897-18, 897-19, 897-20 and 897-21)[58]

---

[58] The documents referenced in this Addendum as either "Redacted" or as "Filed Under Seal" will be filed with this Court in accordance with the Court's Individual Practices and other Court Rules.

**III.**      <u>**Excess Insurers' Filings in Reply**</u>

- *Reply In Support Of Defendant's Motion For Summary Judgment On Punitive Damages and Statutory Penalties* (Adv. ECF No. 917)

- *Defendants' Response To Class Plaintiffs' Statement Of Supplemental Facts as to Punitive Damages and Statutory Penalties* (Adv. ECF No. 918)

**IV.**      <u>**Post-Hearing Letters**</u>

- Correspondence from R. Frederick Walters to Judge David S. Jones, May 31, 2022 and Exhibits (Adv. ECF No. 954)

- Correspondence from Kent Yalowitz to Judge David S. Jones, June 7, 2022 (Adv. ECF No. 955)

- Correspondence from R. Frederick Walters to Judge David S. Jones, June 22, 2022 (Adv. ECF No. 956)

- Correspondence from Kent Yalowitz to Judge David S. Jones, June 24, 2022 (Adv. ECF No. 957)