**EXHIBIT A**

EXHIBIT
**20**
TO YALOWITZ
DECL.

Exhibit #

1-2

*IRP*



# Lloyd's Insurance

### Effected through

#### AON GROUP LIMITED

**This is to Certify** that in accordance with the authorisation granted under the Contract Number S23/FB0000295 to the undersigned by certain Underwriters at Lloyd's, whose definitive numbers and the proportions underwritten by them are shown in the Table attached hereto, and in consideration of the payment of the premium specified herein, the said Underwriters are hereby bound, severally and not jointly, their Executors and Administrators, to insure in accordance with the terms and conditions contained herein or endorsed hereon.

The identity of each of the Underwriters and the amount of his share may be ascertained by the Assured or the Assured's Representative on application to Aon Group Limited Financial Institutions and Professional Risks, quoting the Certificate Number specified in the Schedule.

If the Assured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Certificate shall become void and all claim hereunder shall be forfeited.

**In Witness** whereof this Certificate has been signed For and on behalf of Aon Group Limited on the dates specified below.

Signed _____ Signed _____

Date 17TH AUGUST 2001 Date 17th August 2001

J(A) NMA 2462 (AMENDED)

CONFIDENTIAL

Confidential

RFC-MITCHELL2-006139

CONFIDENTIAL
PROPRIETARY INFORMATION

RFC-PA-WB00019802

WBSV_DREN_0169089

## Schedule

Certificate No. 823/FD0001142          Contract No. 823/FB0000295

The name and address of the Assured

> GENERAL MOTORS CORPORATION
> 300 Renaissance Center
> Detroit
> Michigan 48265-3000
> U.S.A.

The risk, interest, location and limit(s) of indemnity hereunder

<u>COMBINED DIRECTORS AND OFFICERS AND COMPANY LIABILITY, PROFESSIONAL
LIABILITY, FIDUCIARY LIABILITY, AND EMPLOYMENT PRACTICES LIABILITY</u>

This Certificate being for 83.5860% part of 100% of 87.5000%. Underwriters hereon accept their
pro-rata proportion of:

- (a) any loss, whether total or partial;
- (b) associated expenses, if any, and
- (c) the premium;

all as more fully specified in the wording attached hereto which is hereby incorporated in and forms
part of this Certificate.

The percentages signed in the Table are percentages of 100% of 87.5000% of the amount(s) of
insurance stated herein.

(542 NCC 00238)

It is understood and agreed that any reference in the attached wording to "Policy" shall be deemed to
read "Certificate".

The Premium

The Period of Insurance from 15th December 2000 to 15th December 2003 both days at 12.01 a.m.
Local Standard Time and for such further period or periods as may be mutually agreed upon

Dated in LONDON 7th February 2001

$J$ or $J(A)$ (Schedule) NMA 2422 for attachment to NMA 2420, NMA 2421, NMA 2461 or NMA 2462

RFC-PA-WB00019803

RFC-MITCHELL2-006140

CONFIDENTIAL
PROPRIETARY INFORMATION


Confidential

WBSV_DREN_0169090

**COMBINED DIRECTORS AND OFFICERS LIABILITY AND COMPANY LIABILITY (INCLUDING EMPLOYMENT PRACTICES LIABILITY), ERRORS AND OMISSIONS LIABILITY, PENSION TRUST LIABILITY, AND MORTGAGEES ERRORS AND OMISSIONS INSURANCE POLICY**

RFC-MITCHELL2-006141

CONFIDENTIAL
PROPRIETARY INFORMATION

CONFIDENTIAL

Confidential

RFC-PA-WB00019804

WBSV_DREN_0169091

COMBINED ENDORSEMENTS APPLICABLE TO ALL SECTIONS OF THIS POLICY

| | |
|---|---|
| Endorsement No. 1 | Nuclear Incident Exclusion Clause-Liability-Direct (Broad) – NMA 1256. |
| Endorsement No. 2 | Radioactive Contamination Exclusion Clause-Liability-Direct – NMA 1477 |
| Endorsement No. 3 | Service of Suit Clause (USA) – NMA 1998. |
| Endorsement No. 4 | Combined Aggregate Limit of Liability and Round the Clock Reinstatement Endorsement. |

RFC-MITCHELL2-006142

CONFIDENTIAL
PROPRIETARY INFORMATION

CONFIDENTIAL

RFC-PA-WB00019805

01783858.DOC

Page 4

Confidential

WBSV_DREN_0169092

GENERAL ENDORSEMENT NUMBER 1

Attaching to and forming part of Certificate No. 823/FD0001142.

In favour of: GENERAL MOTORS CORPORATION.

### NUCLEAR INCIDENT EXCLUSION CLAUSE-LIABILITY-DIRECT (BROAD)
(Approved by Lloyd's Underwriters' Non-Marine Association)

For attachment to insurances of the following classifications in the U.S.A., its Territories and Possessions, Puerto Rico and the Canada Zone:-

Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability),

not being insurances of the classification to which the Nuclear Incident Exclusion Clause-Liability-Direct (Limited) applies.

This Policy*

does not apply:-

I.  Under any Liability Coverage, to injury, sickness, disease, death or destruction

(a)  with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b)  resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II.  Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III.  Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

(a)  the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

(b)  the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c)  the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

RFC-MITCHELL2-006143

CONFIDENTIAL
PROPRIETARY INFORMATION

CONFIDENTIAL

RFC-PA-WB00019806

01783858.DOC

Page 5

Confidential

WBSV_DREN_0169093

IV.     As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means

(a)     any nuclear reactor,

(b)     any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c)     any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d)     any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

*NOTE:-     As respects policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.

**17/3/60**
N.M.A 1256

All other terms, conditions and limitations remain unaltered.

RFC-MITCHELL2-006144

CONFIDENTIAL
PROPRIETARY INFORMATION

CONFIDENTIAL

RFC-PA-WB00019807

01783858.DOC

Confidential

Page 8

WBSV_DREN_0169094

## GENERAL ENDORSEMENT NUMBER 2

Attaching to and forming part of Certificate No. 823/FD0001142

In favour of: GENERAL MOTORS CORPORATION.

**U.S.A.**

### RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE-LIABILITY-DIRECT
(Approved by Lloyd's Underwriters' Non-Marine Association)

For attachment (in addition to the appropriate Nuclear Incident Exclusion Clause-Liability-Direct) to liability insurances affording worldwide coverage.

In relation to liability arising outside the U.S.A., its Territories or Possessions, Puerto Rico or the Canal Zone, this Policy does not cover any liability of whatsoever nature directly or indirectly caused by or contributed to by or arising from ionising radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel.

13/2/64
N.M.A. 1477

All other terms, conditions and limitations remain unaltered.

RFC-MITCHELL2-006145

CONFIDENTIAL
PROPRIETARY INFORMATION

CONFIDENTIAL

RFC-PA-WB00019808

01783858.DOC

Confidential

Page 7

WBSV_DREN_0169095

## GENERAL ENDORSEMENT NUMBER 3

Attaching to and forming part of Certificate No. 823/FD0001142

In favour of:  GENERAL MOTORS CORPORATION.

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any State in the United States.  It is further agreed that service of process in such suit may be made upon Sedgwick, Detert, Moran & Arnold, attention Chris Kerns, 7th Floor, The Rookery, 209 South LaSalle Street, Chicago, Illinois 60604-1202, and that in  any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorised and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Insured (or Reinsured), to give a written undertaking to the Insured (or Reinsured), that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured), or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorised to mail such process or a true copy thereof.

N.M.A. 1998 (24/4/86)

All other terms, conditions and limitations remain unaltered.

RFC-MITCHELL2-006146

CONFIDENTIAL
PROPRIETARY INFORMATION

CONFIDENTIAL

RFC-PA-WB00019809

Confidential

WBSV_DREN_0169096

## GENERAL ENDORSEMENT NUMBER 4

Attaching to and forming part of Certificate No. 823/FD0001142

In favour of:  GENERAL MOTORS CORPORATION.

### COMBINED AGGREGATE LIMIT OF LIABILITY AND ROUND THE CLOCK REINSTATEMENT

Notwithstanding anything to the contrary contained herein, it is understood and agreed that Underwriters liability under this Policy in respect of all Sections is subject to an overall aggregate limit of USD50,000,000 combined during the **Policy Period.**

It is further understood and agreed that said overall aggregate limit shall be reduced by the amount of any payment made under any Section of this Policy and only the remaining amount of the aggregate limit so reduced shall be available for subsequent payments under any other Section of this Policy.

Notwithstanding the foregoing, the **Parent Company** may elect, prior to the end of the **Policy Period,** to reinstate the Limit of Liability of this Policy a single time, effective only upon the payment of an additional premium (calculated at 150% of the pro-rata unearned premium for this Policy, but not less than 150% of the annualized premium) within 30 days after notification to Underwriters of the **Parent Company's** election to reinstate the Limit of Liability.

In the event the foregoing reinstatement option is exercised, the total maximum aggregate liability of Underwriters under this Policy shall be USD100,000,000; provided, however, that the total liability of Underwriters for any one **Claim** or for any one **Loss** shall never exceed USD50,000,000.

If payment has been made under this Policy but such payment has not exhausted the original Limit of Liability, the remaining portion of the original Limit of Liability plus the reinstated portion of the Limit of Liability shall only apply to any subsequent **Loss** resulting from a subsequent **Claim.** In no event shall the Limit of Liability for any one **Claim** or any one **Loss** exceed USD50,000,000.

The reinstated portion of the Limit of Liability shall:

(a)     not apply to any **Claim** made or any **Loss** sustained prior to the **Parent Company's** election to reinstate the Limit of Liability unless, and then only to the extent that, another **Claim** made or **Loss** sustained after the **Parent Company's** election to reinstate the Limit of Liability has first exhausted the original Limit of Liability, and

(b)     only apply after the Limit of Liability of this Policy and the limit of liability of Excess Policy No. 823/FD0001144 is completely exhausted by actual payment of covered **Loss.**

All other terms, conditions and limitations remain unaltered.

RFC-MITCHELL2-006147

CONFIDENTIAL
PROPRIETARY INFORMATION

CONFIDENTIAL

RFC-PA-WB00019810

01783858.DOC


Confidential

WBSV_DREN_0169097

RFC-MITCHELL2-006148

CONFIDENTIAL
PROPRIETARY INFORMATION

## DECLARATIONS

THIS POLICY IS WRITTEN ON A CLAIMS-MADE BASIS AND COVERS ONLY **CLAIMS** FIRST MADE AGAINST THE **ASSUREDS** DURING THE **POLICY PERIOD**. AMOUNTS INCURRED AS **COSTS, CHARGES AND EXPENSES** SHALL REDUCE AND MAY EXHAUST THE LIMIT OF LIABILITY AND ARE SUBJECT TO THE RETENTIONS. THIS POLICY DOES NOT PROVIDE FOR ANY DUTY BY UNDERWRITERS TO DEFEND ANY OF THE **ASSUREDS**.

UNDERWRITERS HAVE NO DUTY OR OBLIGATION TO DEFEND ANY **CLAIM**. ALL **COSTS, CHARGES AND EXPENSES** ARE PART OF AND NOT IN ADDITION TO THE APPLICABLE LIMIT OF LIABILITY.

Policy Number:

| | | | |
|---|---|---|---|
| Item A. | (1) | **Parent Company:** | GENERAL MOTORS CORPORATION |
| | | Principal Address: | 300 Renaissance Center<br>Detroit<br>Michigan 48265-3000 |
| | | State of Incorporation: | Delaware. |
| | (2) | **Sponsor Organization(s):** | General Motors Corporation and **Subsidiaries** |
| | (3) | Any **Employee Benefit Plan** or Plan | |

Item B.    **Policy Period:**

From 15th December, 2000 to 15th December, 2003 both days at 12:01 a.m. Local Standard Time at the Principal Address stated in Item A(1).

Item C.    Limit of Liability:

| | | |
|---|---|---|
| | (1) | SECTION ONE: | USD 50,000,000 each **Claim** and in the aggregate for the **Policy Period.** |
| | (2) | SECTION TWO: | The Limit of Liability for each Section in Section Two of this Policy is: |

| Section: | Limit of Liability: |
|---|---|
| A(1): | USD Not Covered |
| A(2): | USD50,000,000 each claim and in the aggregate for the **Policy Period** (but A(2)b) & A(2)c) subject to limitations below) |
| A(3): | USD Not Covered |
| B(1): | USD50,000,000 each claim and in the aggregate for the **Policy Period** |
| B(3): | USD50,000,000 each claim and in the aggregate for the **Policy Period** |
| B(4): | USD50,000,000 each claim and in the aggregate for the **Policy Period** |
| B(5): | USD50,000,000 each claim and in the aggregate for the **Policy Period** |
| C: | USD Not Covered |

CONFIDENTIAL

RFC-PA-WB00019811



Confidential

WBSV_DREN_0169098

RFC-MITCHELL2-006149

D:        USD50,000,000 each claim and in the aggregate for the **Policy Period** (but D(1)b) and D(2) subject to limitation below)

Provided always that the Underwriters' Limit of Liability shall not exceed USD50,000,000 in respect of any one loss or series of losses and/or any one claim or series of claims attributable to or arising out of the same cause, event or occurrence regardless of the number of locations involved.

Subject to the provisions contained in General Endorsement Number 4.

Item D.    Retentions:

(1)    SECTION ONE:

    (a)    Under Insuring Clause I.A.: Nil

    (b)    Under Insuring Clause I.B., Insuring Clause I.C., and in the aggregate where coverage for a single **Claim** is provided under Insuring Clauses I.B. and I.C.: USD5,000,000 each **Claim**, except as follows:

        (i)    USD500,000    each **Claim** against any **Foreign Subsidiary** with assets less than USD500 million

        (ii)    USD1,000,000    each **Claim** against any **Foreign Subsidiary** with assets of USD500 million or greater and less than USD1 billion

        (iii)    USD3,000,000    each **Claim** against any **Foreign Subsidiary** with assets of USD1 billion or greater and less than USD2.5 billion

    For purposes of (i), (ii), (iii), above, the assets of a **Foreign Subsidiary** will be measured at the time the **Claim** is first made.

        (iv)    USD10,000,000 each **Claim** for an **Employment Practice Violation**

    (c)    Under Insuring Clause I.D.: USD5,000,000 each **Claim**

    (d)    Under Insuring Clause I.E.(a):

    USDNil each Claim;

    Under Insuring Clause I.E.(b):

    USD5,000,000 each **Claim**, except as follows:

    (a)    USD10,000 each **Claim** with respect to SAAB Cars USA

    (b)    USD175,000 each **Claim** with respect to Hughes Electronics Corporation and Subsidiary.

(2)    SECTION TWO:

| Section: | Retention: |
| --- | --- |
| A(1) | Not Covered |
| A(2) | USD5,000,000 any one claim |
| A(3) | Not Covered |
| B(1) | USD5,000,000 any one claim |
| B(3) | USD5,000,000 any one claim |
| B(4) | USD5,000,000 any one claim |
| B(5) | USD5,000,000 any one claim |

CONFIDENTIAL

RFC-PA-WB00019812

CONFIDENTIAL
PROPRIETARY INFORMATION


Confidential

WBSV_DREN_0169099

|  |  | C | Not Covered |
|---|---|---|---|
|  |  | D | USD5,000,000 any one loss |

Item E.   Premium:   USD7,743,750

Item F.   (1)   Premium for **Optional Extension period:** USD2,765,625.

(2)   Length of **Optional Extension Period**: One Year.

Item G.   Notice: Pursuant to Clause VI, notice shall be given to:

Eugene V. Elsbree III
Sedgwick, Detert, Moran & Arnold
One Embarcadero Center
Sixteenth Floor
San Francisco
California 94111-3628

Item H.   Prior/Pending Date:

Insuring Clause I.A, I.B, I.C.:

None, except 15th December, 2000 for **Claims** involving **Employment Practices Violations**.

