UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

Rowena Drennen, *et al*,

                    Plaintiffs,

          v.                           23 Civ. 3385 (JPO)

CERTAIN UNDERWRITERS AT
LLOYD'S OF LONDON, *et al,*
                                       Remote Conference

                    Defendants.

------------------------------x
                                       New York, N.Y.
                                       July 11, 2023
                                       3:10 p.m.

Before:

                    HON. J. PAUL OETKEN,

                                       District Judge

                         APPEARANCES

WALTERS RENWICK RICHARDS SKEENS & VAUGHAN, P.C.
     Attorneys for Kessler Settlement Class
BY:  FRED WALTERS

PERKINS COIE LLP
     Attorneys for ResCap Liquidating Trust
BY:  VIVEK CHOPRA

HINSHAW & CULBERTSON LLP
     Attorneys for Lloyds of London Defendants
BY:  GREGORY SHAW

WILEY REIN, LLP
     Attorneys for Twin City Insurance
BY: CARA DUFFIELD

1              (Appearances Continued)

2    KAUFMAN DOLOWICH & VOLUCK LLP
          Attorneys for Continental Insurance
3    BY: PATRICK M. KENNELL

4
     CAHILL GORDON & REINDEL
5         Attorneys for Swiss Re
     BY: THORN ROSENTHAL
6

7    STEPTOE & JOHNSON
          Attorneys for Clarendon National
8    BY:  JOHN O'CONNOR

9
     HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER
10        Attorneys for Steadfast Insurance
     BY:  RONALD SCHILLER
11        SHARON McKEE

12
     KAUFMAN BORGEEST & RYAN LLP
13        Attorneys for St. Paul Mercury Insurance Company
     BY:  PATRICK STOLTZ
14

15   ARNOLD & PORTER
          Attorneys for North American
16   BY:  KENT YALOWITZ

17

18

19

20

21

22

23

24

25

1          (Case called)

2          THE DEPUTY CLERK:  Starting with the counsel for

3   Kessler settlement class, please state your name for the

4   record.

5          MR. WALTERS:  Fred Walters.

6          MR. CHOPRA:  Good afternoon, your Honor.  This is

7   Vivek Chopra for the ResCap Liquidating Trust, also plaintiff.

8          MR. LAHR:  Good afternoon.  This is Gregory Lahr from

9   Hinshaw Culbertson on behalf of the Lloyd's defendants.

10          MS. DUFFIELD:  Cara Duffield from Wiley Rein, counsel

11   for defendant Twin City.

12          MR. KENNELL:  Patrick M. Kennell, of Kaufman Dolowich

13   for defendant Continental.

14          MR. O'CONNOR:  Good afternoon.  John O'Connor of

15   Steptoe Johnson for Clarendon National.

16          MR. ROSENTHAL:  Thorn Rosenthal from Cahill for Swiss

17   Re.

18          MR. SCHILLER:  Ronald Schiller with my colleague,

19   Sharon McKee, Steadfast Insurance.

20          MR. STOLTZ:  Good afternoon, your Honor.  Patrick

21   Stoltz of Kaufman Borgeest & Ryan on behalf of defendants

22   St. Paul Mercury Insurance Company.

23          MR. YALOWITZ:  Kent Yalowitz and Carmela Romeo, Arnold

24   & Porter for North American.

25          THE COURT:  I think that's everyone.

1          Again, this is Judge Oetken.  Let me just confirm, is

2     there anyone else who wanted to identify yourself for purposes

3     of potentially speaking on this conference today?

4          (Pause)

5          THE COURT:  All right.  Welcome everyone.  This is a

6     follow-up to the conference we had back in May to address the

7     case and where we go from here.  You gave me helpful background

8     on the case in that conference.  Judge Jones' decision on

9     summary judgment was issued on December 21 of 2022.  The

10    parties have now filed their objections to his decision, which

11    is actually a report and recommendation.  I see on the docket,

12    it looks like the objections are essentially at Docket Numbers

13    92 to 111 filed on May 22, and then responses to the objections

14    filed on July 7 or at, I believe, 149 and 161 to 179.

15         So I believe the purpose of today was to talk about

16    further scheduling.  I'm not in a position to tell you when

17    I'll be issuing my decision on the objections and ultimately

18    the decision on summary judgment so that you will know what

19    exactly is going to be tried.  But I believe the parties' view

20    was that it made sense to have something in the calendar in

21    2024 for a jury trial in the case.

22         Let me start by asking whether based on the objections

23    and responses, and I know you all have been working hard on

24    these, is there any reason to think that we know more about

25    what the length of the trial is likely to be?  I assume there

1    weren't a lot of surprises here.  Do you still think the length

2    of the trial may be three or four weeks, something like that?

3            MR. CHOPRA:  Your Honor, this is Vivek Chopra for the

4    trust.  Could I go first, your Honor?

5            THE COURT:  Sure.

6            MR. CHOPRA:  I think that estimate still holds.  I've

7    looked at who might appear live, who could appear through dep

8    designations.  The trust thinks we could put our case on,

9    inclusive of cross and openings in about four-and-a-half trial

10    days.  So I kind of assume, given what I know about the case,

11    that 15 trial days makes sense.

12            If I could make one other remark on that, there are

13    about eight substantive objections and corresponding responses.

