UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROWENA DRENNEN, *et al.*,
                       Plaintiffs,

-v-

CERTAIN UNDERWRITERS AT
LLOYD'S OF LONDON, *et al.*,
                       Defendants.

23-CV-3385 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

    The Court assumes familiarity with the factual and procedural history of this adversary proceeding, as set forth in the Court's opinion dated October 11, 2024. (*See* ECF No. 217 ("2024 Op.").) In that opinion, this Court granted partial summary judgment for Defendants on Exclusion III.C.9 (the "Fees Exclusion"). (*Id.*) Now before the Court are cross-motions for partial summary judgment on the applicability of Exclusion III.C.10 (the "Mortgage Fee Claim Exclusion") to the claims in this case. The bankruptcy court issued a Report and Recommendation that this Court grant partial summary judgment in favor of Plaintiffs and hold that the Mortgage Fee Claim Exclusion does not bar coverage. (*See* ECF No. 106-1 ("2019 Op.") Defendants filed timely objections to the Report and Recommendation, and Plaintiffs responded. For the reasons that follow, Plaintiffs' motion for partial summary judgment on the applicability of the Mortgage Fee Claim Exclusion is granted.

**I.    Legal Standards**

    The legal standards governing a district court's review of a bankruptcy judge's recommendation concerning a motion for summary judgment in an insurance contract dispute are detailed in the Court's most recent opinion. (*See* 2024 Op. at 7.) Because the parties filed timely objections to the Report and Recommendation, the Court conducts its review *de novo*. *See*

*Central Vt. Pub. Serv. Corp. v. Herbert*, 341 F.3d 186, 191 (2d Cir. 2003). As for summary judgment, the Court may grant it only if there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). And when interpreting any contract—insurance or otherwise—the Court is to begin with the plain meaning of the text and turn to extrinsic evidence of the parties' intent only in the event of an ambiguity. *Morgan Stanley Grp. Inc. v. New Eng. Ins. Co.*, 225 F.3d 270, 275-76 (2d Cir. 2000).

## II.     Discussion

Like the Court's most recent opinion, the present cross-motions concern the language of a coverage exclusion in the insurance contracts (collectively, the "Policies") executed by Residential Funding Company, LLC ("RFC") and the Insurer Defendants. The Mortgage Fee Claim Exclusion, found in Clause III.C.10 of the "Primary Policy" between RFC and Lloyd's of London, reads as follows:

> Underwriters shall not be liable for **Loss** under Insuring Clause I.D. in connection with any **Claim** . . . that is a **Mortgage Fee Claim**, provided that this Exclusion shall not apply to **Costs, Charges and Expenses** which the **Assured** shall become legally obligated to pay by reason of a **Mortgage Fee Claim** which is otherwise covered under Insurance Clause I.D.

(ECF No. 110-28 ("Primary Policy") at 28 (defined terms bolded in original).) The term "Mortgage Fee Claim" is defined earlier in the Primary Policy's "Definitions" section:

> **"Mortgage Fee Claim"** shall mean a **Claim** arising out of fees paid to or by a **Professional Liability Assured** in connection with loan origination, loan processing, loan closing, loan marketing or loan servicing, inclusive of any yield spread premium, overage, premium pricing, yield spread differential, par plus pricing, discharge fee, loan payoff charge or late payment fee.

(*Id.* at 20 (defined terms bolded in original).) Finally, "Professional Liability Assured" is defined in the same "Definitions" section:

> **"Professional Liability Assureds"** means:
> 1.     General Motors Acceptance Corporation ("GMAC");
> 2.     Any **Subsidiary** of GMAC;

>    3.  General Motors Asset Management Corporation ("GMAMC"); and
>    4.  Any **Subsidiary** of GMAMC.