Insuring Clause I.D:

1st August, 1987 for **Claims** made against GMAC Mortgage Group, and 15th December, 2000 for **Claims** made against **Assureds** other than GMAC Mortgage Group

Insuring Clause I.E.:

20th October, 1987

Item I.   Retroactive Date:

1st September, 1998 for **Mortgage Fee Claims** only

Item J.   Endorsements attached at Issuance:

| Endorsement No. 1. | Nuclear Incident Exclusion Clause – Liability - Direct (Broad) NMA 1256. |
|---|---|
| Endorsement No. 2 | Radioactive Contamination Exclusion Clause – Liability - Direct - NMA 1477. |

RFC-MITCHELL2-006150

CONFIDENTIAL
PROPRIETARY INFORMATION

CONFIDENTIAL

RFC-PA-WB00019813

Confidential

WBSV_DREN_0169100

### SECTION ONE

DIRECTORS AND OFFICERS LIABILITY AND COMPANY LIABILITY (INCLUDING EMPLOYMENT PRACTICES LIABILITY), ERRORS AND OMISSIONS LIABILITY, AND PENSION TRUST LIABILITY

THIS SECTION ONE IS A CLAIMS MADE AND REPORTED POLICY. SUBJECT TO ITS TERMS, THIS POLICY APPLIES ONLY TO ANY **CLAIM** FIRST MADE DURING THE **POLICY PERIOD** PROVIDED SUCH **CLAIM** IS REPORTED TO UNDERWRITERS AS SOON AS PRACTICABLE BUT IN NO EVENT LATER THAN 60 DAYS AFTER THE END OF THE **POLICY PERIOD**. AMOUNTS INCURRED AS **COSTS, CHARGES AND EXPENSES** SHALL REDUCE AND MAY EXHAUST THE LIMIT OF LIABILITY AND ARE SUBJECT TO THE RETENTIONS. THIS POLICY DOES NOT PROVIDE FOR ANY DUTY BY UNDERWRITERS TO DEFEND ANY OF THE **ASSUREDS**.

In consideration of the premium, in reliance on the **Application** and subject to all of the provisions of this Policy, Underwriters and the **Assureds** agree as follows:

I.    INSURING CLAUSES

    A.    DIRECTORS AND OFFICERS LIABILITY (INDIVIDUAL)

        Underwriters shall pay on behalf of the **Directors and Officers Loss** resulting from any **Claim** first made against the **Directors and Officers** during the **Policy Period** for an **Individual Act**.

    B.    DIRECTORS AND OFFICERS LIABILITY (COMPANY REIMBURSEMENT)

        Underwriters shall pay on behalf of the **Company Loss** which the **Company** is required or permitted to pay as indemnification to any of the **Directors and Officers** resulting from any **Claim** first made against the **Directors and Officers** during the **Policy Period** for an **Individual Act**.

    C.    COMPANY LIABILITY

        Underwriters shall pay on behalf of the **Company Loss** resulting from any **Claim** first made against the **Company** during the **Policy Period** for a **Corporate Act**.

    D.    ERRORS AND OMISSIONS LIABILITY

        Underwriters shall pay on behalf of the **Assureds**:

        (a)    **Loss** which the **Assureds** shall become legally obligated to pay by reason of any **Claim** first made against such **Assured** during the **Policy Period** resulting directly from a **Wrongful Act** committed by a **Professional Liability Assured** or by any person or entity for whose conduct a **Professional Liability Assured** is legally responsible in rendering or failing to render **Professional Services**, and

        (b)    **Costs, Charges and Expenses** which the **Assured** shall become legally obligated to pay by reason of any **Mortgage Fee Claim** first made against the **Assured** during the **Policy Period** resulting directly from any **Wrongful Act** committed by a **Professional Liability Assured** or by any person or entity for whose conduct a **Professional Liability Assured** is legally responsible in rendering or failing to render **Professional Services**.

RFC-MITCHELL2-006151

CONFIDENTIAL
PROPRIETARY INFORMATION

CONFIDENTIAL

RFC-PA-WB00019814

01783858.DOC

Confidential

WBSV_DREN_0169101

E.   PENSION TRUST LIABILITY

   (a)   Underwriters shall pay on behalf of the natural person **Pension Trust Liability Assureds** all **Loss** which such natural person **Pension Trust Liability Assureds** shall become legally obligated to pay because of any **Wrongful Act** or because of any **Wrongful Act** by any other person for whom such natural person **Pension Trust Liability Assureds** are legally responsible, or arising solely out of such natural person **Pension Trust Liability Assureds** capacity as a fiduciary (as that term is defined in **ERISA**) of any **Employee Benefit Plan(s)**, and where indemnification is not made to the fullest extent permitted by law.

   (b)   Underwriters shall pay on behalf of the **Pension Trust Liability Assureds** all **Loss** which such **Pension Trust Liability Assureds** shall become legally obligated to pay because of any **Wrongful Act** or because of any **Wrongful Act** by any other person for whom such **Pension Trust Liability Assureds** are legally responsible, or arising solely out of such **Pension Trust Liability Assureds** capacity as a fiduciary (as that term is defined in **ERISA**) of any **Employee Benefit Plan(s)**.

II.   DEFINITIONS

The following terms whenever used in this Policy in boldface type shall have the meanings indicated.

A.   **"Administrator"** means a person who performs one or more of the following duties:

   1.   giving counsel to employees and beneficiaries with respect to any **Plan(s)**;

   2.   interpreting **Plan(s)**;

   3.   handling records in connection with a **Plan(s)**; or

   4.   effecting enrollment, termination or cancellation of employees under a **Plan(s)**.

B.   **"Application"** means:

   1.   the application for this Policy or any policy of which this Policy is a renewal; and

   2.   any materials submitted therewith, which shall be retained on file by Underwriters and shall be deemed attached hereto, as if physically attached hereto.

C.   **"Assureds"** means:

   1.   the **Company**,

   2.   the **Directors and Officers**

   3.   any **Professional Liability Assured**

   4.   any **Pension Trust Liability Assured**

D.   **"Breach of Fiduciary Duty"** means:

   1.   with respect to a **Pension Trust Liability Assured**, the violation of any of the responsibilities, obligations or duties imposed upon fiduciaries by **ERISA**, with respect to any **Plan** named in Item A(3) of the Declarations.

   2.   with respect to an **Administrator**, any negligent act, error or omission solely in the performance of one or more administrative duties listed in Definition (A) above, but only if such duties are authorized by the **Sponsor Organization** or the **Plan(s)**.

E.   **"Claim"** means:

   1.   any written or oral demand for damages or other relief against any of the **Assureds**; or

CONFIDENTIAL

RFC-MITCHELL2-006152

CONFIDENTIAL
PROPRIETARY INFORMATION

RFC-PA-WB00019815



WBSV_DREN_0169102

2. any civil, criminal, administrative or regulatory or arbitration proceeding initiated against any of the **Assureds**, including:

    (a) any appeal therefrom;

    (b) any proceeding before the Equal Employment Opportunity Commission or any similar federal, state or local governmental body with jurisdiction over any **Employment Practice Violation**; or

    (c) any formal investigatory proceeding before the Securities and Exchange Commission or any similar federal, state or local governmental body with jurisdiction over any **Securities Law Violation**.

F. **"Company"** means:

1. the **Parent Company**; and

2. any **Subsidiary**.

G. **"Corporate Act"** means any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty by the **Company** involving a **Securities Law Violation** or an **Employment Practice Violation**.

H. **"Corporate Takeover"** means:

1. the acquisition by any person or entity of more than 50% of the outstanding securities of the **Parent Company** representing the present right to vote for the election of directors; or

2. the merger of the **Parent Company** into another entity such that the **Parent Company** is not the surviving entity.

I. **"Costs, Charges and Expenses"** means reasonable and necessary legal fees and expenses incurred by the **Assureds** in the investigation, adjustment, arbitration, mediation, defense or appeal of any **Claim** and cost of attachment or similar bonds, but shall not include salaries, wages, overhead or benefit expenses associated with directors, officers or employees, including in-house counsel, of the **Company**.

J. **"Directors and Officers"** means any past, present or future:

1. duly elected or appointed directors or officers of the **Company** and individuals occupying the same or similar positions of responsibility within the **Company**;

2. employees of the **Company** who are either unclassified or otherwise eligible for any executive incentive compensation plan adopted by the board of directors of the **Company**;

3. chairman, officers or members of any past, present or future advisory committee or council of the **Company** or any of its divisions occupying such positions at the direction or request of the **Company**;

4. officers or members of any foundation, civic involvement committee or program of the **Company** or any of its divisions occupying such positions at the direction or request of the **Company**;

5. trustees, officers, award assembly members or selection committee members of any foundation sponsored by the **Company** occupying such positions at the direction or request of the **Company**;

6. officers or members of any strategic business or strategic support unit of the **Company** or any of its divisions occupying such positions at the direction or request of the **Company**;

7. employees of the **Company**, or retired employees acting as agents of the **Company**, occupying the positions of directors, officers or trustees of, or individuals occupying the same or similar positions of responsibility, with any **Outside Entity** at the direction or request of the **Company** which the **Company** acknowledges;

RFC-PA-WB00019816

RFC-MITCHELL2-006153

CONFIDENTIAL
PROPRIETARY INFORMATION

CONFIDENTIAL



WBSV_DREN_0169103

8.  employees of the **Company** for **Claims** for a **Securities Law Violation** and any **Employment Practices Violation**;

9.  the following Electronic Data Systems Holding Corporation director nominees, but solely for **Wrongful Acts** committed in their capacity as director nominees of Electronic Data Systems Holding Corporation.  For the purposes of this scheduled as of the date the Form S-4 is made public.

| James A. Baker, III | Judith Rodin |
| --- | --- |
| Dick Cheney | Enrique Sosa |
| Ray J. Groves | Lester M. Alberthal, Jr. |
| Ray L. Hunt | Gary J. Fernandes |
| C. Robert Kidder | Jeff Heller |

10. Joseph R. Szmadzinski, but solely for **Wrongful Acts** committed in his capacity as C.I.O. for GMAC Corporation (GMACMC), and Osamu Ebihara, but solely for **Wrongful Acts** committed in his capacity as Statutory Auditor for GM Japan; provided, however that for the purpose of this subparagraph 10., the **Company** will be conclusively deemed to have indemnified both persons to the extent that the **Company** is permitted or required to indemnify such persons pursuant to law (common or statutory), contract, or the charter or by-laws of the **Company** (which are hereby deemed to adopt the broadest provision of the law which determines or defines such rights of indemnity).  The **Company** hereby agrees to indemnify both persons to the fullest extent permitted by law, including the making in good faith of any required application for court approval and the passing of any required corporate resolution or the execution of any contract.

11. the lawful spouse of any of the persons set forth in the above provisions of this Definition, but only to the extent the spouse is a party to any **Claim** solely in the capacity as spouse of any such persons and only for the purposes of any **Claim** seeking damages recoverable from marital community property, property jointly held by any such person and the spouse, or property transferred from any such person to the spouse.

including their estates, heirs, legal representatives or assigns in the event of their death, incapacity of bankruptcy.

K.  **"Employee Benefit Plans(s)"** means any employee benefit plan(s), employee welfare benefit plan(s) or welfare plan(s) as defined in Subsection 1 of Section 3. Definitions of the Employee Retirement Income Security Act of 1974, subject to regulation under the Employee Retirement Income Security Act of 1974 and sponsored by General Motors Corporation and its past, present and future subsidiaries for the benefit of its employees, or (other than a multiemployer plan(s)) any other **Plans** sponsored by General Motors Corporation and its past, present and future subsidiaries outside of the United States and its Territories.

L.  **"Employment Practice Violation"** means any actual or alleged:

(1)  wrongful dismissal, discharge or termination, either actual or constructive, of employment (including, but not limited to, wrongful dismissal, discharge or termination in breach of an implied contract, or in breach of the implied covenant of good faith and fair dealing or in violation of public policy);

(2)  harassment (including, but not limited to, sexual harassment);

(3)  discrimination (including, but not limited to, discrimination based upon age, gender, race, color, national origin, religion, sexual orientation, sexual preference, pregnancy or disability);

(4)  **Retaliation**;

(5)  employment-related misrepresentation to an employee of or any applicant for employment with the **Company** or an **Outside Entity**;

CONFIDENTIAL

RFC-MITCHELL2-006154

CONFIDENTIAL
PROPRIETARY INFORMATION

RFC-PA-WB00019817

Confidential

WBSV_DREN_0169104

(6)    employment-related libel, slander, humiliation, defamation or invasion of privacy;

(7)    wrongful failure to employ or promote;

(8)    wrongful deprivation of career opportunity, wrongful demotion or negligent employee evaluation, including, but not limited to, wrongfully making negative or defamatory statements in connection with an employee reference;

(9)    wrongful discipline;

(10)  failure to grant tenure; or

(11)  with respect to any of the foregoing items 1. through 9. of this definition: negligent hiring, retention, training or supervision, infliction of emotional distress, failure to provide or enforce adequate or consistent corporate policies and procedures, or violation of an individual's civil rights,

but only if such act, error or omission relates to an **Director and Officer** of, an employee of, or an applicant for employment with, the **Company** or an **Outside Entity**, whether committed directly, indirectly, intentionally or unintentionally.

M.    **"ERISA"** means the Employee Retirement Income Security Act of 1974 or amendments thereto or the common or statutory law of the United States of America or any State or other jurisdiction therein, or any applicable provincial and/or territorial law and/or Federal law and/or any other body of common or statutory law of any jurisdiction in the world to which such **Plans** are subject.

N.    **"Financial Impairment"** means the status of the **Company** resulting from (1) its insolvency, (2) the appointment by any state or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate the **Company**, or (3) the **Company** becoming a debtor-in-possession.

O.    **"Financial Institution"** means any corporation which is a bank (including commercial banks and savings and loan institutions) or any corporation which is a diversified financial institution (including insurance companies, brokerage firms and investment companies).

P.    **"Foreign Subsidiary"** means any **Subsidiary** which is not incorporated in the United States of America or Canada or any territories, provinces or possessions thereof.

Q.    **"Professional Liability Assureds"** means:

1.    General Motors Acceptance Corporation ("GMAC");

2.    Any **Subsidiary** of GMAC;

3.    General Motors Asset Management Corporation ("GMAMC"); and

4.    Any **Subsidiary** of GMAMC.

R.    **"High-Technology Corporation"** means any corporation primarily involved in the design, development, manufacture, distribution and sale of computer products including but not limited to hardware, software, semiconductors, microprocessors, integrated circuits and other peripherals.

S.    **"Individual Act"** means any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty by any of the **Directors and Officers**, while acting in his or her capacity as:

1.    a director or officer of the **Company** or a person serving in a functionally equivalent role for the **Parent Company** or any **Subsidiary** operating or incorporated outside the United States;

2.    a director, officer, trustee, governor or executive director of any **Outside Entity**, provided that such person serves as such at the direction or request of the **Company**, which the **Company** acknowledges.

3.    an employee of the **Company**, but only if the **Claim** is for an **Employment Practice Violation** or a **Securities Law Violation**.

RFC-MITCHELL2-006155

CONFIDENTIAL
PROPRIETARY INFORMATION

CONFIDENTIAL

RFC-PA-WB00019818

Confidential

WBSV_DREN_0169105

T.  **"Interrelated Wrongful Acts"** means **Wrongful Acts** which have as a common nexus any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions.

U.  **"Leading Underwriter"** means Syndicate 1212 at Lloyd's, London.

V.  **"Loss"** means:

    1.  as used in Insuring Clause I.A., I.B, I.C. and I.D., damages, judgments, settlements and **Costs, Charges and Expenses** incurred by any of the **Assureds,** but shall not include:

        (a)  amounts deemed uninsurable under the law pursuant to which this Policy shall be construed; provided, however, that insurability shall be governed by such applicable law which most favors coverage for such **Loss** among the following:

            (i)  where those damages were awarded or imposed;

            (ii)  where the **Wrongful Act** occurred;

            (iii)  where the **Company** is incorporated;

            (iv)  where the **Company** has its principal place of business;

        (b)  taxes, sanctions or criminal, civil or regulatory fines or penalties imposed by law;

        (c)  fees, premiums or commissions charged to customers or clients; or

        (d)  any wages, salary or benefits owed pursuant to the terms of any employment contract.

    2.  as used in Insuring Clause I.E., the amount which a **Pension Trust Liability Assured** is legally obligated to pay as damages arising from judgments or settlements, and **Costs, Charges and Expenses,** for any **Claim** made against such **Pension Trust Liability Assured** for **Breach of Fiduciary Duty,** but shall not include:

        (a)  fines or penalties imposed by law, other than:

            (i)  the five percent civil penalty imposed upon a **Pension Trust Liability Assured** as a fiduciary under Section 502(i) of **ERISA** for inadvertent violations of Section 406 of **ERISA**, or the 20 percent penalty imposed upon a **Pension Trust Liability Assured** as a fiduciary under Section 502(1)(1)A of **ERISA**;

CONFIDENTIAL

RFC-MITCHELL2-006156

CONFIDENTIAL
PROPRIETARY INFORMATION

RFC-PA-WB00019819


Confidential

WBSV_DREN_0169106

(ii)    civil penalties assessed against a **Pension Trust Liability Assured** by either the Pensions Ombudsman appointed by the Secretary of State for Social Services in the United Kingdom or by the Occupational Pensions Regulatory Authority in the United Kingdom or any successor body thereto;

provided, however, **Loss** shall include the penalties described in (i) and (ii) above, only upon the following conditions:

(a)    the **Breach of Fiduciary Duty** is not otherwise excluded from coverage under this Policy; and

(b)    said **Breach of Fiduciary Duty** was unintentional and unknowing.