14    Only one set of objections is fully case dispositive.  Though,

15    there are objections that could shorten the trial or be case

16    dispositive for some of the excess insurers.  Given all of

17    that, we would greatly appreciate setting that trial date so

18    that we can alert witnesses, et cetera, about it, given the age

19    of the case.

20            So we kind of renew our request to get a trial date

21    set and then allow the parties to meet and confer about run up

22    pretrial dates for the joint pretrial order and for other

23    motions *in limine*, et cetera.

24            THE COURT:  While you're speaking, Mr. Chopra, one

25    question I have, and this might be a little bit out of the

1    blue, I don't think I'll be granting any of the case

2    dispositive motions for summary judgment that are noncoverage

3    decisions.

4         One of the things that Judge Jones decided is a

5    question for the jury trial is the reasonableness of the

6    Kessler settlement.  I guess I'm just curious about that one,

7    because that strikes me as something that is likely to take

8    some time in the trial.  Where does that come from?  I haven't

9    dug down into the papers enough to know.  Is that based on

10   something in policy language about reasonable settlement?  I

11   guess I'm wondering why I can't say on summary judgment that

12   it's a reasonable settlement.

13        Mr. Chopra can answer and then, Mr. Walters, you can

14   chime in.

15        MR. WALTERS:  Thank you.

16        MR. CHOPRA:  Your Honor, as you can tell, it's a

17   contested issue.  It's not ours, right, the trust.  That's a

18   contested issue between the Kessler class and the insurers.

19        But the short story of it is that the reasonableness

20   of the settlement is an issue under New York common law.  The

21   settlements that are made have to be reasonable.  When you'll

22   get into the papers you're going to see that there's briefing

23   both on whether the bankruptcy court's approval of the plan and

24   the settlement basically precludes the insurers from litigating

25   that issue here.  Judge Jones held it did not, and there's an

1    objection out to that and obviously a response.

2           Then you are also going to see briefing about whether

3    it's *per se* reasonable.  That is that there's enough evidence

4    that the Court could decide on summary judgment.  Judge Jones

5    said no, but there's an objection and a corresponding response

6    to that.  I think once you get into the papers it will be clear

7    to you what the basis was for those rulings and the objections

8    and responses.

9           The point on trial length is a good one.  If the Court

10   does decide that the reasonableness of the Kessler settlement

11   cannot be re-litigated or it decides that it's not worth what

12   it's supposed to be worth, because there's motions on that as

13   well.  If the Kessler settlement is not at issue at trial,

14   maybe that's the safest way to say it, the trial length would

15   be considerably shortened.  The number of defendants involved

16   would be a lot smaller also because you wouldn't have most of

17   the excess still involved.

18           MR. WALTERS:  Fred Walters here, your Honor, for the

19   Kessler class.

20           I think Mr. Chopra, although he is correct, his trust

21   isn't engaged in that, but I think his recitation of the two

22   different issues with respect to the Kessler settlement are, in

23   essence, correct.  One is the procedural, we believe bar to the

24   insurance carriers now contesting what was already decided, and

25   that's been fully briefed below before Judge Jones and also is

1      the subject to objections here and responses.

2                 And then the second reason is the second motion for

3      summary judgment that was filed by the Kessler class separate

4      and apart from the procedural one.  It was one that was as a

5      matter of law it was reasonable for the reasons stated.  Again,

6      Judge Jones said that was a disputed fact issue, as he did with

7      the first one.

8                 So and as it stands right now those two issues would

9      be for trial unless your Honor decides to do differently after

10     you review the extensive briefing on both of those issues.

11                Mr. Chopra is right, if your Honor would change the

12     rulings of Judge Jones with respect to either of those tests

13     for reasonableness, it would shorten the length of the trial

14     for the two reasons that Mr. Chopra has mentioned.

15                THE COURT:  Thank you.

16                MR. WALTERS:  Did that help your Honor answer those

17     questions?

18                THE COURT:  Yes.  Thank you.

19                Did one of the defense counsel want to address that?

20                MR. YALOWITZ:  I did.  Thank you very much, your

21     Honor.  This is Kent Yalowitz from Arnold & Porter.

22                I just wanted to add two things to what Mr. Chopra and

23     Mr. Walters said.  The first thing is there are also two

24     objections from the defendants that might pretermit either all

25     or the vast majority of the issues involving the Kessler

settlement.  One of those has to do with the insurability and

coverage of the settlement on grounds of public policy.  Public

policy doesn't allow punitive damages indemnification in New

York.  And the other has to do with the release that the

insured gave in the context of the settlement.  As with the

objections there are also responses.  So there are four legal

issues or summary-judgment-style issues that anyone of which

may pretermit litigation of the Kessler settlement.

        The second thing that I wanted to raise with the Court

and, you know, I don't think that we need to get into it unless

or until the Court is finished with at least drilling into the

summary judgment issues is that what you might call the Kessler

issues which involve the reasonableness of the settlement, the

good faith of the insured in the context of settlement and

whether it fulfilled its cooperation clause and also whether

the insured engaged in willfulness conduct, all three of those

issues, which are fact issues.  One of which, the willfulness

conduct was not the subject of a summary judgment motion.