(*Id.* at 18 (defined terms bolded in original).) The bankruptcy court determined, and the parties do not dispute, that RFC qualifies as a "Professional Liability Assured" as a subsidiary of GMAC. (*See* 2019 Op. at 27; ECF No. 111 ("Swiss Re Obj. re: Fees Excl.") at 27; ECF No. 66 ("Twin City Obj. re: Fees Excl.") at 18); ECF No. 167 ("Class Pls. Resp. re: Fees Excl.") at 9); ECF No. 176 ("Trust Resp. re: Fees Excl.") at 9.) Likewise, no one contends that the Originating Banks—which received the fees at issue (*see* 2024 Op. at 2)—fall under any of the enumerated categories in the definition of "Professional Liability Assureds."

Instead, this dispute, like the last cross-motions for partial summary judgment, concerns the effect of the "Deemer Clause" on the definition of "Professional Liability Assureds." The Deemer Clause, included at the end of the list of exclusions in Clause III.C, reads as follows:

> As used in the Exclusions set forth in Clause III.C, the term **Assured** includes any person or entity for whose conduct an **Assured** is legally responsible in rendering or failing to render **Professional Services.**

(Primary Policy at 30 (defined terms bolded in original).) As explained in this Court's October 11, 2024 opinion, where the term "Assured" includes RFC in an exclusion in Clause III.C, the Deemer Clause operates to include in that term the Originating Banks. (2024 Op. at 36-37.) But the bankruptcy court determined, and Plaintiffs agree, that the Deemer Clause should not similarly expand the definition of "Professional Liability Assured," which they argue is a concise term of art distinct from the term "Assured." (*See* 2019 Op. at 28-45; Class Pls. Resp. re: Fees Excl. at 10; Trust Resp. re: Fees Excl. at 21.) Defendants argue that the Deemer Clause operates to expand the definitions of both "Assured" and the "subcategory" of "Professional Liability Assureds." (*See* Swiss Re Obj. re: Fees Excl. at 25; Twin City Obj. re: Fees Excl. at 23.)

3

The bankruptcy court was correct that "the Mortgage Fee Claim Exclusion is narrowly tailored to apply only to the more narrow category of a 'Professional Liability Assured,' and not to all Assureds." (2019 Op. at 30.) Most fundamentally, the language of the Deemer Clause precludes Defendants' interpretation, since it is limited to uses of "the term Assured" "in the Exclusions set forth in Clause III.C." The definition of "Mortgage Fee Claim" that Defendants argue the Deemer Clause modifies does not appear in Clause III.C, but in the "Definitions" section. (*See* Class Pls. Resp. re: Fees Excl. at 33-35.) Though the Mortgage Fee Claim Exclusion uses a term that is defined in the "Definitions" section, that does not mean that the words in that definition were used in the exclusion itself. (*See* 2019 Op. at 32 ("Defendants do not explain how one can permissibly export the Deemer Clause's definition of the term "Assured" outside of the exclusions, and in so doing insert it into a clause of the Mortgage Fee Claim Exclusion where the term "Assured" is not actually used.").)

Defendants' contrary interpretation is unreasonable. Specifically, they argue that the definition of "Mortgage Fee Claim" is "incorporated" into the Mortgage Fee Claim Exclusion. (See Swiss Re Obj. re. Fees Excl. at 23-24.) That is true—that is how definitions work—but it does not follow that the *terms* used only in a definition should be considered "used" any time the substance of the definition is incorporated into a later provision. It defies plain meaning to say a "term" is "used" in a section where it is not, in fact, "used," but only incorporated by virtue of an earlier definition. Thus, the Court concludes that the Deemer Clause does not modify the definition of "Mortgage Fee Claim" as used outside of Clause III.C.

But even if Defendants were correct about the applicability of the Deemer Clause to definitions outside of Clause III.C, it still does not apply to the Mortgage Fee Claim Exclusion. That is because that exclusion does not use the term "Assured," but rather "Professional Liability

4

Assured," a term of art that is defined elsewhere in the agreement to apply to RFC but not the Originating Banks.  That the agreement refers to "Professional Liability Assureds," set off in quotation marks in its own paragraph in the "Definitions" section, demonstrates unambiguous intent to define that term as an integrated whole, rather than comprising modular components that may be individually expanded.  That the Deemer Clause refers to "the *term* Assured," rather than the "word" Assured, further dictates this result.  Moreover, as Class Plaintiffs point out, "the Deemer Clause only deems a person or entity an 'Assured' not a 'Professional Liability Assured,'" which is insufficient to trigger the Mortgage Fee Claim Exclusion.  (*See* Class Pls. Resp. re: Fees Excl. at 30 (emphasis omitted).)