(c)    **Plan** benefits, or that portion of damages arising out of any judgment, settlement or award in an amount equal to such **Plan** benefits; unless and to the extent that recovery for such benefits:

(i)    is based upon a covered **Breach of Fiduciary Duty**, or any negligent act, error or omission by an **Administrator** acting as such; and

(ii)    is payable as a personal obligation of any individual **Pension Trust Liability Assured**;

(d)    matters deemed uninsurable under the law pursuant to which this Policy shall be construed.

W.    **"Management Control"** means the **Parent Company**, either directly or <mark>indirectly</mark> through one or more of its **Subsidiaries**:

(a)    controls greater than 50% of the voting power for the election of directors of an entity, whether through shareholder agreements, voting assignments or otherwise, and regardless of the voting stock ownership percentage possessed by the **Company**; or

(b)    exercises exclusive management authority over the operations of an entity through a management agreement between the **Company** and the entity; or

(c)    owns at least 40% of the issued and outstanding voting stock, or controls at least 40% of the voting power for the election of the directors, of an entity during a time period where no other person or entity, or group of persons or entities acting in concert, owns or controls a greater percentage.

X.    **"Mortgage Backed Securities"** means any security or instrument representing an undivided interest in a pool of real property mortgages or trust deeds including any collateralized mortgage obligation, real estate mortgage investment conduit, or interest only/principal only security.

Y.    **"Mortgage Fee Claim"** shall mean a **Claim** arising out of fees paid to or by a **Professional Liability Assured** in connection with loan origination, loan processing, loan closing, loan marketing or loan servicing, inclusive of any yield spread premium, overage, premium pricing, yield spread differential, par plus pricing, discharge fee, loan payoff charge or late payment fee.

Z.    **"Optional Extension Period"** means the period described in Clause VIII.A.

AA.    **"Outside Entity"** means any non-profit, not-for-profit or for-profit organization other than the **Company**.

BB.    **"Parent Company"** means the entity named in Item A(1) of the Declarations.

CC.    **"Pension Trust Liability Assureds"** means:

1.    the **Sponsor Organization(s)** named in Item A(2) of the Declarations;

2.    any **Plan(s)**;

RFC-MITCHELL2-006157

CONFIDENTIAL
PROPRIETARY INFORMATION

CONFIDENTIAL

RFC-PA-WB00019820


Confidential

WBSV_DREN_0169107

3. any natural person who was or now is or may hereafter be a director, officer or employee of the **Sponsor Organization(s)** shown in Item A(2) of the Declarations or of any **Plan(s)** who was or now is or may hereafter be a fiduciary (as defined in **ERISA**) of any such **Plan(s)** and, in addition, the estate, heirs or legal representatives of any such natural person who is deceased or incompetent;

4. any natural person not included in Definition AA.3., except one who is a lawyer, accountant, actuary or investment advisor and is acting in said capacity as respects any **Plan(s)** named in Item A(3) of the Declarations, who, pursuant to **ERISA**, is a past, present or future fiduciary of any **Plan** named in Item A(3) of the Declarations, and in addition, the estate, heirs or legal representatives of any such natural person who is deceased or incompetent; and

5. any **Employee Benefit Plan(s)** created or acquired subsequent to the inception date of this Policy shall be considered a **Plan(s)** as of the date of its creation or acquisition, provided that the provisions of Clause VII.B.1. must be fulfilled.

DD. **"Plan(s)"** means any **Employee Benefit Plan** listed in Item A(3) of the Declarations.

EE. **"Policy Period"** means the period from the effective date and hour of this Policy to the Policy expiration date and hour as set forth in Item B. of the Declarations, or its earlier cancellation date and hour, if any, or the end of the **Optional Extension Period**, if purchased.

FF. **"Professional Services"** means only those services to customers or clients which are rendered, or which ought to have been rendered, by or on behalf of a **Professional Liability Assured**, in the ordinary course of the **Professional Liability Assured's** activities as a financial services company, as disclosed to Underwriters and as per the Policy terms and conditions.

For the avoidance of doubt, the term **Professional Services** shall not include any services rendered, or which ought to have been rendered, by or on behalf of (i) any **Assured** other than a Professional **Liability Assured** or (ii) any **Professional Liability Assured** as:

(a) a lawyer;

(b) an accountant;

(c) an architect;

(d) an engineer.

GG. **"Retaliation"** means a **Wrongful Act** of an **Assured** alleged to be in response to any of the following activities:

1. the disclosure of, or the threat to disclose, by an employee of the **Company** or an **Outside Entity** to a superior or to any governmental agency, any act by an **Assured** which act is alleged to be a violation of any federal, state, local or foreign law, common or statutory, or any rule or regulation promulgated thereunder;

2. the actual or attempted exercise by an employee of the **Company** or an **Outside Entity** of any right that such employee has under law, including rights under worker's compensation laws, the Family and Medical Leave Act, the Americans with Disabilities Act or any other law relating to employee rights;

3. the filing of any claim under the Federal False Claims Act or any other federal, state, local or foreign "whistle-blower" law; or

4. a strike by one or more employees of the **Company** or an **Outside Entity**.

HH. **"Securities"** means instruments as defined in the Securities Act of 1933, as amended, and any rules or regulations issued pursuant thereto.

II. **"Securities Law Violation"** means any violation of the Securities Act of 1933, the Securities Exchange Act of 1934, rules or regulations of the Securities Exchange

CONFIDENTIAL

RFC-MITCHELL2-006158

CONFIDENTIAL
PROPRIETARY INFORMATION


Confidential

WBSV_DREN_0169108

Commission under either or both Acts, similar securities laws or regulations of any state or any foreign jurisdiction, or any common law relating to any transaction arising out of, involving, or relating to the purchase or sale of or offer to purchase or sell any securities, on the open market or through a public or private offering.

JJ.　　**"Sponsor Organization"** means the entity named in Item A(2) of the Declarations.

KK.　　**"Subsidiary"** means:

1.　　a corporate entity or limited liability company of which the **Parent Company** owns directly or <mark>indirectly</mark> through one or more of its **Subsidiaries** on or before the inception of this Policy, either a) more than 50% of the issued and outstanding voting stock or equivalent, or b) exactly 50% of such voting stock or equivalent and also possesses **Management Control** over such corporate entity or limited liability company; and

2.　　any corporate entity or limited liability company which is not a **Financial Institution** or a **High-Technology Corporation** and whose total consolidated assets are less than 25% of the total consolidated assets of the **Company** which becomes a **Subsidiary** during the **Policy Period**. Prior to the end of the **Policy Period**, the **Parent Company** shall make a good faith effort to provide Underwriters with the name, asset size and industry of the new **Subsidiary**. No additional premium shall be imposed for such new **Subsidiary** for this Policy. A corporate entity or limited liability company becomes a **Subsidiary**, for the purposes of this Policy, when the **Parent Company** owns more than 50% of the issued and outstanding voting stock either directly or <mark>indirectly</mark> through one or more of its **Subsidiaries**; and

3.　　any corporate entity or limited liability company which is a **Financial Institution** or a **High-Technology Corporation** and whose total consolidated assets are less than $250,000,000 which becomes a **Subsidiary** during the **Policy Period**. Prior to the end of the **Policy Period**, the **Parent Company** shall make a good faith effort to provide Underwriters with the name, asset size and industry of the new **Subsidiary**. No additional premium shall be imposed for such new **Subsidiary** for this Policy. A corporate entity or limited liability company becomes a **Subsidiary**, for the purposes of this paragraph, when the **Parent Company** owns more than 50% of the issued and outstanding voting stock either directly or <mark>indirectly</mark> through one or more of its **Subsidiaries**; and

4.　　any corporate entity or limited liability company which becomes a **Subsidiary** during the **Policy Period** (other than a **Subsidiary** as described by paragraphs 2 and 3 above), provided that the provisions of Clause VII.B.1. must be fulfilled. A corporate entity or limited liability company becomes a **Subsidiary**, for the purposes of this paragraph, when the **Parent Company** owns more than 50% of the issued and outstanding voting stock either directly or <mark>indirectly</mark> through one or more of its **Subsidiaries**; and

5.　　A.T. Kearney and its **Subsidiaries**, effective as of August 31, 1995; and

6.　　BNY Factoring, L.L.C.

LL.　　**"Wrongful Act"**, as used in Insuring Clauses I.A., I.B., and I.C., means any **Corporate Act** or **Individual Act**.

**"Wrongful Act"**, as used in Insuring Clause I.D., means any actual or alleged:

1.　　breach of duty, neglect, error, misstatement, misleading statement, omission, or

2.　　libel, slander, defamation, invasion of privacy, infliction of mental anguish, infliction of emotional distress, wrongful entry or wrongful eviction committed by a **Professional Liability Assured** solely in rendering or failing to render **Professional Services** to others.

**"Wrongful Act"**, as used in Insuring Clause I.E., means any **Breach of Fiduciary Duty**.

RFC-PA-WB00019822

III.　　**EXCLUSIONS**

CONFIDENTIAL

RFC-MITCHELL2-006159

CONFIDENTIAL
PROPRIETARY INFORMATION

Confidential

WBSV_DREN_0169109

A.    Exclusions Applicable to All Insuring Clauses

Underwriters shall not be liable for **Loss** in connection with any **Claim:**

1.    for actual or alleged sickness, disease, death, false arrest, false imprisonment, malicious prosecution, wrongful entry, wrongful eviction, damage to or destruction of tangible property (including loss of use thereof) or, except to the extent the **Claim** is for an **Employment Practice Violation,** for bodily injury, assault, battery, invasion of privacy, infliction of mental anguish, infliction of emotional distress, libel, slander or defamation; provided, however, that this Exclusion shall not apply to any actual or alleged invasion of privacy, infliction of mental anguish, infliction of emotional distress, libel, slander, defamation, wrongful entry or wrongful eviction that is committed solely in rendering or failing to render **Professional Services** to others); and provided further that this Exclusion shall not apply to **Costs, Charges, and Expenses** incurred by an Australian **Subsidiary** in connection with a **Claim** against such **Subsidiary** for bodily injury, sickness, disease or death of any person, which **Claim** is based upon any actual or alleged breach of any occupational or workplace health and safety legislation;

2.    based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

    (a)    any **Wrongful Act** or any fact, circumstance or situation which has been the subject of any notice given prior to the **Policy Period** under any other policy or

    (b)    any other **Wrongful Act** whenever occurring, which, together with a **Wrongful Act** which has been the subject of such notice, would constitute **Interrelated Wrongful Acts;**

3.    based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving, actual, alleged or threatened seepage, pollution or contamination of any kind including, but not limited to, any direction or request that any **Assured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any such seepage, pollution or contamination; provided, however, this Exclusion shall not apply to the coverage afforded under Insuring Clause I.A.; and provided further that this Exclusion shall not apply to a **Claim** based upon any coverage position taken by any **Professional Liability Assured** with respect to any insurance allegedly afforded for any actual or alleged seepage, pollution or contamination;

4.    for violation of **ERISA;** provided, however, this Exclusion shall not apply:

    (a)    to Insuring Clause I.E. or

    (b)    to a **Claim** under Insuring Agreement I.D. against GMAMC solely in its capacity as an investment advisor to a pension plan;

RFC-MITCHELL2-006160

CONFIDENTIAL
PROPRIETARY INFORMATION

CONFIDENTIAL



5.    brought by, on behalf of, at the direction of, or in the right of any of the **Assureds**, except and to the extent such **Claim**:

(a)    is brought derivatively by a security holder of the **Company** who, when such **Claim** is first made, is acting independently of all of the **Assureds**, or

(b)    is brought by any of the **Assureds** in the form of a cross-claim, third party claim or otherwise for contribution or indemnity which is part of and results directly from a **Claim** not otherwise excluded by the terms of this Policy, or

(c)    is brought by any of the **Directors and Officers** for an **Employment Practice Violation**, or

(d)    is brought under Insuring Clause I.D. by an **Assured** solely in his/her/its capacity as a customer, client or policyholder of a **Professional Liability Assured**, and such **Assured** is acting independently of all other **Assureds** when such **Claim** is first made, or

(e)    is brought under Insuring Clause I.E, or

(f)    is brought and maintained outside of the United States or Canada or their territories or possessions and the person or entity bringing and maintaining the **Claim** is required by statute to assert the **Claim** against the **Assured** on behalf of the security holders of the **Company**; or

(g)    (i)    is brought on behalf of an Aktiengesellschaft ("AG") or Gesellschaft Mit Beschraenkter Haftung ("GMBH") by a member of the Board of Directors or the Supervisory Board of such AG or GMBH in his or her capacity as a member of the Board of Directors or the Supervisory Board against a member of the Management Board of the same such AG or GMBH; or

    (ii)    if such GMBH has no Supervisory Board, brought on behalf of the GMBH pursuant to approval by its owners at its General Meeting (Gessellschafterversammlung), against a member of the Management Board of such GMBH in his or her capacity as a Geschtsfuhrer of such GMBH.

The exception set forth in this Exclusion 6.(g) only applies to a **Claim** brought in Germany, its territories or possessions alleging a violation of law, common or statutory, including breaches of fiduciary duty.

"Aktiengesellschaft" ("AG") means a **Subsidiary** traded by shares and subject to the law of Aktiengesellschaften, which is incorporated or formed in Germany.

"Gesellschaft Mit Beschraenkter Haftung" ("GMBH") means a **Subsidiary** limited to and subject to the law of limited companies which is incorporated or formed in Germany.

"Supervisory Board" means an Aufsichtsrat, which is a group of natural persons elected by shareholders or employees of the Company (unknown if should be bolded or should read ("a company")), pursuant to the articles of incorporation of such organization, to control and supervise the management of the "Management Board."

"Management Board means the Vorstand of an AG or Geschnftsfuhrung of a GMBH, which is one or a group of natural persons appointed by the Supervisory Board of the Company?  (same query as above), pursuant to the articles of incorporation of such organization, to control and supervise the management of such organization, or

RFC-MITCHELL2-006161

CONFIDENTIAL
PROPRIETARY INFORMATION

CONFIDENTIAL

RFC-PA-WB00019824



WBSV_DREN_0169111

(h)     is initiated by or on behalf of or in the name of an Australian **Subsidiary** by the Australian Securities Commission pursuant to Section 50 of the Australian Securities Commission Act 1989;

6.     brought about or contributed to by:

    (a)     any deliberately dishonest, fraudulent or criminal act or omission by any of the **Assureds** or

    (b)     any personal profit or advantage gained by any of the **Directors and Officers** to which they were not legally entitled

    as determined by a final adjudication in the underlying action or in a separate action or proceeding; provided, however, Underwriters shall, subject to the other terms and conditions of this Policy, pay **Costs, Charges and Expenses** incurred by the **Assured** in connection with such **Claim** without any liability on the part of Underwriters to pay any other **Loss** in connection with any such **Claim**;

7.     based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving, any **Wrongful Act** actually or allegedly committed subsequent to a **Corporate Takeover**; or

8.     for, or arising out of, directly or indirectly:

    (a)     any prior or pending litigation, arbitration or other legal, administrative or regulatory proceeding as of the date set forth in Item H of the Declarations, or

    (b)     any fact, circumstance, situation, transaction or event underlying or alleged in such litigation, arbitration or proceeding

    regardless of the legal theory upon which such **Claim** is predicated;

9.     for any costs or expenses arising from or in any way relating to the physical modification of property or premises of the **Company** required pursuant to the Americans With Disabilities Act, any similar federal, state or local statutory or common law, or any rules or regulations promulgated thereunder, or amendments thereto; provided, however, that this Exclusion shall not apply to **Costs, Charges and Expenses** incurred in defense of such **Claims**.