Those all might be, if they have to be tried, they might be

appropriate for bifurcation, because they are really quite

different than the coverage issues that the trust has been

focused on.  We had some informal discussion about that from

time to time, and I would want to socialize that with the

plaintiffs.  If we could either reach agreement on a

recommendation or have competing recommendations from the Court

1   about that, that might also be something to consider.

2           THE COURT:  When you say "socialize that issue," you

3   mean the issue of severing the trial?

4           MR. YALOWITZ:  Correct.

5           THE COURT:  OK.  While I have you speaking, let me

6   just ask, are you either on behalf of North American or on

7   behalf of the other insurers as well, do you have a view as to

8   whether a trial date should be scheduled at this point?

9           MR. YALOWITZ:  So I would say it would be very helpful

10  to understand what needs to be tried before we start organizing

11  witnesses for trial.  I have a stronger view about the amount

12  of time we need to get done with the JPTO motions *in limine*,

13  other pretrial motions, jury instructions, verdict sheet, once

14  we hear from the Court.  I think the standard 30 days, maybe

15  your Honor gives 60 days, but that's going to be tight.  And so

16  I would be much happier working forward from your decision

17  rather than working backward from a date that then might jam

18  people up quite a bit in terms of trial prep.

19          THE COURT:  All right.  That's helpful to know and

20  understandable.  Unfortunately, I don't think I'm in a position

21  to know, you know, when I'll be done with this.

22          MR. YALOWITZ:  And that might also be, you know, an

23  argument in favor of taking it in pieces.  I think that

24  Mr. Chopra speaks for the trust.  He is understandably very

25  anxious to get a trial date.  His piece of the case is a lot

1    less sprawling than the Kessler piece of the case.  You know,

2    he is talking about a four-day trial.  And one option that the

3    Court might have for case management is to focus on the

4    objections that would deal with whether you need a trial on the

5    trust's issues, and if so then we can decide is it sensible to

6    set a trial date for the trust.

7                THE COURT:  So when you say the trust issues, you are

8    talking about the good faith and intentional misconduct issues?

9                MR. YALOWITZ:  Well, I would refer to Mr. Chopra and

10   Mr. Lahr on what needs to be tried there.

11               MR. CHOPRA:  Your Honor, this is Vivek Chopra for the

12   trust.  Can I address the Court on that?

13               THE COURT:  Yes.

14               MR. CHOPRA:  My estimate was kind of four to five on

15   the trust's case in chief, inclusive of openings.

16               I have two points to make, I think getting a trial

17   date in 2024 would give the Court plenty of time to rule on

18   what is certainly a large project which start with the

19   objections and responses you have in front of you.  But it

20   would allow all the parties with plenty of time then between

21   your ruling, your expected ruling and that trial date to

22   prepare the joint pretrial order and motions *in limine*, et

23   cetera.

24               The advantage of having a trial date is, one, we get

25   it on the calendar and we're not pushed further back by other

1   litigants who get on the calendar in the interim.  I'm

2   extremely concerned about waiting months for the ruling and

3   then convening this group again and then choosing the date for

4   trial.  As you know, and I don't want to belabor, the case was

5   filed a significant time ago.  Discovery has been completed for

6   some time, and there's just a lot of age on this case.  For all

7   those reasons, I'm happy to expand on them if you need, but I

8   don't think you probably do.  Getting a trial date would be

9   very helpful.

10          And just the last point on that, it's not really about

11  organizing designations and motions *in limine*, et cetera.

12  Having that trial date allows all of us to tell people who are

13  busy, our experts, our fact witnesses, claims representatives

14  on the other side, to hold a period of time for us.  It's very

15  useful in that regard as well.

16          MR. WALTERS:  Your Honor, Fred Walters.  If I may

17  speak to that also on behalf of the class plaintiffs, Mitchell

18  and Kessler?

19          THE COURT:  Yes.

20          MR. WALTERS:  We are in the same camp as Mr. Chopra

21  with respect to the getting a trial setting on that matter.  I

22  don't need to repeat what he said, but we think it would be

23  helpful.  Given the length of time this trial is going to take,

24  you know your docket but as much more forewarning as we can

25  get.  Hopefully, we get this thing scheduled in 2024.  Then,

1    per chance, if those rulings change, hopefully it would just

2    shorten the length of trial and not change it.

3         Two, with respect to Mr. Yalowitz's comments about

4    some kind of splitting or severing these cases.  We don't think

5    that makes any sense at this juncture at all.  Most of the

6    issues, other than the reasonableness of the Kessler

7    settlement, all of the other issues overlap, and for the same

8    reasons that the trust contends that there's bad faith, we

9    would also contend that there's bad faith.  I mean,

10   consequential damages, other than the amounts, it is the same

11   reason that allows consequential damages would also pertain to

12   the Kessler classes.  So we don't think severing this trial, if

13   that's what the suggestion that they were thinking they might

14   socialize, we would not be in favor of that at all.  I don't

15   think it makes any sense.  It would be a waste of the Court's

16   time and litigant's time to do that after this long period of

17   time.