On this point, again, Defendants' arguments are unavailing.  Swiss Re uses a "simple analogy" to a street sign that prohibits parking "cars," arguing that the bankruptcy court's reasoning would fail to extend the prohibition to "green cars," as a subcategory of "cars."  But the analogy's punchline—that "[a] parking prohibition applies to all cars, irrespective of their color" (Swiss Re Obj. re: Fees Excl. at 26)—reveals its flaws.  The reason a prohibition on parking "cars" applies to all cars is that "cars" is not a term of art, much less defined by Defendants' imaginary street sign.  The result Defendants seek here—that "Professional Liability Assured" should be expanded by a Clause referring to only the word "Assured"—does not follow from the intuition that a parking restriction applies regardless of a vehicle's color.

Twin City takes a different approach, arguing that the structure of the agreement demonstrates that the Deemer Clause should expand the definition of "Professional Liability Assured" as used in the Mortgage Fee Claim.  (*See* Twin City Obj. re: Fees Excl. at 23.)  But that evidence, too, is unpersuasive.  That the exclusions apply to a provision that "principally concerns conduct by Professional Liability Assureds" does not mean the Court should subvert

5

the plain meaning of the contract's words to force that parallelism wherever possible. To the contrary, if the drafters of the agreement were overwhelmingly concerned with the Deemer Clause's effect on the term "Professional Liability Assured," they could have written the Deemer Clause to achieve that result.*

In sum, the Deemer Clause—applicable to uses of "the term Assured" in Clause III.C—does not modify the definition of "Professional Liability Assured," a different term that appears in a different section of the Policies. Because the fees at issue were not Mortgage Fee Claims, the Mortgage Fee Claim Exclusion does not bar coverage in this case. However, also because the fees at issue were not Mortgage Fee Claims, the Trust is not entitled to the costs, charges and expenses that are carved out of the Return of Fees Exclusion. (*See* ECF No. 220 at 1-2 ("[A]ll 'Loss' as defined in the Policy is excluded under III.C.9, unless an exception exists for the Trust's Claim for 'Costs, Charges and Expenses.' . . . [T]he III.C.9[] Exclusion will not bar the Trust's Claims for Costs, Charges and Expenses if it is found that those Costs, Charges and Expenses were 'in connection with a Mortgage Fee Claim.'").) As a result of the Court's October 11, 2024 opinion and this one, final judgment in favor of Defendants as to all claims is appropriate.

---

\* Twin City's third structural argument regarding the E&O Insurance Agreement all but confirms that interpretation. That agreement specifies that "the insurers will pay defense costs ('Costs, Charges, and Expenses') 'by reason of any Mortgage Fee Claim . . . resulting directly from any Wrongful Act committed by a Professional Liability Assured or by any person or entity for whose conduct a Professional Liability Assured is legally responsible in rendering or failing to render Professional Services.'" (Twin City Obj. re: Fees Excl. at 23.) Far from supporting the Defendants' interpretation, that language demonstrates that the drafters understood how to create a version of the Deemer Clause that expanded the scope of "Professional Liability Assured" but chose not to do so in Clause III.C.

### III.     Conclusion

For the foregoing reasons, Defendants' objections to the Report and Recommendation are overruled and Plaintiffs' motion for partial summary judgment is GRANTED with respect to the Mortgage Fee Claim Exclusion.

The parties are directed to submit a proposed final judgment on or before December 4, 2024.

SO ORDERED.

Dated:  November 20, 2024
        New York, New York

                                                  _____
                                                  J. PAUL OETKEN
                                                  United States District Judge