B.     Exclusions Applicable to Insuring Clauses I.A., I.B. and I.C.

    Underwriters shall not be liable for **Loss** under Insuring Clause I.A., I.B. or I.C. in connection with any **Claim**:

1.     for the return by any of the **Directors and Officers** of any remuneration paid to them without the previous approval of the appropriate governing body of the **Company**, which payment without such previous approval shall be determined by a final adjudication in the underlying action or in a separation action or proceeding to be in violation of the law;

2.     brought against any of the **Directors and Officers** of any **Subsidiary**, or against any **Subsidiary**, created by or acquired by the **Company** prior to June 1, 1988, which **Claim** is based upon, arises out of, directly or indirectly results from or is in consequence of, or in any way involves:

    (a)     any **Wrongful Act** occurring prior to the date such entity became a **Subsidiary** or subsequent to the date such entity ceased to be a **Subsidiary**, or

RFC-MITCHELL2-006162

CONFIDENTIAL
PROPRIETARY INFORMATION

CONFIDENTIAL

RFC-PA-WB00019825



WBSV_DREN_0169112



(b) any **Wrongful Act** occurring while such entity was a **Subsidiary** which, together with a **Wrongful Act** occurring prior to the date such entity became a **Subsidiary**, would constitute **Interrelated Wrongful Acts;**

3. based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any actual or alleged **Employment Practice Violation,** whether or not the subject of any written or oral claim or demand, committed or allegedly committed prior to the effective date of this Policy, if any **Assured** on the effective date knew or could have reasonably foreseen that such **Employment Practice Violation** might be expected to be the basis of a **Claim;**

4. for violation of the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, the Occupational Safety and Health Act, all as amended (or any rules or regulations promulgated thereunder), or similar provisions of any federal, state or local statutory or common law; provided however that this exclusion shall not apply to any **Claim** based upon, arising out of, directly or indirectly resulting from or in consequence of any actual or alleged discriminatory treatment or retaliatory discharge of a claimant by an **Assured** on account of the claimant's exercise of rights pursuant to any such law;

5. for any actual or alleged obligation of an **Assured** pursuant to any workers' compensation, unemployment insurance, social security, disability benefits or similar law; provided, however, that this exclusion shall not apply to any **Claim** based upon, arising out of, directly or indirectly resulting from, or in consequence of any actual or alleged discriminatory treatment or retaliatory discharge of a claimant by an **Assured** on account of the claimant's exercise of rights pursuant to any such law;

C. Exclusions Applicable to Insuring Clause I.D.

Underwriters shall not be liable for **Loss** under Insuring Clause I.D. in connection with any **Claim:**

1. for, or arising out of, directly or indirectly, any harassment, misconduct or discrimination by reason of or relating to race, creed, color, age, sex, sexual preference, national origin, religion, handicap, disability, or marital status. However, if any **Claim** alleges unintentional violation of the Fair Housing Act or Equal Credit Opportunity Act (or any amendment thereto, or rules or regulations promulgated thereunder, or any state statute, amendment, rule or regulation similar thereto), then this Exclusion shall not apply to:

   (a) **Costs, Charges and Expenses, or**

   (b) damages that any individual **Assured** who is a natural person shall become legally obligated to pay, to the extent that the **Claim** does not take the form of an actual or putative class action;

2. for, or arising out of, directly or indirectly, any **Employment Practice Violation;**

3. for, or arising out of, directly or indirectly, liability assumed by the **Assured** by agreement, or under any contract, whether oral or in writing, including but not limited to any express warranties or guaranties, or arising from cost estimates, unless:

   (a) such liability would have attached to the **Assured** in the absence of such agreement or contract; or

   (b) such liability arises solely and directly out of the **Assured's** failure or alleged failure to perform **Professional Services** required to be performed by such contract or agreement; or

   (c) for **Loss** which is expected or intended by any Assured and which results from any breach of contract;

RFC-PA-WB00019826

CONFIDENTIAL

RFC-MITCHELL2-006163

CONFIDENTIAL
PROPRIETARY INFORMATION

01783858.DOC

Confidential

4.    for, or arising out of, directly or indirectly, the insolvency or bankruptcy of any **Assured** or of any other firm or entity; provided, however, this Exclusion does not apply to any **Claim** for a **Wrongful Act** in the performance of loan servicing, as referenced in the definition of **Professional Services**, arising out of the insolvency or bankruptcy of a mortgagor;

5.    for, or arising out of, directly or indirectly, liability of an **Assured** to a person, corporation, partnership or other legal entity (including any subrogee, assignee, contractor, subcontractor, subsidiary, affiliate or division):

    (a)    that wholly or partly owns, operates, manages or otherwise controls, directly or indirectly, any **Assured**,

    (b)    that is, was or in the future becomes wholly or partly owned, operated, managed or otherwise controlled, directly or indirectly, by any **Assured**, or

    (c)    in which any **Assured** has an equity or partnership interest;

provided, however, that the words "operated, managed or otherwise controlled" in subpart (b) of this Exclusion shall not be deemed to include the **Assured's** real estate property management services.

This Exclusion shall not apply in the event of a limited partnership interest or solely passive investment by the **Assured** if such interest or investment represents no more than 10% of the ownership of any such entity;

6.    for, or arising out of, directly or indirectly, any actual or alleged loss or fluctuation in value or failure to perform of any investment or transaction concerning any **Securities** or investments of any description, including but not limited to **Mortgage Backed Securities,** derivative investments, currencies, mutual funds, investment trusts or limited partnerships, or of any collateral or interest underlying any such **Securities** or investments; provided, however, that this exclusion shall not apply with respect to a **Claim** for a **Wrongful Act** on the part of the **Assured** concerning the **Assured's** origination, processing, closing, or servicing of any real estate loan for **Mortgage Backed Securities;**

7.    by or on behalf of any governmental authority, quasi-governmental authority or other regulatory authority or agency (other than the Securities and Exchange Commission or any similar state agency), except when acting in the capacity of a customer or client of the **Assured** or on behalf of a customer or client of the **Assured** and when such **Claim** arises from **Professional Services** rendered or that should have been rendered to such authority or customer or client;

8.    for, or arising out of, directly or indirectly, any **Wrongful Act** committed or any **Professional Services** rendered after:

    (a)    revocation or surrender (voluntary or involuntary) of the **Assured's** charter or license to do business, or

    (b)    appointment of a conservator, administrator, receiver or liquidator for the **Assured;**

9.    for premiums, return premiums, fees, commissions, costs, expenses or other charges paid or payable by or to the **Assured;** provided, however, that this Exclusion shall not apply to **Costs, Charges and Expenses** in connection with a **Mortgage Fee Claim** which is otherwise covered under Insuring Clause I.D.;

RFC-MITCHELL2-006164

CONFIDENTIAL
PROPRIETARY INFORMATION

CONFIDENTIAL

RFC-PA-WB00019827

Confidential

WBSV_DREN_0169114

10.     that is a **Mortgage Fee Claim**, provided that this Exclusion shall not apply to **Costs, Charges and Expenses** which the **Assured** shall become legally obligated to pay by reason of a **Mortgage Fee Claim** which is otherwise covered under Insuring Clause I.D.;

11.     that is a **Mortgage Fee Claim** which alleges, arises out of, is based upon or is attributable to, directly or indirectly, any **Wrongful Act** committed prior to the date specified in Item I of the Declarations;

12.     for the **Assured's** failure to obtain or maintain insurance, including but not limited to mortgagor insurance, mortgagee insurance, title insurance or guarantee coverage, or for the **Assured's** activities as an insurance agent; provided, however, this Exclusion shall not apply to the **Assured's** activities as an insurance company, agent or broker;

13.     for the repurchase of any loan, transaction in the nature of a loan or other extension of credit, or any indemnity given by or required of the **Assured** with respect to any such loan, transaction in the nature of a loan or other extension of credit, provided that this Exclusion shall not apply to a mortgagor's demand for rescission of a loan;

14.     actually or allegedly arising out of or relating to any warranties or guarantees made by any **Assured** as to the future value of any **Securities** or investment;

15.     for the actual or alleged commingling or improper use of any monies;

16.     arising out of the appraisal of real property which is wholly or partially owned by any **Assured** or by any entity in which any **Assured** is a director, officer, partner, shareholder or employee;

17.     arising out of actual or alleged representations, whether express or implied, pertaining to the future value of real property; except with respect to appraisals of real property to be improved by construction, this Exclusion shall not apply to representations pertaining to the value of real property upon completion of construction that occurred within 24 months from the date of appraisal;

18.     arising out of the actual or alleged failure of any appraisal to recognize potential diminution in value due to actual or possible landslide, erosion, subsidence; or the dispersal, discharge, escape, release or saturation of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids, gases or any other materials, pollutants, irritants or contaminants in or into the atmosphere, or on, onto, upon, in or into surface or subsurface soil, water or water courses, objects or any tangible or intangible matter, whether sudden and accidental or otherwise;

19.     arising out of or resulting from any activity relating to a right-of-way appraisal, proposed construction/land development appraisal or vacant land appraisal; provided, however, this Exclusion shall not apply to:

        (a)     a **Claim** arising out of or resulting from proposed construction/land development appraisal or vacant land appraisal performed by the **Assured** if the construction or development of the land is solely intended for use as a private residential dwelling (one-to-four family home), or

        (b)     appraisals performed by Realty Services International, Inc.;

20.     for, or arising out of, directly or indirectly, any actual or alleged violation of any anti-trust or restraint of trade law or other law, rule or regulation which protects competition;

CONFIDENTIAL

RFC-MITCHELL2-006165

CONFIDENTIAL
PROPRIETARY INFORMATION


Confidential

WBSV_DREN_0169115

21. for, or arising out of, directly or indirectly, representations or warranties, whether express or implied and actually or allegedly made by any **Assured** pertaining to future earnings or income;

22. for, or arising out of, directly or indirectly, any actual or alleged false or misleading advertising;

23. for, or arising out of, directly or indirectly, any projections or statements related to sales, earnings or future value;

24. by, on behalf of, in the right of, at the behest of, for the benefit of, or with the solicitation, assistance, participation or intervention of any pool or association (including any officer, employee or director thereof) in which any **Assureds** are participating or by any participant (including any officer, employee or director thereof) in any such pool or association involving the business or operations of such pool or association;

25. for any obligation assumed by or any benefits, coverage or amounts due or allegedly due, including any amount representing interest thereon, from the **Assured** as an insurer or reinsurer, under any policy or treaty of insurance, reinsurance, suretyship, annuity or endowment; provided, however, that this Exclusion shall not apply to those portions of a **Claim** which do not constitute such assumed obligations, benefits, coverage or amounts due;

26. based upon or arising from the adequacy or redundancy of claim reserves;

27. by, on behalf of, in the right of, at the behest of, for the benefit of, or with the solicitation, assistance, participation or intervention of any reinsurer of any contract, risk or program of the **Company**; provided, however, that this Exclusion shall not apply to that part of **Loss** consisting of: (i) extracontractual damages awarded against the **Assured** as the result of a final judgment by a court or arbitrator in favor of such reinsurer; or  (ii) Costs, **Charges and Expenses** incurred in connection with such damages;

28. based upon or arising from any **Assured's** financial inability to pay claims;

29. for any violation of the Racketeer Influenced and Corrupt Organizations Act, or any similar state or local law, or any regulations promulgated thereunder; provided, however, that this Exclusion shall not apply unless a judgment or other final adjudication establishes that such violation occurred;

30. alleging, arising out of, based upon or attributable to transactions involving any of the following, or any advice in connection therewith:

    (a) commodities, future contracts, forward contracts or any type of uncovered option or futures on option contracts, or any similar investment or investment product; or

    (b) any collectible, including but not limited to stamps, coins, art, cards, jewelry, antiques or any other tangible personal property; or

    (c) any equity security which is not traded on a national securities exchange and is priced under $5.00 at the time that the **Wrongful Act** triggering such **Claim** occurred; or

    (d) annuities used in connection with any structured settlement;

31. brought by or on behalf of or at the behest of any clearing agency, or alleging, arising out of, based upon or attributable to any function of any **Assured** as a clearing agency;

32. alleging, arising out of, based upon or attributable to any mechanical or electronic failure, breakdown, malfunction or unauthorized access to or use of any computer system, database or component (hardware or software) thereof, or any other communications or information transmission system or any digital, electronic or mechanical system or unit;

33. alleging, arising out of, based upon or attributable to the exercise of discretionary

CONFIDENTIAL

RFC-MITCHELL2-006166

CONFIDENTIAL
PROPRIETARY INFORMATION

RFC-PA-WB00019829    Page 28


Confidential

WBSV_DREN_0169116

authority with regard to the disposition, management or supervision of client assets Provided, however, that this exclusion shall not apply if such discretionary authority was contractually agreed to by such client prior to the date the **Wrongful Act** occurred;

34. alleging, arising out of, based upon or attributable to the formation, operation, administration or management by an **Assured**, in part or in whole, of any entity other than the **Assured** including, but not limited to, limited or general partnerships;

35. alleging, arising out of, based upon or attributable to any **Assured** acting as a general partner of any limited partnership and/or as managing general partner of any general partnership;

36. alleging, arising out of, based upon or attributable to any **Claim** arising out of any acts, errors, or omissions, committed or allegedly committed by any **Professional Liability Assured** other than GMAC Mortgage Group or any **Subsidiary** thereof, which took place prior to the effective date of this Policy, if any **Assured** on the effective date knew or could have reasonably foreseen that such acts, errors or omissions might be expected to be the basis of a **Claim**;

37. brought against any of the **Directors and Officers** of any **Subsidiary** or against any **Subsidiary** based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving;

    (a) any **Wrongful Act** occurring prior to the date such entity became a **Subsidiary** or subsequent to the date such entity ceased to be a **Subsidiary**, or

    (b) any **Wrongful Act** occurring while such entity was a **Subsidiary** which, together with a **Wrongful Act** occurring prior to the date such entity became a **Subsidiary**, would constitute **Interrelated Wrongful Acts**;

38. for, or arising out of, directly or indirectly, any services rendered, or which ought to have been rendered, by or on behalf of any **Assured** which is not a **Professional Liability Assured**;

As used in the Exclusions set forth in Clause III.C., the term **Assured** includes any person or entity for whose conduct an **Assured** is legally responsible in rendering or failing to render **Professional Services**.

D. Exclusions Applicable to Insuring Clause I.E.

1. Underwriters shall not be liable for **Loss** under Insuring Clause I.E. in connection with any **Claim**:

RFC-MITCHELL2-006167

CONFIDENTIAL

CONFIDENTIAL
PROPRIETARY INFORMATION

RFC-PA-WB00019830

01783858.DOC

Page 29



WBSV_DREN_0169117

(a)  adjudged to have participated in or to have had actual knowledge of and have failed to take appropriate action with respect to any **Breach of Fiduciary Duty**, knowing such in either case to have been a violation of the responsibilities, obligations or duties imposed by **ERISA**, with respect to any **Plan** named in Item A.(3) of the Declarations. This Exclusion shall not exclude coverage for any such **Assured** in any civil suit or proceeding merely because such suit is or could have been based upon an allegation of knowledgeable participation in, or inaction with respect to, any **Breach of Fiduciary Duty** as described in this Exclusion;

(b)  arising from any pending and/or prior litigation as well as all future claims arising out of said pending and/or prior litigation occurring prior to the date set forth in Item H of the declarations as respects any Employee Welfare Benefit Plan or Welfare Plans, as defined in Subsection I of Section 3, Definitions, of the Employee Retirement Income Security Act of 1974, subject to regulation under the Employee Retirement Income Security Act of 1974, sponsored by Hughes Aircraft Company and its past or present subsidiaries;

(c)  as respects terminated **Employee Benefits Plans** of the **Sponsor Organization** which have been terminated or sold, for **Loss** arising out of any **Breach of Fiduciary Duty** occurring subsequent to the sale date or termination date of each such **Plan**. The date of termination of an **Employee Benefit Plan** shall be the date of the final distribution of all **Plan** assets pursuant to a resolution or request to terminate approved by the Internal Revenue Service and, if required, the Pension Benefit Guarantee Corporation.

(d)  brought against any of the **Directors and Officers** of any **Subsidiary** or against any **Subsidiary** based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving;

  (a)  any **Wrongful Act** occurring prior to the date such entity became a **Subsidiary** or subsequent to the date such entity ceased to be a **Subsidiary**, or

  (b)  any **Wrongful Act** occurring while such entity was a **Subsidiary** which, together with a **Wrongful Act** occurring prior to the date such entity became a **Subsidiary**, would constitute **Interrelated Wrongful Acts**;

The following three Exclusions ((e), (f) and (g)) shall only apply to **Claims** made against an **Administrator** in his/her/its capacity as such

(e)  for failure of performance of contract;

(f)  based upon the failure to comply with any law concerning worker's compensation, unemployment insurance, social security, disability benefits or any other similar law(s);

(g)  based upon (i) the failure of stock shares to perform as represented, or (ii) advice given to an employee to participate or not to participate in stock subscription plan(s).