18        MR. LAHR:  Your Honor, this is Gregory Lahr for

19   Lloyd's defendants.  May I just also make a couple points?

20        THE COURT:  Sure.

21        MR. LAHR:  We don't make any comments as to how your

22   Honor might organize the docket and the scheduling of a trial.

23   Though, as on the defense's side we've indicated your Honor's

24   decision will obviously loom large in the party's preparation

25   for that trial.  It could be a rather short trial.  It could be

1  a very long trial.  But I think irrespective of where your

2  Honor comes out on the motions, unless your Honor is inclined

3  to grant summary judgment and dismiss the case, necessarily

4  there could be and likely would be a trial on the

5  reasonableness of the coverage determinations, which is going

6  to involve a significant number of individuals.  The

7  preparation going into the trial and the number of individuals

8  who would appear at trial is really going to be dictated by

9  your Honor's ruling and the outcome of the current objections.

10  And I just think it's very difficult for at least on the

11  defense side to prepare for that, more or less in a vacuum,

12  without being informed by your Honor's decisions and then

13  ultimately what is going to be tried.

14          THE COURT:  When you say the reasonableness of

15  coverage decisions, I didn't understand that to be one of the

16  three issues remaining for trial according to Judge Jones,

17  unless you mean good faith and the duty of cooperation of the

18  insured and intentional misconduct of the insured.  Are you

19  talking about something else?  Let's just assume, because, you

20  know, the judge spent a lot of time on this, let's assume that

21  I overrule all objections.  If that happens, what is the basis

22  for severing the trial?

23          MR. LAHR:  I don't have a view, your Honor, on whether

24  there should be a severance.  But to answer your Honor's

25  question on the good faith aspect and the reasonableness of

N7B4ROWC

coverage decisions that essentially goes to the heart of the
good faith and fair dealing that the plaintiffs complain of.
And the basis for their claim for consequential damages and,
you know, whether there's any support for that.  So we will
need to put evidence on as to the reasonableness of the
coverage decisions, because that would inform, to some extent,
whether consequential damages are available.

THE COURT:  And that's as to both sets of plans?

MR. LAHR:  It is.

MR. CHOPRA:  Your Honor, not to overload this -- this
is Vivek Chopra from the trust, if I could be heard just
momentarily on that.

You'll come across it in the papers, Michigan law
doesn't require there to be bad faith on part of the insurers
for plaintiff to secure consequential damages.  The issue of
fact that's relevant for consequential damages, and it's in the
papers, is going to be whether the parties contemplated that
form of damages at the time of contracting.

That said, insurer bad faith will be tried in regards
to the plaintiff's claims for attorney's fees.  And that's also
been briefed, and you'll see it when you get to the objections.

Judge Jones allowed the claims for both consequential
damages and attorney's fees to go forward, and they are the
subject of objections and responses.

THE COURT:  Right.

1          Let me just ask you before I forget, Judge Jones'

2     decision of December 21, which is about 171 pages, does that

3     cover the waterfront?  That covers all the prior decisions.

4     Are there prior decisions of Judge Lane or other prior

5     decisions that are subject of any of the objections?  I'll just

6     ask Mr. Chopra.

7          MR. CHOPRA:  Yes, your Honor.  There is another

8     ruling.  It's a ruling on what the parties call the fees

9     exclusions or the fee exclusions.  That was issued by Judge

10    Lane in late 2019.  And if you look at Judge Jones' order

11    establishing his report and recommendation, he assigns both

12    Judge Lane's fee exclusions ruling and then Judge Jones'

13    omnibus ruling from December of '22 that you know of to his

14    report and recommendation.  And Judge Lane's ruling on the fee

15    exclusions is the subject of two objections from insurers and

16    two responses from the plaintiffs.

17          THE COURT:  OK.

18          MR. SCHILLER:  Judge, this is Ron Schiller for

19    Steadfast, may I briefly speak?

20          THE COURT:  Sure.

21          MR. SCHILLER:  Because, your Honor is obviously just

22    now getting into the papers, I wanted to clarify one thing and

23    to put it in perspective, Steadfast, as well a couple other

24    insurers, are in excess of $400 million here.  So when people

25    talk about the reasonableness, since your Honor initially asked

why that would be something your Honor could reach a decision

on, you'll see from the papers why that is.  But I did want to

put in perspective, this is not a question of reasonableness

and necessity of the defense counsel or plaintiff's counsel's

fees.  This was a $300 million agreement entered into between

the plaintiffs and bankruptcy court in order to -- our

position -- reach insurance.

The only reason I mention that, I don't want to get

into the respective parties' positions about the merits or not,

but that's why the trial goes from five days to three weeks.

Because if that survives, when your Honor has done your work,

then the rest of us have to prepare for that.  As far as

insurers like Steadfast that are excess of $400 million, there

should be no bad faith against us.  What we're really talking

about is whether or not a $300 million agreement is enforceable

and reaches us, and because it exhausts in our layer to

whatever extent it doesn't if it's in whole than our policies

are not reached at all.  If it's in part, our policies may not

be reached or may be eroded only partially, is an issue that if

the Court allows that to go to a jury is necessarily somewhat

complex.  And we could put aside the issue of how you clarify

that and make it straightforward enough for a jury.  But the

point is, I did want your Honor to understand why we go from

five days to three weeks or more.