RFC-MITCHELL2-006168

CONFIDENTIAL
PROPRIETARY INFORMATION


Confidential

WBSV_DREN_0169118

        2.     Underwriters shall not be liable for **Loss** in connection with any **Claim** against a **Sponsor Organization** named in Item A(2) of the Declarations for the failure or inability of said **Sponsor Organization(s)** to fund a **Plan** or collect contributions for a **Plan** in accordance with the terms and conditions of the **Plan** instrument in compliance with **ERISA**, with respect to any **Plan** named in Item A(3) of the Declarations, except that this Exclusion shall not apply to **Costs, Charges and Expenses**.

    E.     No **Wrongful Act** or **Breach of Fiduciary Duty** shall be imputed to any other natural person for the purpose of determining the applicability of any of the Exclusions.

IV.     LIMIT OF LIABILITY AND ORDER OF PAYMENTS

    A.     Underwriters shall be liable to pay **Loss** in excess of the amount of the applicable Retention up to the Limit of Liability. The Retention applicable to Insuring Clause I.B. shall apply to **Loss** payable under Insuring Clause I.A.if indemnification by the **Company** is required by law or is legally permissible to the fullest extent permitted by law, regardless of whether or not actual indemnification is made, unless the **Company** is unable to make such actual indemnification by reason of its **Financial Impairment**.

    B.     Subject to the provisions of General Endorsement Number Four, the amount shown in Item C.(1) of the Declarations shall be maximum aggregate Limit of Liability of Underwriters under all Insuring Clauses and all Sections of this Policy.

    C.     More than one **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed to constitute a single **Claim** and shall be deemed to have been made at the earliest of the following times:

        1.     the time at which the earliest **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** is first made; or

        2.     the time at which the **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed to have been made pursuant to Clause VI.B.

    D.     In the event more than one of the Insuring Clauses are applicable to a **Claim**, the Retentions set forth in Item D.(1) of the Declarations shall be applied separately to that part of the **Loss** resulting from such **Claim** covered by each Insuring Clause. The sum of the Retentions so applied shall constitute the Retention applicable to such **Claim**. The total Retention as finally determined shall in no event exceed the largest of the Retentions applicable to the Insuring Clauses that are applicable to such **Claim**.

    E.     Payments of **Loss** by Underwriters shall reduce the Limit of Liability. Underwriters shall pay **Loss** in the order in which **Loss** is incurred. If **Loss** payable under Insuring Clause I.A. and one or more of the other Insuring Clauses is incurred contemporaneously, Underwriters first shall pay **Loss** payable under Insuring Clause I.A. The **Parent Company** may elect through its chief executive officer to decline or defer payment under Insuring Clauses I.B., I.C., I.D. or I.E. Underwriters shall have no obligation to pay **Loss** after exhaustion of the Limit of Liability regardless of whether the **Parent Company** has declined or deferred payment.

RFC-MITCHELL2-006169

CONFIDENTIAL
PROPRIETARY INFORMATION

CONFIDENTIAL

RFC-PA-WB00019832

01783856.DOC

Page 31



WBSV_DREN_0169119

RFC-MITCHELL2-006170

CONFIDENTIAL
PROPRIETARY INFORMATION

V.   **Costs, Charges and Expenses**; Settlements; Defense; Claim Control

A.   1.   It shall be the duty of the **Assureds** and not the duty of Underwriters to defend any **Claim**, provided that no **Costs, Charges and Expenses** shall be incurred without the **Leading Underwriter's** consent, such consent not to be unreasonably withheld. However, in the event that a **Claim** (other than a **Claim** for a **Securities Law Violation**, an actual or putative class action **Claim**, or a **Claim** for which coverage is afforded solely under Insuring Clause I.A.), including **Costs, Charges and Expenses** and all inter-related **Claims**, does not exceed or appear reasonably likely to exceed the applicable Retention set forth in Item D. of the Declarations, or its equivalent in other currencies, the **Assured** is permitted to defend such **Claim** and all inter-related **Claims** without seeking the **Leading Underwriter's** consent to incur **Costs, Charges and Expenses**.

Notwithstanding the foregoing, Underwriters, in their sole discretion, shall have the right at any time to associate with the **Assured** in the defense of any **Claim** and the **Assured** shall cooperate fully with Underwriters in such defense.

2.   In the event of such consent being given pursuant to 1. hereinabove, and subject to all other terms and provisions of this Policy, Underwriters shall pay **Costs, Charges and Expenses** in excess of the applicable Retention before the final disposition of the **Claim**, but no more frequently than every 90 days. Any such payment of **Costs, Charges and Expenses** is subject to the following conditions:

(a)   if Underwriters and the **Assured** agree on an allocation of insured and uninsured **Costs, Charges and Expenses**, Underwriters will pay the amount of insured **Costs, Charges and Expenses**;

(b)   if Underwriters and the **Assured** cannot agree on an allocation of insured and uninsured **Costs, Charges and Expenses** after exerting their best efforts to do so:

(i)   Underwriters shall advance the percentage of **Costs, Charges and Expenses** proposed by Underwriters to the **Assured** unless and until a different allocation is negotiated or arbitrated;

(ii)   Underwriters and the **Assured** shall submit the dispute to binding arbitration, and the rules of the American Arbitration Association shall apply, except with respect to the selection of the arbitration panel, which shall consist of one arbitrator selected by the **Assured**, one arbitrator selected by Underwriters, and a third, independent arbitrator selected by the first two arbitrators;

(iii)   no presumption as to allocation shall exist in any arbitration proceeding;

(iv)   any negotiated or arbitrated allocation of **Costs, Charges and Expenses** with respect to any **Claim** shall be applied retroactively to all **Costs, Charges and Expenses** previously paid in connection with such **Claim**;

(c)   any payment of **Costs, Charges and Expenses** shall be subject to the **Directors and Officers** or the **Company**, as the case may be, providing a satisfactory undertaking to repay Underwriters any **Costs, Charges and Expenses** finally established not to be insured hereunder; and

(d)   any allocation or payment of **Costs, Charges and Expenses** in connection with any **Claim** shall not apply to or create any presumption with respect to the allocation of other **Loss** in connection with such **Claim**.

B.   The **Company** is not covered in any respect under Insuring Clause I.A. The **Company** is covered, subject to the Policy's terms and conditions, only with respect to its

CONFIDENTIAL

Confidential

WBSV_DREN_0169120

indemnification of its **Directors and Officers** under Insuring Clause I.B. The **Company** is covered, subject to the Policy's terms and conditions, under Insuring Clause I.C. for **Claims** made against the **Company** for a **Corporate Act**. Accordingly, Underwriters have no obligation under Insuring Clauses I.A. or I.B. for **Costs, Charges and Expenses** incurred by, judgments against or settlements by the **Company** arising out of any **Claim** made against the **Company**, but Underwriters have an obligation, as described in this Policy, under Insuring Clause I.C. for **Costs, Charges and Expenses** incurred by, judgments against or settlements by the **Company** arising out of any **Claim** made against the **Company** for a **Corporate Act**.

C.    1.    Except as provided below, the **Assureds** shall not admit or assume any liability, forgive or reduce any compensation due or alleged to be due, make any payment, assume any obligation, attempt any remedial measure, enter into any settlement agreement, or stipulate to any judgment without the prior written consent of the **Leading Underwriter**.

Only those settlements and stipulated judgments that have been consented by the Leading Underwriter shall be recoverable as **Loss** under the terms of this Policy. The **Leading Underwriter's** consent shall not be unreasonably withheld, provided that the **Leading Underwriter** shall be entitled effectively to associate in the defense of and the negotiation of any settlement of any **Claim** in order to reach a decision as to reasonableness, and the **Leading Underwriter** shall in all events have the rights outlined below in order to reach a decision as to reasonableness.

2.    Notwithstanding Clause V.C.1., in the event that a **Claim** (other than a **Claim** alleging a **Securities Law Violation**, an actual or putative class action **Claim**, or a **Claim** for which coverage is afforded solely under Insuring Clause I.A.), including **Costs, Charges and Expenses** and all inter-related **Claims**, does not exceed the applicable Retention set forth in Item D. of the Declarations, or its equivalent in other currencies, the **Assured** is permitted to settle such **Claim** and all inter-related **Claims** without the **Leading Underwriter's** consent.

3.    The **Leading Underwriter** shall have the right to be effectively consulted about defense and settlements, developments and strategies and shall have the right to be given full information and cooperation by the **Assureds** in such reasonable time and in such a reasonable manner so to enable it to make meaningful decisions with respect to its rights under this Policy to consent.

D.-    With respect to any settlement of any **Claim** made against the **Company** and the **Assureds**, such settlement having been consented to by the **Leading Underwriter**, the **Company** and the **Assureds** and the **Leading Underwriter** agree to use their best efforts to determine a fair and proper allocation of the amounts as between the **Company** and the **Assureds** and Underwriters, if appropriate under the circumstances of the **Claim**. If the **Company**, the **Assureds** and the **Leading Underwriter** cannot agree on an allocation after exerting their best efforts to do so:

1.    Underwriters and the **Company** and the **Assureds** shall submit the dispute to binding arbitration, and the rules of the American Arbitration Association shall apply, except with respect to the selection of the arbitration panel, which shall consist of one arbitrator selected by the **Assured**, one arbitrator selected by Underwriters, and a third, independent arbitrator selected by the first two arbitrators;

2.    no presumption as to allocation shall exist in any arbitration proceeding;

3.    any payment by Underwriters of all or any portion of any settlement shall be subject to the **Company** providing a satisfactory undertaking to repay Underwriters for all of such payment which is finally established not to be insured hereunder; and

4.    any allocation or payment of **Costs, Charges and Expenses** in connection with the settled **Claim** shall not apply to or create any presumption with respect to the

CONFIDENTIAL

RFC-MITCHELL2-006171

CONFIDENTIAL
PROPRIETARY INFORMATION

Confidential

WBSV_DREN_0169121

allocation of the settlement amount for such **Claim**.

E.   1.   In the event of a **Claim** or **Loss** under this Policy, the **Leading Underwriter** shall be responsible for conducting the investigation of the **Claim** or **Loss** on behalf of all Underwriters and for determining coverage for the **Claim** or **Loss** under the Policy on behalf of all Underwriters. The **Leading Underwriter** may appoint coverage or monitoring counsel if it deems necessary to represent the interests of the **Leading Underwriter** and Underwriters.

2.   Any **Loss** or fees and costs of coverage or monitoring counsel consented to or agreed by the **Leading Underwriter** shall be binding on all Underwriters. Each of the Underwriters agrees that it will pay all **Loss** and all fees and costs of coverage or monitoring counsel, according to its respective quota share percentage.

3.   The **Leading Underwriter** shall provide or cause to be provided to any Underwriter who requests a copy of each reservation of rights letter and each report issued by coverage or monitoring counsel.

4.   No liability of the other Underwriters shall attach to the **Leading Underwriter** as a result of any provision of this Clause V.E.

VI.   NOTIFICATION

A.   1.   The **Assureds** shall, as a condition precedent to their rights to payment under this Policy, give to Underwriters notice in writing of any **Claim** that exceeds or appears reasonably likely to exceed 50% of the applicable Retention set forth in Item D. of the **Declarations** as soon as practicable after such **Claim** is first received by the Corporate Risk Management Department ("CRMD") located in Detroit, Michigan, but in no event later than 60 days after the end of the **Policy Period**.

2.   If the CRMD forms a reasonable belief that a **Claim** is not likely to result in **Loss**, including **Costs, Charges and Expenses**, of more than 50% of the applicable Retention amount, then the **Assured** shall give notice of such **Claim** by bordereaux. Such bordereaux shall be submitted to Underwriters on a semi-annual basis. In no event shall any bordereaux be submitted by the **Assured** or accepted by Underwriters later than sixty (60) days after the end of the **Policy Period**. If the reasonable belief of the CRMD shall change at any time, then Underwriters shall be notified within thirty (30) days thereafter.

B.   If, during the **Policy Period**, the **Assureds** first become aware of a specific **Wrongful Act** or **Breach of Fiduciary Duty**, and if the **Assureds**, during the **Policy Period**, give written notice to Underwriters as soon as practicable of

1.   the specific **Wrongful Act** or Breach of Fiduciary Duty;

2.   the consequences which have resulted or may result therefrom; and

3.   the circumstances by which the **Assureds** first became aware thereof,

then any **Claim** made subsequently arising out of such **Wrongful Act** or **Breach of Fiduciary Duty** shall be deemed for the purposes of this Policy to have been made at the time such notice was first given.

D.   Notice to Underwriters provided for in Clause VI. shall be given to the firm shown under Item G. of the Declarations.

E.   This Policy only applies to **Claims** first made against the **Assured** during the **Policy Period** and notified as set forth herein.

VII.   GENERAL CONDITIONS

A.   Warranty Clause

It is warranted that the particulars and statements contained in the **Application**, a copy of which is attached hereto, are the basis of this Policy and are to be considered as

CONFIDENTIAL

RFC-MITCHELL2-006172

CONFIDENTIAL
PROPRIETARY INFORMATION


Confidential

WBSV_DREN_0169122

incorporated into and constituting a part of this Policy.

By acceptance of this Policy the **Assureds** agree:

1.     that the statements in the **Application** are their representations, that they shall be deemed material to the acceptance of the risk or the hazard assumed by Underwriters under this Policy and that this Policy is issued in reliance upon the truth of such representations;

2.     that in the event that the **Application** contains misrepresentations made with the actual intent to deceive, or contains misrepresentations which materially affect either the acceptance of the risk or the hazard assumed by Underwriters under this Policy, this Policy shall be void and of no effect whatsoever with respect to those **Assureds** who made or had knowledge of such misrepresentations; and

3.     that, except as provided in Clause VII.A.2., this Policy shall be deemed to be a single unitary contract and not a severable contract of insurance or a series of individual contracts of insurance with each of the **Assureds**.

B.    Adjustment Clause

1.     This Policy is issued and the premium computed on the basis of the information submitted to Underwriters as part of the **Application**. In the event the **Company** creates or acquires a **Subsidiary** as defined in Clause II.II.4., or acquires any other entity which is not a **Subsidiary** or acquires substantially all of the assets of another entity, or merges with another entity such that the **Company** is the surviving entity after the inception of this Policy, coverage shall be afforded for any **Loss** in any way involving the assets acquired or the assets, liabilities, directors, officers or employees of the entity acquired or merged with, or such **Subsidiary** only if, within 120 days of its becoming a **Subsidiary**:

    (a)    the **Parent Company** shall have provided written notice of such transaction or event to Underwriters;

    (b)    the **Parent Company** shall have provided to Underwriters copies of the acquisition and/or creation documents and the most current annual report for the new **Subsidiary** and such other information in connection therewith as Underwriters may deem necessary;

    (c)    the **Assureds** accept any special terms, conditions, exclusions or additional premium charge as may be required by Underwriters; and

    (d)    Underwriters, at their sole discretion, agree to provide such coverage.

Further, coverage as shall be afforded to the new **Subsidiary** is conditioned upon the **Parent Company** paying when due any additional premium required by Underwriters relating to such new **Subsidiary**; provided, however, that such additional premium shall not be greater than 25% of the premium listed in Item E. of the Declarations.

RFC-MITCHELL2-006173

CONFIDENTIAL
PROPRIETARY INFORMATION

CONFIDENTIAL

RFC-PA-WB00019836

01783858.DOC


Confidential

WBSV_DREN_0169123

2.  In the event any entity ceases to be a **Subsidiary** as defined herein after the inception date of this Policy or of any policy issued by Underwriters of which this Policy is a renewal or replacement, this Policy, subject to its terms, shall continue to apply to any of the **Directors and Officers** who were covered under this Policy because of their service with such entity and to such **Subsidiary**, but only with respect to any **Wrongful Act** committed or allegedly committed prior to the time such entity ceased to be a **Subsidiary**.

3.  In the event of a **Corporate Takeover** after the inception date of this Policy or of any policy issued by Underwriters of which this Policy is a renewal or replacement, this Policy, subject to its terms, shall continue to apply to the **Directors and Officers** and to the **Company**, but only with respect to any **Wrongful Act** committed or allegedly committed prior to the **Corporate Takeover**.

C.  Cancellation Clause

   (1)  By acceptance of this Policy, the **Assureds** hereby confer the exclusive power and authority to cancel this Policy on their behalf to the **Parent Company**. As of the first or second **Anniversary**, the **Assureds** may cancel this Policy:

   (a)  In its entirety,:

   (i)  if the total capacity of the Lloyd's of London insurance market shall have been reduced to a level of £5,000,000,000 or less for the underwriting year of account during which such **Anniversary** falls, or

   (ii)  if Lloyd's of London fails to meet Department of Trade and Industry solvency tests in the year in which such **Anniversary** falls, or

   (a)  with respect to any individual Lloyd's Syndicate participating in the coverage afforded by this Policy, if such Syndicate is not operating for the underwriting year of account during which such **Anniversary** falls, or

   (b)  with respect to any individual insurance company participating in the coverage afforded by this Policy, if such insurance company shall receive a rating from A.M. Best lower than "A" for the underwriting year of account during which such **Anniversary** falls

   (2)  This Policy may be cancelled by the **Parent Company** in the event of a **Corporate Takeover**.