Secondly, your Honor, to suggest therefore if your

1    Honor is not going to bifurcate or something like that that

2    your Honor allowed certainly enough time after -- and I know

3    you don't have a date for when you are going to rule on

4    things -- built into this a cushion that allows enough time

5    after rulings so that we all can prepare, and we have witnesses

6    from around the country, can file any necessary documents,

7    pretrial of course.  And so while I'm sensitive to the

8    plaintiff and the trust wanting to get to trial as soon as

9    possible, the practical reality is they are making claims on a

10   $300 plus million dollars dispute which also has extra

11   contractual components, and we are going to need time after

12   your Honor rules.

13           THE COURT:  OK.  Understood.

14           Anybody else want to address anything we talked about

15   so far?

16           MS. DUFFIELD:  Your Honor, briefly.  This is Cara

17   Duffield on behalf of Twin City.  To the extent people are

18   talking about 15 trial days, I have to assume that that is an

19   assumption if Judge Jones' report and recommendation stand.  If

20   we assume that the trial needs to encompass every potential

21   fact issue that would come in, if for instance some of Judge

22   Jones' rulings are overturned.  So for instance, Judge Jones

23   said there was no bad faith claim against any excess carrier,

24   so that's seven insurers right there.  If we assume for

25   purposes of scheduling that that is undone, we are going to

1    need longer than 15 days.  So I think if we are going to try

2    and schedule something then that's just something people need

3    to take into account.

4              THE COURT:  Right.  Understood.  OK.

5              MR. YALOWITZ:  Your Honor, it's Kent Yalowitz from

6    Arnold & Porter.

7              To close the loop, what Ms. Duffield says is also

8    germane to the issue of bifurcation in which, I'm not arguing

9    it, I'm just putting a pin in it, there are seven defendants as

10   to whom this is a much narrower case, and it may not be

11   necessary for all.  I understand Mr. Walters has claims against

12   the primary insurer.  I certainly wasn't suggesting that he

13   would try those separately from Mr. Chopra.  I'm just saying

14   that there are seven defendants, as Ms. Duffield points out,

15   who are differently situated.

16             MR. CHOPRA:  Your Honor, this is Vivek Chopra for the

17   trust.

18             Just to be a bit sharper on that pin, it's likely not

19   seven.  The trusts claims alone are about $68 million plus

20   interest.  And that would take us beyond the primary policy

21   into what we call the first level excess.  And so the

22   Continental, Clarendon, Twin City are, you know, for lack of a

23   better term, kind of in the same boat as the primary insurer

24   when it comes to the trust claims.

25             So I think Mr. Yalowitz is speaking really to the

1    interest of the three, kind of, upper level excess above

2    400 million insurers.  To the extent that's going to weigh into

3    it or you've even kind of contemplated where everyone sits in

4    this tower, I wanted to make that point briefly.

5              THE COURT:  How much did you say the claim of the

6    trust is at this point?

7              MR. CHOPRA:  It's $68 million.  There is a component

8    of that claim that's framed in the alternative.  It's about

9    23 million that we are pursuing direct damages and in the

10   alternative consequential damages.  The easiest way to think

11   about it is it's about $68 million plus interest and fees.

12             THE COURT:  All right.

13             MR. WALTERS:  Your Honor, Fred Walters for the class.

14             Obviously, our quantification is relatively simple.

15   We had the $300 million Kessler claim and the $14.5 million

16   Mitchell claim.  So those, quantification-wise, are reasonable

17   simple to understand.

18             The 300 million, Mr. Yalowitz and two other carriers

19   are at the fourth excess level above the Bermudans.  And the

20   Kessler class with the Mitchell class would reach that fourth

21   excess level.  In fact, it doesn't exhaust it, but it would be

22   close to it.  Prejudgement interest, as your Honor knows, which

23   would almost double the amount of each claim's prejudgment

24   interest would probably double for us and the trust the actual

25   contract amounts that they owe given the long time this case

1    has been outstanding.

2          Again, your Honor, just putting a pin in it or

3    sharper, as Mr. Chopra says, the issues so much overlap that it

4    would make no sense, in our view, to try to sever these cases

5    whatsoever.  It just doesn't make any sense given the bad faith

6    allegations and the consequential damages and the attorney's

7    fees, all of which hinge on the same bad faith finding.

8          And nobody, other than today, this is the first time

9    we've heard anything about any kind of severance.  So we are

10   opposed to that in any respect.

11         I want to try this case once for everybody who is

12   still in the case and then be done with it.  And everybody can

13   run out to the Second Circuit or whatever they want to do at

14   that point in time.

15         MR. YALOWITZ:  Your Honor, Kent Yalowitz.

16         There are many things I suggest that Mr. Walters

17   thinks makes no sense, but let's allow the Court to agree with

18   me.  So we understand that might be something that we have to

19   make a motion on.

20         MR. CHOPRA:  Your Honor, if I could.  Vivek Chopra, I

21   won't take too much time.

22         You really don't have to address this severance thing,

23   which would require a lot of input from all of the different

24   parties, most of them aren't ready to provide that input,

25   including the trust.  To set schedule a trial date in 2024, the

1  parties could then kind of grapple with that. They've got that

2  idea, if they want, in the interim. If you were to set a trial

3  date the middle of 2024, you would probably accomplish

4  everything that folks are asking. You would give plenty of

5  time to rule on the objections and the responses. You would

6  give the insurers all the runway they needed, subsequent to

7  that ruling to be ready for that trial. And you would give the

8  trust the certainty that it's requesting and also the ability

9  to tell its experts and others to keep that time on hold. So I

10  make that last final pitch for a date.