   (3)  In order to cancel this Policy pursuant to section (1) of this provision, at least 10 days prior to the **Anniversary** upon which such cancellation is to be effective, the **Parent Company** shall either:

   (a)  surrender this Policy to Underwriters, or

   (b)  mail to Underwriters written notice of such cancellation.

   Delivery of such written notice shall be equivalent to mailing. The **Anniversary**, which is the effective date of such cancellation, shall become the end of the **Policy Period**.

RFC-MITCHELL2-006174

CONFIDENTIAL
PROPRIETARY INFORMATION



WBSV_DREN_0169124

RFC-MITCHELL2-006175

(4)  This Policy may not be cancelled by Underwriters for any reason other than for non-payment of premium when due. If Underwriters cancel the Policy, Underwriters shall mail to the **Parent Company** written notice stating when, not less than 10 days thereafter, such cancellation shall be effective. The mailing of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the **Policy Period**. If the foregoing notice period is in conflict with any governing law or regulation, then such period shall be amended to afford the minimum notice period permitted thereunder.

(5)  If Underwriters determine not to renew this Policy, Underwriters shall mail written notice to the **Parent Company** not less than 60 days prior to the Policy expiration date.

(6)  On each **Anniversary**, any of the Lloyd's syndicates participating in the coverage afforded by this Policy may be replaced. Such replacement shall not be deemed to be a cancellation or nonrenewal of the Policy.

(7)  If this Policy is cancelled or the participation of any Underwriter(s) is cancelled pursuant to (1) (a), (b), (c) or (2) above then Underwriter(s) shall return the pro-rata proportion of the premium hereon.

D.  Company Authorization Clause

By acceptance of this Policy the **Assureds** agree that the **Parent Company** will act on their behalf with respect to the giving of all notices to Underwriters, the receiving of notices from Underwriters, the payment of the premium and the receipt of any return premium.

VIII.  OPTIONAL EXTENSION PERIOD

A.  If this Policy is not renewed by the **Parent Company** or by Underwriters, then the **Parent Company** shall have the right, upon payment of the additional premium, to an extension of the coverage granted by this Policy with respect to any **Claim** first made during the period of time set forth in Item F.(2) of the Declarations after the Policy expiration date, but only with respect to any **Wrongful Act** committed before such date.

For purposes of this Clause, the quotation of a different premium, retention, limit of liability, or terms or conditions does not constitute a nonrenewal by Underwriters.

B.  As a condition precedent to the right to purchase the **Optional Extension Period,** the total premium for this Policy must have been paid. The right to purchase the **Optional Extension Period** shall terminate unless written notice together with full payment of the premium for the **Optional Extension Period** is given to Underwriters within 30 days after the Policy expiration date. If such notice and premium payment is not so given to Underwriters, there shall be no right to purchase the **Optional Extension Period.**

C.  In the event of the purchase of the **Optional Extension Period,** the entire premium thereafter shall be deemed earned at its commencement.

D.  The exercise of the **Optional Extension Period** shall not in any way increase the Limit of Liability of Underwriters.

IX.  CONVERSION TO RUN-OFF

In the event of a **Corporate Takeover,** the coverage under this Policy shall immediately convert to run-off, such that the Policy will only apply, subject to all of the Policy's other terms and conditions, with respect to any **Wrongful Act** committed prior to the happening of any event in subparagraphs (a) and (b) above. The conversion of this Policy to run-off shall not be deemed a cancellation of or refusal to renew the Policy.

CONFIDENTIAL

RFC-PA-WB00019838

CONFIDENTIAL
PROPRIETARY INFORMATION

Confidential

WBSV_DREN_0169125

If the **Assured** gives notice to Underwriters of the happening of any **Corporate Takeover,** Underwriters will consider continuing the Policy in full force and effect, which continuation shall be at the sole discretion of and on terms dictated by Underwriters.

X.     CHANGES

No terms of this Policy shall be amended, waived or otherwise changed except by endorsement hereto signed by an authorized representative of Underwriters.

XI.    OTHER INSURANCE AND INDEMNIFICATION

Such insurance as is provided by this Policy shall apply only as excess over any other valid and collectible insurance, unless such other insurance is written only as specific excess insurance over the Limit of Liability provided by this Policy. This Policy shall specifically be excess of any other valid and collectible insurance: (1) pursuant to which any other insurer has a duty to defend; or (2) that advances defense costs with respect to any **Claim** involving an **Employment Practices Violation** for which this Policy may be obligated to pay **Loss**; provided that this Policy shall not be excess of any personal umbrella insurance carried by any of the **Directors and Officers.**

In the event a **Claim** is made against any of the **Directors and Officers** in his or her capacity as a director, officer, trustee, governor or executive director of an **Outside Entity,** coverage as may be afforded by this policy shall be specifically excess of:

1.     any indemnification required to be or permitted to be provided by such **Outside Entity;** and

2.     any insurance coverage available to such **Outside Entity** or its directors, officers, trustees, governors or executive directors as respects such **Claim;** and

3.     the Retention amount set forth in Item D.(1)(b) of the Declarations, provided that the lower Retention amounts set forth in subparagraphs (i), (ii) and (iii) shall only be applicable if such person is solely a **Director and Officer** of a **Foreign Subsidiary** with assets within the range specified in subparagraphs (i), (ii) or (iii) at the time the **Claim** is first made against him or her and is not a **Director and Officer** of any other **Assured** at such time.

XII.   ASSISTANCE, CO-OPERATION AND SUBROGATION

The **Assureds** agree to provide Underwriters with such information, assistance and co-operation as Underwriters or their counsel may reasonably request, and as may be in their power, and they further agree that they shall not take any action which in any way increases Underwriters' exposure under this Policy.

In the event of any payment under this Policy, Underwriters shall be subrogated to the **Assureds'** rights of recovery therefor against any person or entity. The **Assureds** shall execute all papers required and shall do everything that may be necessary to secure and preserve such rights including the execution of such documents as are necessary to enable Underwriters effectively to bring suit in their name, and shall provide all other assistance and co-operation which Underwriters may reasonably require.

Recoveries, whether effected by Underwriters or by an **Assured**, less the costs of such recovery, shall be distributed as follows:

1.     first, to the **Parent Company** for the amount of **Loss**, otherwise covered under this Policy, which is in excess of the Limit of Liability;

2.     second, to Underwriters for the amount paid for covered **Loss**;

3.     third, to the **Parent Company** for the retention; and

4.     fourth, to the **Parent Company** for loss excluded under this Policy.

Recovery from reinsurance or indemnity of Underwriters shall not be deemed a recovery hereunder.

CONFIDENTIAL

RFC-PA-WB00019839

RFC-MITCHELL2-006176

CONFIDENTIAL
PROPRIETARY INFORMATION

01783858.DOC


Confidential

WBSV_DREN_0169126

XIII.  ASSIGNMENTS AND ACTION AGAINST UNDERWRITERS

No action shall lie against Underwriters unless, as a condition precedent thereto, the **Assureds** shall have fully complied with all of the terms of this Policy, nor until the amount of the **Assureds'** obligation to pay shall have been fully and finally determined either by judgment against them or by written agreement between them, the claimant and Underwriters. Nothing contained herein shall give any person or organization any right to join Underwriters as a party to any **Claim** against the **Assureds** to determine their liability, nor shall Underwriters be impleaded by the **Assureds** or their legal representative in any **Claim**. Assignment of interest under this Policy shall not bind Underwriters unless their consent is endorsed hereon.

XIV.  ENTIRE AGREEMENT

By acceptance of this Policy, the **Assureds** agree that this Policy embodies all agreements existing between them and Underwriters or any of their agents relating to this insurance. Notice to any agent or knowledge possessed by any agent or other person acting on behalf of Underwriters shall not effect a waiver or a change in any part of this Policy or estop Underwriters from asserting any right under the terms of this Policy, nor shall the terms be waived or changed except by written endorsement or rider issued by Underwriters to form a part of this Policy.

XV.  VALUATION AND FOREIGN CURRENCY

All premiums, limits, retentions, **Loss** and other amounts under this Policy are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or another element of **Loss** under this Policy is stated in a currency other than United States dollars, payment under this Policy shall be made in United States dollars at the rate of exchange published in *The Wall Street Journal* on the date judgment is entered, the amount of the settlement is agreed upon, or the other element of **Loss** is paid, respectively.

XVI.  GLOBAL LIBERALIZATION

In the event that a **Claim** is made against an **Assured** in a **Foreign Jurisdiction**, and Underwriters have filed with the local authorities in such **Foreign Jurisdiction** a general policy form (without regard to any filed endorsements) which provides substantially similar coverage as is afforded under this Policy (without regard to any attached endorsements) to this Policy) ("Foreign Policy"), then Underwriters shall provide coverage under this Policy for such **Claim** brought in such **Foreign Jurisdiction** on terms no less favorable to the **Assured** than the terms and conditions of such filed Foreign Policy.

The term "**Foreign Jurisdiction**" shall mean any jurisdiction other than the United States or Canada or any territories, possessions or provinces of either of them.

XVII.  TERRITORY

This Policy shall apply to any **Wrongful Act** anywhere in the world, regardless of where the **Claim** is brought.

RFC-MITCHELL2-006177

CONFIDENTIAL
PROPRIETARY INFORMATION

CONFIDENTIAL

RFC-PA-WB00019840

01783858.DOC

Page 39



WBSV_DREN_0169127

## SECTION TWO

### MORTGAGEE'S ERRORS & OMISSIONS INSURANCE

The Underwriters hereon SUBJECT TO THE LIMITATIONS EXCLUSIONS AND CONDITIONS HEREOF agree to insure the Assured but only as regards to those Sections for which a Limit of Liability amount shall be shown in the Schedule and then only to the extent of the sum indicated therein (including defense expenses) and within the overall Policy Limit. From each and every amount payable to the Assured under each Section there shall be deductible the deductible amount, if any, indicated for the Section involved. In respect of Section C only the total of adjusted losses resulting from one occurrence shall be considered, for the purpose of the application of the deductible as being one loss.

### LIMITS OF LIABILITY

The Underwriters' Limit of Liability in respect of each Section is as stated in the Schedule, it being understood and agreed, however, that:

1.  In the event of payment of loss hereunder which reduces any aggregate limit shown herein such aggregate limit may only be reinstated at the Underwriters' discretion upon payment of an additional premium to be mutually agreed by the parties hereto; and

2.  the inclusion of more than one Assured hereon shall not operate to increase Underwriters' Limit of Liability under this Policy:

3.  the loss to Assured's mortgage interest covered under Sections A(1) and C of this Policy shall be the least of:

    a)  the amount of the actual direct physical damage to the mortgaged property; or

    b)  the amount of the Assured's outstanding mortgage balance; or

    c)  the actual market value of the structures built upon the mortgaged property at the time of the loss; and

4   a)  coverage under Section A(2) and all coverage's under Section B are limited to liability for only those claims that are first made against the Assured while this Policy is in force, for the alleged negligent acts, negligent omissions (hereinafter referred to in this Policy as "Negligent Acts, Errors or Omissions") of the Assured or any other person or entity for whose "Negligent Acts, Errors or Omissions" the Assured is legally liable which commenced after the "commencement of insurance", as defined hereafter, of the individual Section(s) under which the Assured seeks to be indemnified.

    The expenses of legal defense of such claims are not additional to but are included within the limits of liability and subject to the deductibles of the relevant Section of this Policy.

    The said limits of liability shall be reduced, and may be completely exhausted, by such claims expenses and, in such event, Underwriters hereon shall not be liable for claims expenses or for damages which are in excess of the limits of liability.

    b)  Coverage under Section D is limited to losses incurred by the Assured where the Assured becomes aware of circumstances during the period of this Policy that may give rise to an insured loss and reports the same in writing to Underwriters as soon as practicable. Said coverage shall only apply when the time within which the Assured is to give notice to the guaranteeing agency of mortgage payments that are in arrears occurs after the "commencement of insurance" as defined hereafter.

"Commencement of insurance" for the purpose of this clause shall be the inception date of the Policy or the inception date of all similar prior policies with Gulf Underwriters Insurance Company.

In respect of a given Section of coverage, the date of "commencement of insurance" under that Section shall be the earliest date Gulf Underwriters Insurance Company have subscribed coverage to the Assured under that Section in a continuous sequence to the present Policy.

RFC-MITCHELL2-006178

CONFIDENTIAL
PROPRIETARY INFORMATION

CONFIDENTIAL

RFC-PA-WB00019841

01783858.DOC


Confidential

WBSV_DREN_0169128

**WARRANTY**

It is warranted that every Mortgage Agreement entered into by the Assured on or after the inception date of the Policy (which solely for the purpose of this Warranty shall mean the inception date of all similar prior policies with Underwriters) shall contain a condition requiring the Mortgagor to maintain Fire and Extended Coverage or other physical damage insurance for the benefit of the Assured, and Flood Insurance as required under the Flood Disaster Protection Act 1973, as amended by current legislation (hereinafter in this Policy referred to as the "Flood Act") and that in addition, as to all prior mortgages, the Assured shall require that the Mortgagor shall maintain Fire and Extended Coverage and said Flood Insurance for the benefit of the Assured.

All of the above mentioned insurances except Flood Insurance to be in an amount equal to the balance of the mortgage or the replacement cost of structures built upon the mortgaged property, whichever is the less, and in compliance with any co-insurance clause in such insurance.

**SECTION A**

**(1)    Direct Physical Loss or Damage from "Required Perils"**

The Underwriters hereon agree to insure the Assured for loss to the Assured's Mortgage Interest, together with unpaid charges accruing after the date of the Direct Physical Damage up to the date of settlement, including the Assured's Mortgage Interest in a legal fiduciary capacity, Assured's Owner Interest in a legal fiduciary capacity), by reason of Direct Physical Loss or Damage occurring during the Policy period, caused by Fire, Extended Coverage or other direct physical damage perils which the Assured required the Mortgagor to insure against, including the peril of Flood in such amounts as are required to be insured by the Mortgagor to comply with the "Flood Act" , to property against which the Assured has granted or holds a mortgage or to which the Assured has taken title under foreclosure or in a legal fiduciary capacity:

a)    for total or partial losses occasioned by reason of the non-existence or inadequacy of such insurance(s); or

b)    in the event of the Assured being unable to collect the loss wholly or partially under the said insurance(s), despite reasonable effort and expenditure, for any reason not caused or contributed to by dishonesty on the part of the Assured, its officers or employees.

**(2)    Liability of Assured in Procuring or Maintaining Borrowers Insurance Policy**

This Policy shall indemnify the Assured against loss incurred by the Assured by reason of liability imposed upon the Assured as mortgagee, mortgage fiduciary or mortgage servicing agent arising from claims first made against the Assured during the term of this Policy "for Negligent Acts, Errors or Omissions" or for the "Negligent Acts, Errors or Omissions" of any person or entity for whose "Negligent Acts, Errors and Omissions" the Assured is legally liable in

(a)    procuring and maintaining, or failing to procure or maintain, valid insurance against the perils of Fire and Extended Coverage of Homeowners Insurance or similar direct physical damage package insurance or Flood as required under the "Flood Act" on the mortgaged property for mortgagors;

(b)    procuring and maintaining, or failing to procure or maintain, Mortgage Guarantee Insurance from the F.H.A or qualified private mortgage guarantee Insurance due to inadvertent failure to submit an otherwise acceptable loan package or to pay necessary fees or premiums or ongoing premiums;

(c)    procuring and maintaining, or failure to procure or maintain, the required guarantee on VA guaranteed loans due to inadvertent failure to submit an otherwise acceptable loan package.

**(3)    Failure to Pay Real Estate Tax "Mortgage Interest"**

This Section shall insure the Assured for loss incurred by the Assured through extinguishment of its mortgage interest in real property due to the seizure and sale of said property by a governmental agency or any political subdivision thereof without the knowledge of the Assured and as a result of failure to pay real estate taxes or local or municipal taxes or assessments other than deliberate failure on the part of the Assured.