11  THE COURT: I guess I'm not opposed to putting a date

12  on the calendar. If it is well into 2024, you might as well

13  set it, call it three weeks on everybody's calendar and then

14  there could be issues of severance if it ends up being just one

15  of the trials or whatever. Who knows how things will shake

16  out. At least we'll have something on the calendar.

17  So I guess I'll ask the plaintiff's counsel, did you

18  have a month in mind?

19  MR. CHOPRA: This is Vivek Chopra for the trust.

20  I don't have a month to suggest to you that I

21  pre-reviewed. But I would say, June is perfectly good month.

22  If folks are concerned, I would like to go earlier, but I

23  realize that could start a whole ruckus. I think April would

24  be great. To the extent you want to avoid graduation season in

25  May, April, or June would both work for the trust.

1          MR. WALTERS:  Fred Walters for the class plaintiffs,

2    your Honor.

3          We are fine with April, May, or June of 2024.  And we

4    second the fact of getting it on the calendar.  We will make

5    that schedule work once the Court sets it, and I think that's

6    enough lead time that all the other defendants could make it

7    work also.  So if your schedule permits April, May, or June

8    would work for us.

9          THE COURT:  Before everyone starts focusing on that,

10   the week of June 3rd I'm going to have to be away for a

11   conference.  So I could start it after that which would be

12   June 10, but then he would be straddling the July 4 holiday,

13   which I know you guys just ruined your holidays working on

14   these or at least your associates' holidays working on these

15   responses.  So the other option is to go after July 4 to do

16   something like July 8 or something like that.

17         MR. LAHR:  Your Honor, this is Greg Lahr for the

18   Lloyd's defendants.

19         I just think it's very optimistic to think that this

20   is going to be a three-week trial depending on what the outcome

21   is your Honor's determination on the objections.  Especially,

22   again, if we get into the good faith issues.  We are

23   essentially going to be presenting most or at least a lot of

24   the witnesses whose depositions have been put forth to your

25   Honor.  We could be talking about 30 witnesses being involved

1    in this trial.  So I just think we are being a little bit

2    overly optimistic thinking that this is a trial that gets done

3    in three weeks.  I just don't see that happening.

4            THE COURT:  How about another idea, it's a little

5    later, but we could sort of rely on it, and that would be to do

6    it, well September is not great. September 9, that's actually a

7    week after Labor Day.

8            MR. WALTERS:  Oh, it is OK.  I would say July 8 --

9    Fred Walters, I'm sorry, for the class plaintiffs -- works for

10   us, and if we could schedule three or four weeks there, that

11   would fine for us.  The September date, you just mentioned,

12   also works for us, but we would prefer the earlier if it fits

13   with your schedule.

14           MR. CHOPRA:  This is Vivek Chopra for the trust.

15           Both those dates work for us.

16           And to address Mr. Lahr's point, you could set it for

17   four weeks and within the next year you'll obviously rule.  The

18   parties will know where they stand, and if it's adjusted back

19   to three weeks or two weeks then people just gain some time on

20   their calendar.  But it does give certainty that we have a

21   trial date that is actionable and that we can actually plan

22   against.  So I'm happy with July 8 or with that September date

23   that you suggested?

24           MR. SCHILLER:  Your Honor, Ron Schiller.

25           Just to be clear, we're all sensitive to not giving

1    you competing calendars.  I represent Steadfast, which is not

2    exactly a big player.  It's one of the three insurers that you

3    heard has excess of 400 million, and we happen to have

4    50 million at issue.

5         I'm just telling you, and this is the last thing I

6    want to be doing with a busy group like this, but I have a

7    trial I'm already attached for on August 6, and one I'm

8    attached for on September 23.  So when your Honor said June, I

9    didn't love it, but we can live with June, or we're looking at

10   another time.  That's a problem for us.  I've been on this case

11   from the beginning.

12        MR. CHOPRA:  Your Honor, this is Vivek Chopra for the

13   trust.

14        Every lawyer on this case has a good practice, and

15   we're fortunate enough to be in cases in jurisdictions across

16   the country, and we all have scheduling orders.  I'm very

17   concerned if we start going down that road.  Luckily, for most

18   every party, there are significant-sized firms representing

19   these parties.  With enough notice, and we all know motions

20   will be granted and appeals taken and cases settled, I think it

21   will be really difficult to plan against attorney calendars a

22   year out.

23        MR. SCHILLER:  This is Ron Schiller again.

24        By the way, I said 400.  I meant 300.

25        I totally agree.  That's why I almost never bring this

1    up.  But I will be trying this, and I cannot sit here and let

2    the plaintiff's attorney say we can do and pick times in July

3    when I'm attached for two other trials.  Because I can't now go

4    to those courts and say, well, I've now been post your trial

5    schedules attached in the Southern District of New York.

6    That's why I mention it.  I mean, June is not ideal.  I have

7    other things that I would move.  I could make June work.  And

8    again, and as Mr. Chopra and Mr. Walters know, I will be trying

9    this case for my client.