CONFIDENTIAL

Should such failure be on the part of the borrower, then it is a condition precedent to any recovery under this Section that the Assured shall enforce the terms of the Mortgage/Deed of Trust and


Confidential

RFC-MITCHELL2-006179

CONFIDENTIAL
PROPRIETARY INFORMATION

WBSV_DREN_0169129

Note, which enforcement shall include application for entry of deficiency judgement or personal judgement against the mortgagor of if deficiency judgement or personal judgement is not available under the Law of the State in which the mortgaged property is located, any other methods of recovery available to the Assured as if the Assured did not have this insurance, levy of execution and return on said judgement, enforcement of any guarantees and liquidation and/or realisation of any collateral security and application for redemption of the Assured's Mortgage Interest in said property.

Nevertheless, the Assured shall not be required to take any legal action on a deficiency judgement, beyond levy of execution and procurement of unsatisfied return, to enforce collection of a deficiency judgement unless agreed by the attorneys for the Assured or, if not so agreed unless a lawyer (to be mutually agreed upon by the Assured and Underwriters) shall advise that such proceedings should be undertaken.

The date of loss shall be the date of promulgation by the relevant authority of the irrevocable order authorising the seizure and sale of the real property concerned.

As respects Section A(2) and A(3), the Assured's interest as mortgagee, mortgage fiduciary or mortgage servicing agent shall be considered as existing for 12 months following satisfaction of the mortgage but this shall in no event alter any of the other terms limitations, exclusions and conditions nor extend the period of this policy.

### SECTION B

This Section shall indemnify the Assured against loss incurred by the Assured by reason of liability imposed upon the Assured from claims first made against the Assured during the term of this Policy:

**(1)     Real Estate Tax Liability**

As mortgagee, mortgage fiduciary or mortgage servicing agent arising out of any "Negligent Acts, Errors or Omissions" of the Assured for failing to pay real estate taxes or local or municipal taxes or assessments on any property on which the Assured has granted or holds a mortgage. The Assured's interest as mortgagee, mortgage fiduciary or mortgage servicing agent shall be considered as existing from up to 12 months following satisfaction of the mortgage. But this shall in no event alter any of the other terms, limitations, exclusions and conditions nor extend the period of this Policy;

**(2)     No Longer Used**

**(3)     Life, Disability, and AD & D Insurance**

Arising out of any "Negligent Acts, Errors or Omissions" in procuring and maintaining, or failing to procure or maintain, valid life (including accidental death and dismemberment) or disability insurance on the life or health of the owner(s) and mortgagor(s) of property in which the Assured holds a mortgage interest of as to which the Assured acts as a mortgage servicing agent for another institution;

**(4)     Flood Disaster Act 1973 Liability**

For failure of the Assured or any person for whose "Negligent Acts, Errors or Omissions", the Assured is legally liable in the performance of its designated and accepted responsibility to have made determination as to whether properties, that are to become or have become the subject matter of this insurance, should be covered by Flood Insurance within the provisions of the "Flood Act";

**(5)     Government National Mortgage Association (hereinafter referred to as G.N.M.A.) Procedures**

As a servicer for loans guaranteed by G.N.M.A. arising out of any "Negligent Acts, Errors or Omissions" of the Assured in failing to pay G.N.M.A. guarantee fees when due, in failing to certify or re-certify to G.N.M.A. that all procedures required by G.N.M.A. have been complied with and are being followed or in failing to comply with procedures required by G.N.M.A. which results in the loss of the G.N.M.A. guarantee.

### SECTION C

CONFIDENTIAL          **DIRECT PHYSICAL LOSS OR DAMAGE FROM BALANCE OF PERILS**

RFC-PA-WB0001984

RFC-MITCHELL2-006180

CONFIDENTIAL
PROPRIETARY INFORMATION



WBSV_DREN_0169130

This Section shall insure the Assured for loss to the Assured's Mortgage Interest together with unpaid charges accruing after the date of the Direct Physical Damage up to the date of the settlement, including the Assured's Mortgage Interest in a legal fiduciary capacity, Assured's Owner Interest in foreclosed property (and Assured's Owner Interest in a legal fiduciary capacity) by reason if Direct Physical Loss or Damage, including Flood in amounts in excess of that required to be insured by the Mortgagor to comply with the "Flood Act", occurring during the Policy period caused by perils OTHER THAN Fire to Extended Coverage and other Physical Damage Insurance required of the Mortgagor under the Assured's Standard Mortgage Agreement to property against which the Assured has granted or holds a mortgage, or to which the Assured has taken title under foreclosure or in a legal fiduciary capacity, and including the Assured's Mortgage Interest in a legal fiduciary capacity.

It is warranted that as a condition precedent to any payment under this Section the Assured shall enforce the terms of the Mortgage/Deed of Trust and Note, which enforcement shall include foreclosure and sale where permitted by law, application for entry of deficiency judgement or, if deficiency judgement is not available under the Law of the State in which the mortgaged property is located, any other methods of recovery available to Assured as if Assured had no insurance, levy of execution and return on said judgement, enforcement of any guarantees and realisation upon any collateral security. Nevertheless, the Assured shall not be required to take any legal action on a deficiency judgement, beyond levy of execution and procurement of unsatisfied return, to enforce collection of a deficiency judgement unless agreed by the attorneys for the Assured or, if not so agreed, unless a lawyer (to be mutually agreed upon by the Assured and Underwriters) shall advise that such proceedings should be undertaken.

The conditions of the immediately preceding paragraph shall not apply in regard to Foreclosed Property.

It is understood and agreed that Underwriters' liability in respect of costs and expenses under this Section, including attorney's fees, accruing after the date of the Direct Physical Loss or Damage up to the date of this settlement shall be limited to $25,000 (twenty-five thousand dollars) unless Underwriters hereon shall have expressly agreed in writing to the expenditure of a greater sum.

### SECTION D

### LOSS OF VETERANS ADMINISTRATION, FEDERAL HOUSING ADMINISTRATION, SMALL BUSINESS ADMINISTRATION AND PRIVATE MORTGAGE INSURANCE GUARANTEE COVERAGE

This Section shall indemnify the Assured against loss incurred by the Assured where the Assured becomes aware, during the period of this Policy, that they may suffer an insured loss and reports the same in writing to Underwriters as soon as practicable, due to:

(1)     the Assured's accidental failure to notify the Veterans Administration (hereinafter referred to as the V.A), Federal Housing Administration (hereinafter referred to as the F.H.A) Small Business Administration (hereinafter referred to as the S.B.A.) or other private mortgage guarantee insurer as guaranteeing agency,

    a)     of mortgage payments that are in arrears, within the notice period required by each agency

    b)     of the Assured's inability to obtain fire insurance,

(2)     The Assured's failure to follow or carry out instructions by either V.A, F.H.A, S.B.A or other guaranteeing agency in connection with the liquidation of a loan by means of foreclosure which may cause any guaranteeing agency to deny its insurance or guarantee.

The Limit of Liability, as stated in the Schedule, shall be subject to the following:

a)     If the V.A., F.H.A., S.B.A., or private mortgage insurer (hereinafter severally referred to as guaranteeing agency) agrees to accept title to the property and pay to the Assured an amount less than the amount the Assured would have received from the guaranteeing agency had it given notification to the guaranteeing agency as required by its regulations this insurance shall pay the difference between the amount the Assured would have received from the guaranteeing agency had it properly complied with the regulations and the amount it actually received:

b)     If the guaranteeing agency refuses to accept title premises and does not make payment under its guarantee, this insurance shall only apply to loss sustained when the Assured sells the property, but in no event shall this insurance pay, in respect of loans guaranteed by the V.A or Private Mortgage insurers, more than the lesser of a) the difference between the Assured's mortgage balance and the proceeds of the sale or b) the amount the Assured would have realised from the

CONFIDENTIAL

RFC-MITCHELL2-006181

CONFIDENTIAL
PROPRIETARY INFORMATION


Confidential

WBSV_DREN_0169131

V.A or Private Mortgage Insurers guarantee or, in respect of loans guaranteed by the F.H.A or S.B.A, more than the difference between the amount the Assured would have realised from the F.H.A or S.B.A guarantee and the proceeds of the sale.

### SCOPE OF COVERAGE APPLYING TO
### MORTGAGE SERVICING AGREEMENTS

(1)    In respect of Sections A, B and D, if the Assured services mortgages under a written agreement with one or more principals, this Policy covers as though the Assured owned the mortgage interest.

(2)    In respect of Sections, A, B, C and D, if the Assured owns or participates in mortgages serviced by others under a written agreement, this Policy covers the Assured only to the extent of the Assured's Owner Interest and in excess of any other valid and collectible insurance.

### GENERAL DEFINITIONS

**MORTGAGE INTEREST** shall mean the interest of the Assured in property sold under a conditional sales agreement a mortgage, a deed of trust, or any other instrument representing an interest in real property executed for the benefit of the Assured as security for a loan.

**EXTENDED COVERAGE** refers to an insurance agreement providing coverage against direct loss by windstorm, hail, explosion, riot, riot attending a strike, civil commotion, aircraft, vehicles and smoke.

**FORECLOSED PROPERTY** is understood to include the Assured's "Owner Interest" in all property acquired by deed in lieu of foreclosure.

**ASSURED'S "OWNER INTEREST"** in foreclosed property shall in no event exceed the mortgage balance due on the date title passes to the Assured.

**CLAIM** as used in the Schedule to express the Underwriters' Limit of Liability and the deductible shall mean a claim or series of claims attributable to or arising out of the same cause or event.

**OCCURRENCE** shall mean one happening, or series of happenings, arising out of or due to one event taking place during the term of this Policy.

In respect of the peril of Earthquake, one event shall be construed to be all losses arising during a continuous period of 72 hours.

### EXCLUSIONS

Notwithstanding anything to the contrary contained herein, this Policy does not cover:

(1)    loss or damage directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalisation or requisition or destruction of or damage to property by or under the order of any government or public or local authority;

(2)    loss or damage resulting from infidelity or wrongful conversion, dishonest, fraudulent, criminal or malicious act or omission by the Assured's agents and/or employees, officers, directors or trustees, or persons to whom the Assured's interests are entrusted;

(3)    any loss resulting from the cost of making good normal settling or shrinkage or expansion in foundations, walls, floors or ceilings, faulty installation, construction or plans, or faulty or unsuitable materials;

(4)    any loss resulting from wear, tear, gradual deterioration, depreciation, inherent vice, latent defect, moths, vermin, termites or other insects;

(5)    loss or damage caused by dampness of atmosphere or extremes of or changes of temperature;

Notwithstanding the above Exclusions numbered (3), (4) and (5), it is agreed that, subject otherwise to the terms, conditions and limitations of this Policy, the said Exclusions (3), (4) and (5) shall not be deemed to exclude loss caused by collapse;

(6)    a)    any loss arising from loss of property, damage to or loss of use of property, or arising from any liability, loss, damages, costs or expenses for personal injury or bodily injury, caused directly or indirectly, by the actual, alleged or threatened presence, existence,

RFC-MITCHELL2-006182

CONFIDENTIAL
PROPRIETARY INFORMATION

CONFIDENTIAL


Confidential

WBSV_DREN_0169132

discharge, dispersal, release or escape of pollutants;

b)   any loss arising from cost or expense, whether incurred due to governmental direction or request or otherwise, to test for, monitor, clean up, remove, contain, treat, detoxify or neutralise pollutants;

for the purpose of this exclusion pollutants shall not include (but not be limited to) anything posing endangerment to the public health or welfare or the environment or which is designated as a "hazardous substance" by the United States Environmental Protection Agency or as a "hazardous material" by the United States Department of Transportation, or in respect of which there exists any comparable designation under Federal, State, Provincial, local or other law, ordinance or regulation;

(7)   any loss arising from loss or damage to, or loss or damage to the value of, land or water or any other naturally occurring surface or subsurface material or substance.  However, in the event of loss to the Assured's Mortgage Interest, which loss arises from damage to the structures built upon the mortgaged property, then this exclusion shall not exclude such loss arising from damage to said structures;

(8)   for loss incurred from any claim for fines, penalties, or punitive or exemplary damages assessed against the Assured, other than as specifically provided herein;

(9)   loss covered by any other insurance, whether carried by the Assured or any other party, except as provided under Section A;

(10)   with respect to Sections A,B,C and D any loss or damage to property which is the subject of a chattel mortgage;

(11)   with respect to Section B(4), claims arising out of any wilful or intentional failure on the part of the Assured or its employees to comply with provisions of the "Flood Act";

(12)   in respect to Section A(2), any claim for Assured's "Negligent Acts, Errors or Omissions" in procuring or maintaining or failing to procure or maintain valid insurance for the mortgagor, in respect of commercial loans, against risks arising from business activities including, but not limited to business interruption, products liability, employer liability, automobile liability, worker's compensation, aircraft liability, directors and officers coverage and pollution liability coverage. However, this exclusion shall not apply to loss of rents, nor to Owner's, Landlord's and Tenant's Liability as would be insured by Form CK1470 20M 12.79 plus Form CK810-2;

(13)   any loss arising from damage or destruction which but for the existence of this insurance would have been remedied or compensated for by act or legislation of Federal, State or other Governmental authority.

## CONDITIONS

## CONDITIONS APPLYING TO SECTIONS A(2), B(1), B(3), B(4) AND B(5) HEREOF

(1)   In respect of such and so many of the Indemnities specified in Sections A(2), B(1), B(3), B(4) and B(5) as are insured hereunder, the Underwriters will also within the applicable limits of liability and subject to the applicable deductibles of this Policy hereunder:

a)   defend any suit against the Assured alleging such liability and seeking damages on account thereof, even if such suit is groundless, false or fraudulent, but the Underwriters may make such investigation, negotiation, and settlement of any claim or suit as they deem expedient;

RFC-MITCHELL2-006183

CONFIDENTIAL
PROPRIETARY INFORMATION

CONFIDENTIAL

RFC-PA-WB00019846


Confidential

WBSV_DREN_0169133

b) pay premiums on bonds to release attachments for an amount not in excess of the Limit of Liability specified in the Schedule, pay premiums on appeal bonds required in any such part of such defended suit, but without obligation to apply for or furnish any such bond;

c) pay costs taxed against the Assured in any such suit and interest accruing after entry of judgement until the Underwriters have paid, tendered, or deposited in court such part of such judgement as does not exceed the limit of the Underwriters liability;

d) reimburse the Assured for reasonable expenses, other than loss of earnings, incurred at the Underwriters request.

(2) This Assured shall, as a condition precedent to its right to recovery under this Policy, give to the person nominated in the Schedule, as soon as practicable, notice in writing of;

a) any claim against it,

b) receipt of notice from any person of an intention to make claim against it,

c) any occurrence or circumstance of which the Assured becomes aware which may give rise to a claim against it. Any claim subsequently arising from said occurrence or circumstance shall be understood to have been made during the term of this Policy.

## CONDITIONS APPLYING TO SECTIONS A AND C

(1) In respect to the Assured's Owner Interest in foreclosed property, the Assured will do all things prudently necessary to maintain adequate standard fire and extended coverage insurance on foreclosed property.

(2) When title to foreclosed property passes to the Assured, the maximum period of coverage under this Policy in respect of such foreclosed property shall be limited to 90 days from the date the Assured takes title.

(3) With respect to the Assured's Mortgage Interest in property, the maximum period of coverage under Section A of this Policy shall be limited to 90 days from the date an employee with supervisory responsibility in the insurance risk management unit, in-house insurance agency, foreclosure department, escrow department, or servicing department of the Assured first becomes aware that the coverage required of the mortgagor is not in force.

(4) With respect to the Assured's Mortgage Interest in property, where the Assured is understood by Underwriters not to maintain a system to check that the coverage's required of its mortgagor are (not) in force, the maximum period of coverage under Section A of this Policy shall be limited to 90 days from the date an employee with supervisory responsibility in the insurance risk management unit, in-house insurance agency, foreclosure department, escrow department, or servicing department of the Assured first had actual notice that the coverage required of the mortgagor was not in force.

(5) In respect to Conditions (3) and (4) above, the Assured will do all things prudently necessary to maintain adequate standard (fire and extended coverage insurance on the mortgaged property.

(6) In respect of Condition (2), (3) and (4) above, the Assured's inadvertent failure to comply with Conditions (1) and (5) respectively will not prejudice the right of the Assured to collect under this Policy for a loss occurring within the 90 days maximum period of coverage.

## GENERAL POLICY CONDITIONS ALL SECTIONS

(1) **Loss Procedure**

In the event the Assured learns of an incident which may result in a claim or loss under any Section of this Policy, the Assured will give notice thereof to the person(s) nominated in the Schedule as soon as practicable. At all times the Assured will exercise its best efforts to keep losses, costs, and expenses, including attorney's fees, at a minimum consistent with the Assured's primary responsibility of protecting its mortgage and/or owner interest.