10             MR. CHOPRA:  June works for the trust, your Honor.

11             MR. WALTERS:  Fred Walters for the class plaintiffs.

12             June works here also, your Honor.  And I agree with

13   Mr. Chopra.  It would be difficult, given the number of lawyers

14   here, to schedule that around individual lawyers schedules.  We

15   would never get this thing scheduled, probably but we're fine

16   with June, your Honor.

17             THE COURT:  How about June 10?

18             MR. WALTERS:  Fred Walters.

19             That works here, your Honor.

20             MR. CHOPRA:  This is Vivek Chopra for the trust.

21             That works.

22             MR. SCHILLER:  That works for Steadfast.

23             MR. YALOWITZ:  That's fine for North American, subject

24   to the issue I raised, Judge, about having time after your

25   summary judgment position to deal with all the logistics.

1    THE COURT:  Right.  That was Mr. Yalowitz; right?

2    MR. YALOWITZ:  Yes, sir.

3    THE COURT:  All right.  We'll put it down for June 10

4 for now, and we'll work back from that.  I'll set a final

5 pretrial conference a few weeks before that, and then we will

6 have a date.  I think probably motions *in limine* will be three

7 weeks for final pretrial conference with responses two weeks

8 before and then I will rule on probably most of the motions *in*

9 *limine* at the final pretrial conference.  I think I'll wait to

10 set the final pretrial conference for now.

11    MR. CHOPRA:  And will you be blocking the four weeks

12 subsequent to that date on your calendar for this trial, your

13 Honor?

14    THE COURT:  Yeah, I'm going to block the four weeks.

15    THE COURT REPORTER:  Sorry.  Can you please state your

16 name.

17    MR. CHOPRA:  I apologize, bad habit of mine.  This is

18 Vivek Chopra for the trust.  I guess I'm just looking forward

19 to being in person so you'll know who we are when we speak.

20    THE COURT:  The final pretrial conference, I do want

21 to do that in person so you all could see the courtroom, and we

22 could talk about where you stand at the podium and those sorts

23 of things during the jury trial.  I guess while I have

24 everybody, we might as well put that on the calendar too, that

25 is the final pretrial conference.

1          I have a jury trial to begin with jury selection on

2     June 10, and I guess we want the final pretrial conference to

3     be a couple weeks before that.  We would be looking at late

4     May.  How is Thursday, May 30?

5          MR. WALTERS:  Fred Walters for the class plaintiffs.

6     That works, your Honor, for us.

7          MR. YALOWITZ:  Could we do a week earlier, your Honor?

8          THE COURT:  Yes, we probably could.

9          MR. WALTERS:  That's fine with us.  Fred Walters,

10    again.  That's fine with us also.

11         MR. ROSENTHAL:  Vivek Chopra for the trust.  May 23

12    works, your Honor.

13         THE COURT:  All right.  Why don't we say May 23 at

14    10:00 a.m. for the final pretrial conference.

15         MR. WALTERS:  That's in person, as I understand it?

16         THE COURT:  Yes, in person.

17         MR. WALTERS:  OK.  Thank you.

18         THE COURT:  And then what I usually do is work back

19    from that.  I realize there could be significant motions *in*

20    *limine* in this case.  I'm going to have the final joint

21    pretrial order as well as any motions *in limine* due three weeks

22    before, which is May 2nd, 2024, which again the joint pretrial

23    order and any motions *in limine* as well as jury instructions

24    and proposed voir dire.

25         MR. WALTERS:  Verdict sheet also?

1          THE COURT:  Verdict sheet, yes.

2          MR. YALOWITZ:  Pretrial trial brief also?

3          THE COURT:  Well, I don't normally require pretrial

4     briefs in jury trial cases.

5          MR. YALOWITZ:  You've all just done summary judgment;

6     you may not want it.

7          THE COURT:  I don't know that I need it.  I mean, what

8     I'd say is if you submit your proposed jury instructions, if

9     someone has something they want to say about why the other

10    side's jury instructions need to be changed, you can submit a

11    letter motion afterword, you know, a week later explaining

12    that.  But I don't think I need a formal pretrial brief given

13    all the paper that's been spilled on this one.

14         MR. YALOWITZ:  This is Yalowitz, again, Judge.  I

15    don't want to micromanage.  They're going to be pretty heavy *in*

16    *limine* motions on both sides.  There's just a lot of contention

17    in this case.  We might want more than three weeks to give

18    you -- we might want, you know, motions *in limine*, all the

19    usual filings like a month before the final pretrial and then

20    two weeks for responses or something like that.

21         MR. CHOPRA:  Your Honor, this is Vivek Chopra for the

22    trust.

23         We are actually finding a moment of agreement among

24    the parties here.  I wonder if you could issue the dates that

25    you suggested, and how you've obviously set the trial date and

1    the pretrial conference date.  But the parties could meet and

2    confer on a structure like the one that Mr. Yalowitz is

3    suggesting and submit it to the Court for consideration after

4    you've ruled on objections and response.

5              MR. WALTERS:  Fred Walters for the class.

6              I think Mr. Chopra's suggestion is a good one, your

7    Honor.  We've been able to work out the scheduling most times

8    with the defendants.