CONFIDENTIAL

RFC-PA-WB00019847

CONFIDENTIAL
PROPRIETARY INFORMATION

RFC-MITCHELL2-006184


Confidential

WBSV_DREN_0169134

In the event a question arises as to the "reasonableness" of any cost or expense, the Assured and Underwriters or their representative(s) will accept the decision of an arbitrator. The arbitrator selected is to be acceptable to both parties.

**(2)    Cancellation Clause**

This Policy may be cancelled by any Named Assured(s) with respect to its interest in said Policy at any time by written notice or by surrender of the Policy. This Policy may also be cancelled by or on behalf of the Underwriters by delivering to the Named Assured(s) or by mailing to the Named Assured(s) by first class mail, or by that class of mail specified in the insurance regulations of the State where the principal Assured is domiciled, to the Named Assured(s) address as shown in this Policy, written notice stating when in not less than the number of days on the Schedule, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice and this Policy shall terminate at the date and hour specified in such notice.

If this Policy shall be cancelled by the Assured, the Underwriters shall retain the short rate proportion of the premium hereon if allowed by State Law, except that if this Policy is on an adjustable basis the Underwriters shall receive the earned premium hereon or the short rate proportion of any minimum premium stipulated, herein, whichever us the greater.

If this Policy shall be cancelled by or on behalf of the Underwriters, the Underwriters shall retain the pro-rata proportion of the premium hereon, except that if this Policy is on an adjustable basis the Underwriters shall receive the earned premium hereon or the pro-rata proportion of any minimum premium stipulated herein, whichever is greater.

Payment or tender of any unearned premium by the Underwriters shall not be a condition precedent to the effectiveness of cancellation but such payment shall be made as soon as practicable.

If the period of limitation relating to giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

In respect of Section A only, if this Policy is not cancelled but is not renewed by Underwriters, upon request of the Assured within 10 days of Underwriters' refusal to renew, there will be an automatic extension of said Section A for the number of days stated in the Schedule at an additional premium to be calculated at pro-rata of the premium charged hereon in respect of Section A. An increase in premium shall not be considered a refusal by Underwriters to renew this Policy.

**(3)    Subrogation Clause**

It is agreed that Underwriters upon the payment of any loss hereunder shall become subrogated to the extent of such loss to all rights and remedies of the Assured in respect of such loss, and the Assured agrees to execute all necessary documents and to otherwise co-operate fully in securing to Underwriters all such subrogated rights and remedies. Underwriters agree to waive any rights of subrogation against employees, officers, directors, or trustees of the Assured.

**(4)    Arbitration Clause**

All disputes or differences arising out of the Policy shall be referred to the decision of two Arbitrators, one to be chosen by each party, and, in the event of the Arbitrators failing to agree shall be submitted to the decision of an Umpire to be chosen by the Arbitrators before entering upon the reference. The Arbitrators and the Umpire shall be executive officials of disinterested insurance or Reinsurance Companies or disinterested members of Lloyd's. If either of the parties fail to appoint an Arbitrator within one month after being required by the other party to do so, then the party who made the request shall also appoint the second Arbitrator. If the Arbitrators fail to appoint an Umpire within one month of their nomination such Umpire shall, at the request of either party, be appointed by the Superintendent of Insurance, Department of Insurance of the State where the Assured is domiciled.

CONFIDENTIAL

RFC-PA-WB00019848

RFC-MITCHELL2-006185

CONFIDENTIAL
PROPRIETARY INFORMATION



WBSV_DREN_0169135

The arbitrator proceedings shall take place in the city where the Assured is domiciled. The applicant shall submit its case within one month after the appointment for the Court of Arbitration and the respondent shall submit its reply within one month after the receipt of the claim. The Arbitrators and Umpire are relieved from all judicial formalities and may abstain from following the strict rules of law. They shall settle any dispute under this contract according to an equitable rather than a strictly legal interpretation of its terms and their decision shall be final and not subject to appeal. The cost of arbitration and award shall be paid as the Arbitrators or Umpire may direct.

**(5)    Mergers, Acquisitions and other Additional Mortgages**

In respect of Sections A, B and C only, this Policy, subject to the payment of additional premium as specified below and subject to its limits, terms and conditions, is automatically extended to cover for up to 60 days but not beyond the expiry date of the Policy, interests of like nature to those already covered by Section A, B and C which may become at risk to the Assured by the merger with or acquisition of organisation(s) conducting a similar type of business to the Assured, which are within the territorial limits of the United States/Canada and which are advised to Underwriters within 60 days of such merger.

Full underwriting information will be required prior to the continuation of such extension of coverage and a premium charged as a result of the same.

In the event of the Assured and Underwriters hereon being unable to agree to the premium to be charged then cover shall cease at the end of such 60 day period (or at expiry if sooner) and a pro-rata additional premium shall be payable for the time that coverage was afforded by this Policy.

Mergers or acquisitions outside the territorial limits of the United States/Canada require Underwriter's approval prior to effecting coverage.

In respect of Section D, cover being required for the merged to acquired organisation should the commencement of insurance as defined under "Limits of Liability" Section 4 " Commencement of Insurance" precede the date of acquisition hereon, then cover shall be automatically extended in a like manner and subject to the same conditions as above. Should no cover as defined under "Limits of Liability" Section 4(b), "Commencement of Insurance" have been provided to the acquired or merged organisation prior to the date of acquisition or merger, then no automatic cover under Section D shall be provided hereon.

Nevertheless, Underwriters understand that at any time during the policy period the Assured may acquire to take under management additional mortgage portfolios, or may dispose of or relinquish all or part of its mortgage portfolio.

**(6)    Salvage and Recoveries**

All salvages, recoveries and payments recovered or received subsequent to a loss settlement under this Policy shall be applied as if recovered or received prior to the said settlement and all necessary adjustments shall be made by the parties hereto.

## APPORTIONMENT OF LOSSES

In the event of a loss which is recoverable, wholly or partially, under this Policy, the following procedure shall apply:

Firstly, the loss shall be apportioned over the Section(s) under which insurance is afforded hereunder, and then,

**(1)**    If one Section only is involved the Underwriters' Limit of Liability shall be determined by reference to the Limit of Liability for that Section as stated in the Schedule.

**(2)**    If more than one Section is involved and the "any one occurrence" limit does not apply the Underwriters' Limit of Liability in respect of each Section shall be determined by reference to the Limit of Liability for each Section involved as stated in the Schedule.

**(3)**    If more than one Section is involved and the "any one occurrence" limit applies, such limit shall be apportioned over the Sections involved in the following manner:

   a)    to any Section with an aggregate limit

CONFIDENTIAL    either (I) the aggregate (or reduced aggregate limit if the aggregate limit was reduced by other loss or losses)

RFC-MITCHELL2-006186

CONFIDENTIAL
PROPRIETARY INFORMATION



WBSV_DREN_0169136

or (ii) that portion of the "any one occurrence" limit that is the ratio that the total loss apportioned to that Section bears to the total loss over all Sections,

whichever is the less,

b)   to the remaining Sections involved, the residue of the "any one occurrence" limit the ratio that the total loss under each such Section bears to the total apportioned to each of those remaining Sections.

In the event that paragraph (b) above results in any Section being apportioned an amount of loss in excess of the limit of that Section, then the balance of the "any one occurrence" limit remaining unsatisfied shall be proportionately allocated to the remaining Sections involved and described under Paragraph (b).

RFC-MITCHELL2-006187

RFC-PA-WB00019850

CONFIDENTIAL
PROPRIETARY INFORMATION



WBSV_DREN_0169137

## ENDORSEMENT NUMBER ONE APPLICABLE TO SECTION ONE

Attaching to and forming part of Certificate No. 823/FD0001142 issued by certain Lloyd's Underwriters in favour of GENERAL MOTORS CORPORATION.

In consideration of the premium charged for this Policy, it is hereby understood and agreed that with effect from 15th December, 2000:

1.    Clause III. EXCLUSIONS C. 15. is deleted and the following is substituted therefor:

    15.    for the intentional commingling or improper use of an monies as determined by a final adjudication in the underlying action or in a separate action or proceeding; provided, however, Underwriters shall, subject to the other terms and conditions of this Policy, pay **Costs, Charges and Expenses** incurred by the **Assured** in connection with such **Claim** without any liability on the part of Underwriters to pay any other **Loss** in connection with any such **Claim**;

2.    Clause III. EXCLUSIONS C. 30., 31., 33., 34. and 35 are amended by adding the following at the end thereof:

    "provided, however, that this Exclusion shall only apply to the **Assured's** activities as a registered Securities Broker/Dealer."

All other terms, conditions and limitations remain unaltered.

RFC-MITCHELL2-006188

CONFIDENTIAL
PROPRIETARY INFORMATION



RFC-MITCHELL2-006189

Signed      Signed

Dated      Dated

CONFIDENTIAL
PROPRIETARY INFORMATION

CONFIDENTIAL

RFC-PA-WB00019852

01783858.DOC

Confidential

WBSV_DREN_0169139

### ENDORSEMENT NUMBER TWO APPLICABLE TO SECTION ONE

Attaching to and forming part of Certificate No. 823/FD0001142 issued by certain Lloyd's Underwriters in favour of GENERAL MOTORS CORPORATION.

In consideration of the premium charged for this Policy, it is hereby understood and agreed that with effect from 1st December, 2001 Clause II. DEFINITIONS KK. of Section One is amended by the addition of the following:

7.    Witmer Funding LLC, but solely with respect to the coverage provided under Insuring Clause I.D.

8.    Wells Fargo, but solely with respect to a **Claim** made jointly against Wells Fargo, as master servicer and GMAC Mortgage Group, as subservicer of the mortgage loan securitisations listed below, but solely to the extent such **Claim** results from a **Wrongful Act** committed or allegedly committed by GMAC Mortgage Group.

(i)    Morgan Stanley Dean Witter 2001 – TOP3;

(ii)   Bear Stearns 2001 – TOP2.

All other terms and conditions remain unaltered.

Signed                    Signed

Dated                     Dated

RFC-MITCHELL2-006190

CONFIDENTIAL
PROPRIETARY INFORMATION

CONFIDENTIAL                                            RFC-PA-WB00019853

01783858.DOC                                           Page 52

Confidential

WBSV_DREN_0169140

## ENDORSEMENT NUMBER THREE APPLICABLE TO SECTION ONE

Attaching to and forming part of Certificate No. 823/FD0001142 issued by certain Lloyd's Underwriters in favour of GENERAL MOTORS CORPORATION.

In consideration of the premium charged for this Certificate, it is hereby understood and agreed that with effect from 15th December 2000, solely with respect to the **Assured's** activities as an **Investment Advisor**, Underwriters will indemnify the **Assured** in respect of **Costs, Charges and Expenses** incurred with Underwriters' prior written consent (excluding salaries, meals, transportation costs or any other expenses paid to any **Directors and Officers**, or any other person in excess of the normal expenses at the time those expenses were incurred) to correct and situation arising through any **Wrongful Act** committed by the **Assured** in the performance of **Investment Advisory Services** covered hereunder which, if not corrected, would have resulted in loss or damage to any customer or client of the **Assured**, and which loss or damage would in the absence of any correction have resulted in a valid **Claim** covered under this Certificate. In any claim hereunder for **Costs, Charges and Expenses** to correct any situation, the burden of proving such loss or damage would have resulted from that situation and that such loss or damage would have resulted in a valid **Claim** covered under this Certificate shall be upon the **Assured**.

This Clause shall not obligate Underwriters to indemnify the **Assured** for any loss payments to any customer or client of the **Assured**. This Clause shall not obligate Underwriters to indemnify the **Assured** for any expenditure which, had they been incurred in connection with a **Claim**, would not be covered under this Certificate.

In the event that Underwriters fail to give their consent to the payment of any **Costs, Charges and Expenses** as provided by this Clause, the **Assured** shall have the right to make such payments in respect of such **Costs, Charges and Expenses** without prejudice to the **Assured's** right to claim for reimbursement of such payments which are established by a court or agreed by the parties hereto, as covered under this Certificate.

In consideration of the foregoing, Clause II. DEFINITIONS is amended by the addition of the following:

MM.    **"Investment Advisor"** means an **Assured** who engages in the business of rendering **Investment Advisory Services**.

NN.    **"Investment Advisory Services"** means the following advice or services provided by the **Assured** pursuant to a written contract defining the scope of such advice and/or services and the compensation to be paid therefor:

1.    financial, economic or investment advice regarding investments in securities, and/or

2.    rendering investment management services.

**Investment Advisory Services** shall include, but not be limited to advice or services provided by the **Assured** to any pension or **Employee Benefit Plan** or trust, Individual Retirement Account or Keogh Retirement Account and 401(k) plans (other than a plan or trust sponsored or established by any **Assured** for its own employees)

All other terms, conditions and limitations remain unaltered.

Signed                Signed

Dated                Dated

CONFIDENTIAL                RFC-PA-WB00019854

RFC-MITCHELL2-006191

CONFIDENTIAL
PROPRIETARY INFORMATION

WBSV_DREN_0169141

01783858.DOC                Page 53


Confidential

### GENERAL ENDORSEMENT NUMBER 5

Attaching to and forming part of Certificate No. 823/FD0001142 issued by certain Lloyd's Underwriters in favour of GENERAL MOTORS CORPORATION.

In consideration of the premium charged for this Policy, it is hereby understood and agreed that with effect from 15th December, 2000 Item G. of the Declarations page is cancelled and the following is substituted therefor:-

Item G.    Notice: Pursuant to Clause VI, notice shall be given to:

Eugene V. Elsbree III.
One Embardadero Center
16th Floor
San Francisco
California 94111-3765

All other terms and conditions remain unaltered.

RFC-MITCHELL2-006192

Signed                        Signed

Dated                         Dated

CONFIDENTIAL                                                    RFC-PA-WB00019855

CONFIDENTIAL
PROPRIETARY INFORMATION

01783858.DOC                                                   Page 54



WBSV_DREN_0169142

## ENDORSEMENT NUMBER FOUR APPLICABLE TO SECTION ONE

Attaching to and forming part of Certificate No. 823/FD0001142 issued by certain Lloyd's Underwriters in favour of GENERAL MOTORS CORPORATION.

In consideration of the premium charged for this Policy, it is hereby understood and agreed that with effect from 15th December, 2000 the preamble of Clause III. EXCLUSIONS A. is deleted and the following substituted therefor:

A.    Exclusions Applicable to All Insuring Clauses under Section One

Underwriters shall not be liable for **Loss** in connection with any **Claim**:

All other terms and conditions remain unaltered.

RFC-MITCHELL2-006193

Signed                          Signed

CONFIDENTIAL

CONFIDENTIAL
PROPRIETARY INFORMATION

Dated                          Dated          RFC-PA-WB00019856

01783858.DOC                                                Page 55



WBSV_DREN_0169143

## GENERAL ENDORSEMENT NUMBER 6

Attaching to and forming part of Certificate No. 823/FD0001142 issued by certain Lloyd's Underwriters in favour of GENERAL MOTORS CORPORATION.

In consideration of the premium charged for this Policy, it is hereby understood and agreed that with effect from 15th December, 2000  General Endorsement Number 5 is cancelled and the following substituted therefore:

Item G. of the Declarations page is cancelled and the following is substituted therefor:-

Item G.        Notice: Pursuant to Clause VI, notice shall be given to:

             Sedgwick, Detert, Moran & Arnold
             Attention: Eugene V. Elsbree III.
             One Embardadero Center
             16th Floor
             San Francisco
             California 94111-3765

All other terms and conditions remain unaltered.

RFC-MITCHELL2-006194

Signed             Signed

Dated             Dated    RFC-PA-WB00019857

CONFIDENTIAL
PROPRIETARY INFORMATION

CONFIDENTIAL

01783858.DOC


Confidential

WBSV_DREN_0169144

## GENERAL ENDORSEMENT NUMBER 7

Attaching to and forming part of Certificate No. 823/FD0001142 issued by certain Lloyd's Underwriters in favour of General Motors Corporation.

1.    In consideration of the premium charged for the Policy, it is hereby understood and agreed that with effect from [   ] October, 2010, the definition of **"Parent Company"** is hereby amended to **"Ally Financial Inc."** (formerly known as General Motors Acceptance Corporation) and all references to **General Motors Corporation** are hereby amended to read **"Ally Financial Inc."** General Motors Corporation (now known as Motors Liquidation Company) shall remain an **"Assured"** under the Policy.

All other terms and conditions remain unaltered.

Signed:_____          Dated: _____

Signed:_____          Dated: _____

Signed:_____          Dated: _____

DETROIT.4159863.6

RFC-MITCHELL2-006195

CONFIDENTIAL
PROPRIETARY INFORMATION

CONFIDENTIAL

Confidential

RFC-PA-WB00019858

WBSV_DREN_0169145