9              THE COURT:  OK.  That's fine.

10             So for now I'm just going to schedule the final

11   pretrial conference May 23, 10:00 a.m. and the jury trial

12   beginning on June 10.  And then I'll have the parties confer

13   regarding specific dates for joint pretrial order, proposed

14   jury instructions, and voir dire, and particularly motions *in*

15   *limine*.  I realized as to the motions *in limine* in particular,

16   it does make sense that you might need a little more time.  You

17   might need a little more time.  I would like you to give me two

18   weeks though before the final pretrial conference with

19   responses to the motions *in limine* so I could have some time to

20   suggest those.

21             MR. CHOPRA:  Yes, your Honor.

22             MR. WALTERS:  No problem.

23             THE COURT:  All right.  And one other question I had

24   is you requested to file things under seal, which is fine.  I'm

25   basically going to follow the bankruptcy court sealing ruling.

1      Let me just ask, are there any objections to any of

2  the motions to seal, letter motions to seal to Mr. Chopra from

3  a few days ago?  And then there's, I think, another one from

4  the day before from Mr. Walters.  Does anyone object to those

5  motion to seal?

6      MR. YALOWITZ:  Your Honor, it's Kent Yalowitz.  We

7  certainly have no objection.  I would say before we filed our

8  papers we kind of took a hard look at whether things really

9  need to be filed under seal, and I don't want to impose any new

10  work on people who've done all the work of filing under seal.

11  I just think it's a better practice now that we're really into

12  judicial documents for parties to be judicious about asking the

13  Court to file under seal, and I don't know what your practice

14  is, but it does seem like's it would be best practice to limit

15  these.

16      MR. CHOPRA:  Your Honor, this is Vivek Chopra from the

17  trust.  Any defendant who has been reaching out to me on

18  documents that were previously marked confidential, we've

19  agreed to allow them to be published in open court.  I will

20  continue to agree.  There are a number of insurer documents

21  that were marked, I think somewhat reflexively, as confidential

22  years ago that probably fall into that category and should now

23  be released from that stricture.  We will work with the

24  defendants on doing that going forward.  We confronted

25  basically the day of and the before filing that we had quoted

1    some defendant documents in the brief and didn't feel we have

2    had time to kind of pursue that.  That's why we filed the

3    letter brief.

4            THE COURT:  That's fine.  And I agree with you.  My

5    general approach -- I agree with what Mr. Yalowitz said --

6    generally there's a strong presumption when something is

7    submitted as part of an objection or a summary judgment motion

8    that it's it should be public absent pretty strong

9    countervailing consideration.  As a practical matter, I don't

10   really have the time to go through page by page, and line by

11   line to make those determinations when they are not objected to

12   I'm going to provisionally be granting those motions.  I do

13   encourage and direct the parties to work toward de-designating

14   things as confidential or highly confidential or whatever.

15   Look, if this is going to trial this stuff is all coming out.

16   Everything coming into trial is going to be public, and the

17   press are going to get copies of it.  So you all should know

18   that.

19           One other question, just as a technical matter, my

20   current law clerk will be moving on.  So the law clerk who gets

21   to deal with this in the first instance is happily not here, so

22   she doesn't have to experience what she is going to be going

23   through, but if you add it up, all of the objections and

24   responses, how much pages is it?  Can someone just give me an

25   estimate?

1        MR. WALTERS:  Fred Walters for the plaintiffs.

2        In excess of 800.

3        THE COURT:  OK.  So I'm not going to ask you all for

4    courtesy copies, because I'm trying to move away from requiring

5    paralegals to put together all that paper.  I don't want to do

6    that anymore.

7        I notice that Mr. Chopra gave us a disc of the summary

8    judgment filings in the lower court, and I wonder if you all

9    could all work to give me -- not a disc but a thumb drive --

10   one thumb drive of all the summary judgment filings below, and

11   another thumb drive with all of the un-redacted objections and

12   responses filed by all the parties.

13       MR. LAHR:  This is Gregory Lahr.

14       Would that include the evidence supporting all those

15   motions as well?

16       THE COURT:  Yes.  If you could also include the

17   declaration, anything that's cited in those.  As long as they

18   are clearly demarcated, like the files are called either

19   objections, or response, or declaration, you know, in support

20   of objection or response so I could find it.  So it would be

21   easier.  If you could do that it had would be helpful.

22       MR. CHOPRA:  I'm sure the defendants and plaintiffs

23   could work together and put something together.

24       MR. WALTERS:  Fred Walters for class.  We agree.  We

25   would be happy to work with the defendants and do that.

1              THE COURT:  Great.  Thank you.

2              Anything else you wanted to address today on the

3    plaintiffs' side.  Mr. Walters?

4              MR. WALTERS:  No, your Honor.  I don't think so.  We

5    appreciate your time.

6              THE COURT:  Thank you.

7              And Mr. Chopra?

8              MR. CHOPRA:  No, your Honor.  Thank you.

9              THE COURT:  Anything else, any of the defendants'

10   counsel?

11             MR. LAHR:  No.  Thank you, your Honor.

12             THE COURT:  All right.  Thanks everyone.  Have a good

13   day.  We are adjourned.  Bye now.

14             (Adjourned)

15

16

17

18

19

20

21

22

23

24

25